# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 11-44738-11** |
| **HMC/CAH CONSOLIDATED, INC.** | § | |
| **Et al.,** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | |

## OBJECTION OF HPCG HOSPITAL INVESTMENT, LLC
## TO DEBTORS' MOTION FOR ORDER AUTHORIZING USE OF CASH
## COLLATERAL AND PROVIDING ADEQUATE PROTECTION

HPCG Hospital Investment, LLC ("HHI"), by and through its undersigned counsel, files its objection (the "Objection") to the Debtors' Motion for Order Authorizing Use of Cash Collateral and Providing Adequate Protection (the "Motion").[1]  In further support of its Objection, HHI respectfully states as follows:

## INTRODUCTION

As acknowledged by the Debtors in the Motion, HHI is the largest secured creditor in these Chapter 11 proceedings.  HHI holds a secured claim in excess of $14 million secured by substantially all of the Mezzanine Borrowers' personal property assets, including Cash Collateral.  HHI's preferred outcome for these proceedings does not involve foreclosure against HHI's collateral, including the collateralized hospitals, or terminating operations at any of those hospitals.

To date, HHI, the Court, the U.S. Trustee, and other secured and unsecured creditors have received virtually no historical or recent financial information, projections, or other data

---

[1] Unless otherwise noted, defined terms in the Motion shall have the same meaning when used in this Objection.

sufficient to draw any conclusions by which to evaluate the relief requested in the Motion.  In

particular, there is <u>no</u> consolidating information for each of the thirteen separate Debtors.  For

example, is each of the Debtors cash flow positive?  Are some Debtors cash flows negative?  If

so, why or why not?

In short, there is simply no way of fairly assessing the relief requested in the Motion.

Absent the opportunity of HHI and the other constituents to receive – and have a meaningful

time to review – detailed financial information and data from each of the Debtors, a final order

approving the Motion is not appropriate at this time.

Therefore, HHI respectfully urges the Court to either (i) grant, without prejudice to HHI,

an additional period of interim Cash Collateral authorization (with detailed information

requirements and timetables, along with other appropriate interim adequate protection and

related provisions for HHI); or (ii) deny the Motion.[2]

## BACKGROUND

1.      HHI is the Debtors' Mezzanine Lender under the terms of the Master Funding

Agreement and Amended and Restated Credit Agreement ("<u>Mezzanine Funding Agreement</u>")

entered by HHI and certain Debtors ("<u>Debtor Mezzanine Borrowers</u>").

2.      The Motion and Affidavit of Dennis Davis in Support of the Debtors' Emergency

First Day Motions concedes that HHI has liens and security interests in substantially all of the

Debtor Mezzanine Borrowers' personal property assets among other security and collateral.  <u>See</u>

Davis Affidavit ¶¶ 32-35; Motion ¶¶ 14-17.

---

[2] HHI reserves it rights to seek adequate protection and/or relief from the automatic stay with respect to any and all of its collateral, including its Cash Collateral.

3.      Contrary to the Debtors' assertions, HHI is not the cause for the Debtors' need to seek relief under chapter 11 of the Bankruptcy Code. Id. at ¶ 60. There are numerous actions (or inactions) taken by management of the Debtor that have resulted in the hasty commencement of these Chapter 11 proceedings.  Rather than acknowledge the results of their actions (or inactions), management seeks to shift blame to HHI for their current situation.[3]   Instead, management's focus should be on remedying and significantly improving the Debtors' business operations.

## THE OBJECTION

4.      HHI files this Objection based on the Debtors failure to provide HHI with adequate protection for the use of HHI's Cash Collateral.  In addition, Debtors' refusal to provide HHI financial and related information concerning the Debtors' operations exacerbates the lack of adequate protection to HHI.  This is especially troubling given the Debtors' contractual obligations to allow HHI access to financial information.[4]

5.      In connection with the Motion, HHI previously requested financial information (consolidating and consolidated) from the Debtors.  This requested financial information included, by way of example, income statements, balance sheets, cash flow statements, aged accounts receivable reports, bad debt, and a number of specific healthcare indicator reports.  To

---

[3] Suffice it to say, the Motion should not be the forum for management to litigate their allegations against HHI; and HHI certainly does not intend to do so.  In reply to the allegations in the Motion, HHI simply notes that management's effort to blame HHI for their own problems is consistent with the frivolous litigation the Debtors filed against HHI prior to the bankruptcy in an effort to force HHI to loan additional monies ("State Court Litigation").  HHI's Answer and Counterclaim in the State Court Litigation make clear that HHI has complied with all contractual or other obligations.  The effort to make HHI the scapegoat for the hasty Chapter 11 is as unfortunate as it is inaccurate.

