IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>HMC/CAH CONSOLIDATED,<br>INC., et al.,<br><br>Debtors.[1] | Case No. 11-44738-11<br>(jointly administered) |

**OBJECTION BY MIDLAND LOAN SERVICES, INC. TO (A) CASH MANAGEMENT MOTION, (B) CASH COLLATERAL MOTION, AND (C) RELATED INTERIM CASH MANAGEMENT AND CASH COLLATERAL ORDERS**

Midland Loan Services, Inc. ("Midland"), by its counsel, hereby objects to (a) that certain Emergency Motion for Expedited Order Authorizing Maintenance of Cash Management System and Continued Use of Certain Bank Accounts, Deposit Practices and Certain Business Forms, Docket No. 6 (the "Cash Management Motion"), (b) that certain Emergency Motion for an Expedited Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) Authorizing Debtor to Use Cash Collateral and Grant of Adequate Protection, Docket No. 7 (the "Cash Collateral Motion"), (c) that certain Interim Order Granting the Cash Management Motion, Docket No. 23 (the "Interim Cash Management Order"), and (d) that certain Interim Order Granting the Cash Collateral Motion, Docket No. 24 (the "Interim Cash Collateral Order"), and requests that this Court provide certain relief to Midland under the Cash Management Motion and the Cash Collateral Motion, and modify the Interim Orders, as specified herein. In support, Midland states:

---

[1] The Debtors consist of: HMC/CAH Consolidated, Inc.; CAH Acquisition Company #1, LLC; CAH Acquisition Company #2, LLC; CAH Acquisition Company #3, LLC; Acquisition Company #4, Inc.; CAH Acquisition Company #5, LLC; CAH Acquisition Company #6, LLC; CAH Acquisition Company #7, LLC; CAH Acquisition Company #9, LLC; CAH Acquisition Company #10, LLC; CAH Acquisition Company #11, LLC; and CAH Acquisition Company #16, LLC.

1

## PRELIMINARY STATEMENT

As detailed more fully below, Midland asserts a valid, perfected, first priority lien and security interest against virtually all of the assets of CAH Acquisition Company # 4, Inc. dba Drumright Regional Hospital ("CAH # 4"), to secure certain obligations with an original unpaid principal balance of $7,666,000. According to the allegations in the Cash Management Motion and the Cash Collateral Motion, CAH # 4 is not a party to the A/R Facility with Gemino or the Mezzanine Funding Agreement with HHI. Instead, on information and belief, CAH # 4 generally operates as a "stand-alone" entity and facility with its own staff, revenues, expenses, and related activities. Therefore, Midland submits that "adequate protection" under 11 U.S.C. §§ 361 and 363 requires that this "stand alone" nature of CAH # 4 should be maintained in these cases, including but not limited to complete segregation of all cash attributable to CAH # 4, separate financial reporting for CAH # 4, and no cross-collateralization of any cash or other asset of CAH # 4 with any other creditor in these cases, including but not limited to Gemino or HHI. In addition, as detailed more fully below, Midland asserts that "adequate protection" under 11 U.S.C. §§ 361 and 363 requires that Midland be afforded certain additional protections in these cases.

## BACKGROUND

The Original Midland Loan

1. On or about October 15, 2003, Midland made a loan in the original principal amount of $7,666,000 to Drumright Municipal Healthcare Authority, a public authority organized as a public trust under the laws of the State of Oklahoma ("DMHA"), secured by all of the real and personal property affiliated with that certain property commonly known as the Drumright Memorial

2

Hospital in Drumright, Oklahoma (the "Drumright Facility"). The original loan documents ("Original Midland Loan Documents") include:

    a.    Mortgage Note and Allonge # 1 to Mortgage Note dated as of October 15, 2003 in the original principal amount of $7,666,000, executed by DMHA, as maker, in favor of Midland, as holder (the "Midland Note");

    b.    Mortgage and Rider 1 to Mortgage dated as of October 15, 2003, executed by DMHA, as mortgagor, in favor of Midland, as mortgagee, filed October 13, 2003, recorded in Book 517, page 1601, records of the County Clerk of Creek County, Oklahoma (the "Midland Mortgage");