[4] For example, Section 6.2 of the MFA requires HMC/CAH to deliver to HHI financial statements on a monthly, quarterly and yearly basis, with each set of financial statements certified by HMC/CAH's chief financial officer. The last financials certified by HMC/CAH's were provided for the period ending March 31, 2011.  The last financial information received by HHI was for the period ending May 31, 2011.

date, the Debtors have not provided, or committed to provide, any of this important data. The

information that should be provided includes, among other data, the categories set forth on

attached Exhibit A.[5]

6.      This information is necessary to evaluate Debtors' operations and to monitor the

status and value of HHI's collateral. This is especially true given the unique characteristics of

Debtors' hospitals. The information is not unusual and should be maintained by the Debtors in

the ordinary course of their operations. Thus, there should be little or no burden on the Debtors

to provide this information. However, unless and until HHI and other constituents receive and

review this information, there is virtually no ability to assess the sufficiency of adequate

protection (proposed or required) for HHI's collateral.

7.      It is axiomatic that a "secured creditor has the right to receive adequate protection

for any decline in value the collateral may suffer after the automatic stay is in effect, since, but

for the stay, the creditor could foreclose to prevent or mitigate any loss in the value of the

security." In re Domestic Fuel Com., 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) (citations

omitted). Similarly, "[s]ection 363(e) provides that, at any time on request of an entity with an

interest in the property to be used, sold or leased, a bankruptcy court must prohibit or condition

such use, sale or lease as is necessary to adequately protect the entity's interest." In re

Worldcom, Inc., 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004). Thus, the "purpose of providing

adequate protection is to insure that the secured creditor receives the value for which the creditor

bargained for prior to the debtor's bankruptcy." Id. at 618-619; In re Saypol, 31 B.R. 796, 800

---

[5] We note that the information requested by HHI with respect to the Motion is substantially less extensive than that
which Debtors would be obligated to produce under Bankruptcy Rule 2004. Surely, in the context of a debtor's cash
collateral request, a secured creditor ought not to be relegated to Rule 2004 subpoenas to obtain information directly
relevant to such a request.

(Bankr. S.D.N.Y. 1983) (adequate protection involves the protection of a secured creditors'
contractual interest in the value of its collateral to secure the payment of principal and interest,
and the creditor's ability to foreclose upon default).

8.    The facts of this case illustrate the critical need for additional adequate protection
and additional information.  As noted, the last pre-petition information HHI received from the
Debtors was through May, 2011.  Without meaningful access to financial information HHI
cannot evaluate its collateral in connection with any single hospital, much less all of the hospitals
that make-up HHI's collateral package.

9.    Accordingly, the Court should not grant the Debtors' request for a final order
authorizing use Cash Collateral.  Instead, this Court should deny the Motion, or, alternatively,
authorize the use of Cash Collateral only on an additional interim basis subject to requirements
that the Debtors provide HHI with (i) all the information requested herein on a regular and timely
basis and (ii) appropriate replacement liens and other adequate protection are provided for the
interim period.

## CONCLUSION

10.    For the foregoing reasons, HHI respectfully requests that this Court enter an
Order denying the Debtor's Motion for use of the Cash Collateral.

Dated:  October 24, 2011

Respectfully submitted,

BRYAN CAVE LLP

By:    /s/  Cassandra l. Writz
       Laurence M. Frazen, Esq. #31309
       Cassandra L. Writz, Esq. #54624
       One Kansas City Place
       1200 Main Street, Suite 3500
       Kansas City, Missouri 64105
       Ph: (816) 374-3200
       Fax (816) 374-3300

       -and-

       Gregory D. Willard, Esq. #30192
       Christopher J. Lawhorn, Esq. #45713
       One Metropolitan Square
       211 North Broadway, Suite 3600
       St. Louis, Missouri  63102
       Ph: (314) 259-2000
       Fax (314) 259-2020
       cjlawhorn@bryancave.com

**ATTORNEYS FOR HPCG HOSPITAL
INVESTMENT, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Objection was sent via the Court's electronic noticing system to all parties receiving electronic notices in this case, this 24th day of October, 2011.

       /s/  Cassandra L.Writz

## EXHIBIT A

### (Each Facility and Consolidated)

Detailed Income Statement Trailing Twelve Months (TTM)
Detailed Balance Sheet TTM
Detailed Cash Flow Statement or Statement of Cash Flows TTM
General Ledger Data Download
Aged Account Receivable Reports for TTM
Bad Debt Write-Offs for TTM
Schedule of Payments to Vendors over the last 90 days
Detailed Chargemaster Information, including pertinent contract information

Healthcare Indicators (per Month TTM)
Patient Days
Admissions
Discharges
Average Length of Stay
Daily Census
Emergency Department Visits
Surgeries
Outpatient Visits
Rural Health Clinic Encounters
Adjusted Patient Days
Adjusted Discharge
Swing Bed Occupancy Rate
Adjusted Occupied Bed
Patient Utilization (Medicare, Medicaid, Blue Cross/Blue Shield, Other Private
Insurance, Private Pay and Other)
Patient Revenue Utilization (Medicare, Medicaid, Blue Cross/Blue Shield, Other
Private Insurance, Private Pay and Other)Specific Balance Sheet/Bankruptcy
Schedules Information