    c.    Security Agreement between DMHA, as debtor, and Midland, as secured party, and also including the Secretary of Housing and Urban Development ("HUD") as an additional secured party, dated as of October 15, 2003 (the "Midland Security Agreement");

    d.    UCC-1 Financing Statement dated October 14, 2003, recorded in Book 517, page 1750-55, records of the County Clerk of Creek County, Oklahoma (the "Midland Fixture Filing Financing Statement")

    e.    UCC-1 Financing Statement recorded October 14, 2003 with the Oklahoma County Clerk, file # 2003012394428, continued on April 15, 2008, file # 2008004246632 (the "Midland DMHA Financing Statement");

    f.    Building Loan Agreement and Rider 1 to Building Loan Agreement dated as of October 15, 2003 between DMHA and Midland (the "Midland Building Loan Agreement");

3

  g. Regulatory Agreement dated as of October 15, 2003, filed October 13, 2003, recorded in Book 517, page 1607, records of the County Clerk of Creek County, Oklahoma (the "HUD Regulatory Agreement").

The Assumption of the Original Midland Loan by CAH # 4

  2. On or about February 13, 2008, CAH # 4 agreed to assume the Original Midland Loan Documents, including but not limited to entering into the following agreements (the "Midland Assumption Agreements") (the Original Midland Loan Documents and the Midland Assumption Agreements, the "Midland Loan Documents"):

  a. Mortgage Modification, Release and Assumption Agreement dated February 13, 2008 by and among CAH # 4, HMC/CAH Consolidated, Inc., DMHA, and Midland, recorded in Book 691, page 219, records of the County Clerk of Creek County, Oklahoma (the "Midland Mortgage Modification, Release and Assumption Agreement");

  b. UCC-1 Financing Statement recorded April 3, 2009 with the Oklahoma County Clerk, file # 2009003242527 (the "Midland CAH # 4 Financing Statement");

  c. Regulatory Agreement dated as of March 31, 2009, including Rider 1 (the "Amended HUD Regulatory Agreement").

Key Loan Provisions Relevant to These Cases

  3. In relevant part, the Amended HUD Regulatory Agreement requires:

  a. "All rents and other receipts of the project shall be deposited in the name of the project in a financial institution, whose deposits are insured by an agency of the Federal Government. Such funds shall be withdrawn only in accordance with the provisions of this agreement for expenses of the project or for distributions of surplus cash as permitted by paragraph 6(e) above. Any Owner receiving funds of the project other than by such distribution of surplus cash shall immediately deposit such funds in the project bank account and failing so to do in violation of this Agreement shall hold such funds in trust…"

4

    b.  "**Non-interference by Parent**. HMC/CAH Consolidated, Inc., a Delaware corporation ("Parent"), as the sole shareholder of [CAH # 4],…shall not take any action … which would directly or indirectly cause [CAH # 4] to violate the terms of the Loan Documents…"

  4.  In relevant part, the Midland Mortgage Modification, Release and Assumption Agreement states:

  **Bankruptcy of Purchaser or Purchaser Principal**. [CAH # 4 and Parent] covenants and agrees that in the event [CAH # 4 or Parent files a bankruptcy case]…[Midland] shall thereupon be entitled, and [CAH # 4 and Parent] irrevocably consents, to the entry of an order by a bankruptcy court granting to [Midland] relief from the automatic stay imposed by Section 362 of the Code … and [CAH # 4 and Parent] irrevocably waives its right to object to, attempt to enjoin or otherwise interfere with such relief … [CAH # 4 and Parent] further agrees that the filing of any petition for relief under the Code…shall be deemed to have been filed in bad faith and, therefore, shall be subject to prompt dismissal…

Midland is not hereby invoking this provision at this time. However, Midland reserves the right to do so depending upon the facts and circumstances that develop. Moreover, Midland submits that this provision further supports maintaining the separate existence and operation of CAH # 4 as requested herein.

The Relevant Bankruptcy Filings to Date

  5.  On or about October 10, 2011 (the "Petition Date"), Debtors commenced these cases by filing voluntary Petitions with this Court for reorganization under Chapter 11 of the United States Code (the "Bankruptcy Code").

  6.  Also on the Petition Date, Debtors filed the Cash Management Motion. Paragraphs 16 – 17 and Exhibit A of the Cash Management Motion appear to acknowledge that no accounts involving CAH # 4 are included in the Gemino Lockbox Accounts. Paragraphs 18 – 20 and Exhibit B of the Cash Management Motion appear to acknowledge that there are four CAH # 4 bank accounts that are separate from the Gemino Lockbox Accounts, and otherwise are used in the ordinary course of business to manage the cash flow of CAH # 4. However, paragraph 22 of the Cash Management Motion indicates Debtors are requesting an order that "authorizes the Debtors to

5

direct all third party payors to make payments to HMC/CAH US Bank operating account #145592399904."

7. Also on the Petition Date, Debtors filed the Cash Collateral Motion. Paragraphs 27 – 29 of the Cash Collateral Motion essentially acknowledge the obligations and collateral of Midland under the Midland Loan Documents. Exhibit A of the Cash Collateral Motion appears to acknowledge that Midland has a first priority lien and security interest in the accounts receivable for CAH # 4.

8. On or about October 12, 2011, this Court held a hearing on the Cash Management Motion, the Cash Collateral Motion, and other "first day" pleadings.

9. Also on October 12, 2011, this Court entered the Interim Cash Management Order which, in relevant part, states "The [Cash Management] Motion is GRANTED."

10. Also on October 12, 2011, this Court entered the Interim Cash Collateral Order. Among other things, the Interim Cash Collateral Order:

    a. authorizes Debtor to use certain cash collateral pursuant to a Budget through and including October 26, 2011;

    b. grants Midland and other lenders a replacement lien on certain property;

    c. reserves to Midland and other lenders the "right to request or seek other or additional protection with respect to the Cash Collateral."

    d. Directs Debtors to "use its [sic] best efforts to comply with the pre-petition financial reporting requirements pursuant to the Master Funding Agreement between certain of the Debtors and HHI for the Debtors' post-petition operations."

Objections to the Cash Management and Cash Collateral Motions and Interim Orders

ADMIN01/900999.00308/12008219.1

11. Midland respectfully submits that the Cash Management and Cash Collateral Motions, and related Interim Orders, do not provide "adequate protection" under 11 U.S.C. §§ 361 and 363 in the following respects, and therefore should be modified to address these matters:

    a. Debtors should acknowledge and agree to the claims and liens asserted by Midland under the Midland Loan Documents in these cases;

    b. All cash attributable to the Drumright facility should be segregated in a separate account and spent only to pay expenses affiliated with the Drumright Facility pursuant to a budget approved by Midland or this Court, pending further order of this Court;

    c. The budget for the Drumright facility should include timely payment of all necessary taxes and insurance;

    d. To the extent possible, the budget for the Drumright Facility should include timely payment of all principal, interest, and other amounts due on the Midland Note and Midland Loan Documents, subject to further order of this Court as to the application of said payments;

    e. Midland should be provided first priority replacement liens on the same collateral as currently provided in the Midland Loan Documents, including but not limited to all cash collateral attributable to the Drumright Facility;

    f. Midland and HUD should be provided monthly financial reports on all of the financial affairs for the Drumright Facility, including but not limited to comparisons of actual results to the budget mentioned above;

    g. Debtors should otherwise comply with all of the terms and conditions of the Midland Loan Documents to the extent possible under the circumstances, including

but not limited to providing Midland and HUD additional information about the Drumright Facility at their request, allowing inspection of the Drumright Facility, maintaining the Drumright Facility, and related matters.

WHEREFORE, Midland requests that this Court grant the relief requested herein, and grant such other and further relief as is necessary or appropriate in the circumstances.

> Respectfully submitted,
>
> STINSON MORRISON HECKER LLP
>
> By: _s/ Paul M. Hoffmann_
> Paul M. Hoffmann MO # 31922
> 1201 Walnut, Suite 2900
> Kansas City, MO 64106
> Telephone: (816) 842-8600
> Facsimile: (816) 691-3495
> phoffmann@stinson.com
>
> ATTORNEYS FOR MIDLAND LOAN SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2011, a true and correct copy of the foregoing Entry of Appearance and Request for Notices was electronically filed with the court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

> _s/ Paul M. Hoffmann_
> Paul M. Hoffmann
> An attorney for Midland Loan Services, Inc.

ADMIN01/900999.00308/12008219.1