## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | Case No. 11-44738-drd -11 |
| HMC/CAH CONSOLIDATED, INC., et al., | ) | (Joint Administration Pending) |
| Debtors.[1] | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | |

## STIPULATION AND AGREED INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the Debtors' *Emergency Motion for an Expedited Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(B) Authorizing Debtor [sic] to Use Cash Collateral and Grant of Adequate Protection* [Docket No. 7] (the "Cash Collateral Motion"), wherein the Debtors moved this Court for, among other things, the entry of an interim order authorizing the Debtors' use of cash collateral on an interim basis (the "Interim Relief"), and after notice and hearing on the Interim Relief on October 12, 2011, the entry by this Court of an order (the "First Initial Interim Cash Collateral Order") granting the Interim Relief on an interim basis through and including October 26, 2011, and a further interim hearing having been held on October 28, 2011, pursuant to which the Court continued the hearing on the relief requested in the Cash Collateral Motion to November 10, 2011, and a further interim hearing on

---

[1] The Debtors in these proceeding and the last four digits of each Debtor's federal taxpayer identification numbers are as follows: HMC/CAH Consolidated, Inc. (6921) ("HMC/CAH"); CAH Acquisition Company #1, LLC (4473) ("CAH 1"); CAH Acquisition #2, LLC (2041) ("CAH 2"); CAH Acquisition Company #3, LLC (1827) ("CAH 2"); CAH Acquisition Company #4, Inc. (0680) ("CAH 4"); CAH Acquisition Company #5, LLC (0149) ("CAH 5"); CAH Acquisition Company #6, LLC (4641) ("CAH 6"); CAH Acquisition Company #7, LLC (5335) ("CAH 7"); CAH Acquisition Company #9, LLC (1868) ("CAH 9"); CAH Acquisition Company #10, LLC (2520) ("CAH 10"); CAH Acquisition Company #11, LLC (0527) ("CAH (cont'd)

November 10, 2011 (collectively, the "Interim Hearings"), and after the Interim Hearings, the Court finds, subject to the terms and conditions hereof, that (i) the Interim Relief requested in the Cash Collateral Motion as provided herein is in the best interests of the Debtors, their estates and their creditors; (ii) the Interim Relief as provided herein is necessary to provide the Debtors with sufficient cash and liquidity to avoid immediate and irreparable harm during the term of this order; (iii) in accordance with Rule 4001(a), (b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), due and proper notice of the Cash Collateral Motion and the Initial Hearing has been given, and no other or further notice is necessary with respect to the Interim Relief; and (iv) upon the record herein, including, without limitation, statements of counsel and certain of the factual assertions raised in the *Affidavit of Dennis Davis in Support of Debtors' Emergency First Day Motions* [Docket No. 9], after due deliberation thereon, good and sufficient cause exists for the entry of this stipulation and agreed interim order granting the Interim Relief as set forth herein (the "Agreed Interim Order").  Therefore,

**THE COURT HEREBY FINDS AND CONCLUDES** that:

**Background**

A.     On October 10, 2011 (the "Petition Date"), the Debtors commenced these Chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Missouri (the "Court").

---

(cont'd)

11"); CAH Acquisition Company #12, LLC (0967) ("CAH 12"); and CAH Acquisition Company #16, LLC (2420) ("CAH 16") (collectively, the "Debtors").

Error! No property name supplied.

B.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      On October 21, 2011, the Office of the United States Trustee formed the Official Committee of Unsecured Creditors of HMC/CAH Consolidated, Inc., et al. (the "Committee").

D.      The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Chapter 11 Cases, and over the persons and property affected hereby.  Consideration of the Cash Collateral Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are Sections 105, 361, 363 and 507 of the Bankruptcy Code, and Bankruptcy Rules 4001(a), (b) and (d) and 6003.

**Prepetition Secured Loans Provided by Gemino Healthcare Finance, L.L.C.**

E.      Debtors HMC/CAH; CAH 2; CAH 3; CAH 5; CAH 7; CAH 9; CAH 10; CAH 11; CAH 12; and CAH 16 (collectively, the "Debtor A/R Borrowers"), HMC Management Company and Gemino Healthcare Finance, LLC ("Gemino") are parties to that certain Credit Agreement dated April 12, 2010 (as amended, modified or restated from time to time, the "Gemino Credit Agreement") and as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents entered into in connection with the Gemino Credit Agreement, including, without limitation, (i) that certain Joinder No. 1 and Amendment No. 1 to Credit Agreement dated July 9, 2010; (ii) that certain Amended and Restated Revolving Note dated July 9, 2010; (iii) that certain Joinder No. 2 and Amendment No. 2 to Credit Agreement dated September 16, 2010; (iv) that certain Second Amended and Restated Revolving Note dated September 16, 2010; (v) that certain Intercreditor and Subordination Agreement dated April 12, 2010 by and between Gemino and HPCG Hospital

- 3 -

Investment, LLC ("HHI") (as amended, modified or restated from time to time, the "HHI Subordination Agreement"); and (vi) that certain Intercreditor Agreement dated March 31, 2010 by and between Gemino and CFG Community Bank (as amended, modified or restated from time to time, the "CFG Subordination Agreement," and together with the HPCG Subordination Agreement, the "Subordination Agreements"), all of which, together with the Gemino Credit Agreement, shall collectively be referred to as the "Gemino Prepetition Loan Documents"[2], pursuant to which Gemino made certain loans and other extensions of credit available to the Debtor A/R Borrowers.

F.      To secure their obligations under the Gemino Prepetition Loan Documents, each of the Debtor A/R Borrowers granted to Gemino a continuing security interest in, a lien upon, and a right of set off against, and assignment to Gemino as security, all of the following property of each such Debtor A/R Borrower, whether now owned or hereafter acquired or existing, and wherever located (collectively, including "Cash Collateral (defined below), the "Gemino Prepetition Collateral"):

(a)      all accounts, payment intangibles, instruments and other rights to receive payments of the Debtor A/R Borrowers (including without limitation the Accounts[3]), whether now existing or hereafter arising or acquired,

(b)      all related General Intangibles (including without limitation, contract rights and Intellectual Property), Chattel Paper, Documents, supporting obligations, Letter-of-Credit Rights, Commercial Tort Claims set forth on Schedule 5.23 to the Gemino Credit Agreement, remedies, guarantees and collateral evidencing, securing or otherwise relating to or associated with the property in subpart (a) above, including without limitation all rights of enforcement and collection,

(c)      all Commercial Lockboxes, all Government Lockboxes, all Collection Accounts (as such terms are defined in the Gemino Credit Agreement),

---

[2] All capitalized terms not otherwise defined in this Agreed Interim Order shall have the meaning given such terms in the Gemino Prepetition Loan Documents.

[3] All capitalized terms in this Paragraph F shall have the meanings set forth in the Uniform Commercial Code unless otherwise defined herein.

Error! No property name supplied.

(d)      all funds received thereby or deposited therein, and any checks or instruments from time to time representing or evidencing the same,

(e)      all books and records of Debtor A/R Borrowers evidencing or relating to or associated with any of the foregoing, and

(f)      all information and data compiled or derived by Debtor A/R Borrowers with respect to any of the foregoing (other than any such information and data subject to legal restrictions of patient confidentiality),

(g)      all collections, Accessions, receipts and Proceeds derived from any of the foregoing.

G.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and stipulate that, in accordance with the terms of the Gemino Prepetition Loan Documents, the Debtor A/R Borrowers are truly and justly indebted to Gemino, without defense, counterclaim or offset of any kind, and that as of the Petition Date, (i) the Debtor A/R Borrowers were liable to Gemino in respect of loans made, and certain accrued and unaccrued interest, costs and fees, pursuant to the Gemino Prepetition Loan Documents in the aggregate amount of no less than $4,700,000 (exclusive of certain interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Gemino Prepetition Loan Documents, the Debtor A/R Borrowers are liable to Gemino for accrued and unpaid interest, commitment fees, attorneys' and advisors' fees, expenses and other out-of-pocket expenses, costs and indemnities (collectively, subsections (i) and (ii) of this section are the "Gemino Prepetition Obligations").

H.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and stipulate that under the Gemino Prepetition Loan Documents and as security for repayment of the Gemino Prepetition Obligations, the Debtor A/R Borrowers granted to Gemino security interests in, and liens upon, the Gemino Prepetition Collateral.

Error! No property name supplied.

I.       Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and stipulate that Gemino's security interests in, and liens on, the Gemino Pre-Petition Collateral were properly perfected and are valid and enforceable first priority liens (other than with respect to CAH #2 in which case Gemino has a second position lien with respect to such Gemino Pre-Petition Collateral) on and security interests in the Gemino Pre-Petition Collateral.  The Debtors further acknowledge that the Debtor A/R Borrowers' cash on hand and cash equivalents as of the Petition Date that constitute proceeds of the Gemino Pre-Petition Collateral are cash collateral of Gemino within the meaning of Bankruptcy Code § 363(a) ("Gemino Cash Collateral").  Gemino is entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of its interest in the Gemino Prepetition Collateral, including for the use of Cash Collateral, the use, sale or lease of the Gemino Prepetition Collateral other than Gemino Cash Collateral, and for the imposition of the automatic stay.

J.       Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), in accordance with Section 552(b) of the Bankruptcy Code, the Gemino Prepetition Collateral includes, without limitation, all proceeds, products and profits of the Gemino Prepetition Collateral, whether existing before or after the commencement of the Chapter 11 Cases.  "Available Cash" shall consist of the Debtor A/R Borrowers' cash and cash equivalents that are subject to the existing liens of Gemino.  Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and stipulate that, as of the Petition Date, all of the Debtor A/R Borrowers' Available Cash is the proceeds, products and profits of the Gemino Pre-Petition Collateral.

- 6 -

K.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and agree that all of the Debtor A/R Borrowers' Available Cash held on the Petition Date together with any cash or cash equivalent proceeds of the Gemino Pre-Petition Collateral received on or after the Petition Date shall constitute Cash Collateral.

L.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and agree that (i) the Gemino Prepetition Obligations constitute legal, valid and binding obligations of the Debtor A/R Borrowers, enforceable in accordance with the terms of the Gemino Prepetition Loan Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (ii) no offsets, defenses or counterclaims exist to the currently outstanding Gemino Prepetition Obligations, (iii) Gemino's liens and security interests on the Gemino Prepetition Collateral are first priority (except with respect to CAH 2 where such liens are second priority liens behind Citizens Bank N.A.), valid, enforceable, perfected and not subject to avoidance, subordination or challenge; (iv) no portion of the Gemino Prepetition Obligations is subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (v) Gemino's security interests in, and liens on, the Gemino Pre-Petition Collateral have priority with regard to all other liens as set forth on Exhibit A hereto, are subject to the liens granted herein and are subordinate to the Carve-Out (as defined below).

M.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 22), the Debtors acknowledge and agree that the aggregate value of the Gemino Pre-Petition Collateral exceeds the amount of the Gemino Secured Loan Obligations outstanding as of the Petition Date.

Error! No property name supplied.

N.       Without prejudice to the rights of any other party (but subject to the limitations thereon described in Paragraph 22 below), the Debtors admit, stipulate, acknowledge and agree as follows:

(i)       **Prepetition Loan Documents with First Liberty Bank.**   Prior to the Petition Date, CAH 6 was liable to First Liberty Bank for all indebtedness, liabilities and other obligations of CAH 6 under (a) that certain Loan Agreement, dated December 6, 2010 (the "First Liberty Prepetition Loan Agreement"), (b) that certain Promissory Note, dated December 6, 2010, in the original amount of $9,300,000.00 (the "First Liberty Prepetition Note", together with the Prepetition Loan Agreement, the "First Liberty Prepetition Credit Agreement"); and (c) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of First Liberty Bank, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect the "First Liberty Prepetition Loan Documents").

(ii)       **Prepetition Obligations to First Liberty Bank.**   As of the Petition Date, CAH 6 was indebted under the First Liberty Prepetition Loan Documents (a) on account of CAH 6's Obligations (as defined in the First Liberty Prepetition Loan Documents) to First Liberty Bank, in the aggregate principal amount of approximately $9,656,503.48, plus, interest accrued and accruing (at the rates set forth in the First Liberty Prepetition Loan Documents), costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the First Liberty Prepetition Loan Documents) and other obligations (collectively the "First Liberty Prepetition Obligations").

(iii)       **First Liberty Bank's Prepetition Collateral.**   To secure the First Liberty Prepetition Obligations, CAH 6 granted security interests and liens (the "First Liberty Prepetition Liens") to First Liberty Bank on certain real property and personal property of CAH 6 and the proceeds thereof, including the Cash Collateral, as described and defined as "Collateral" in the First Liberty Prepetition Loan Documents (collectively, the "First Liberty Prepetition Collateral").   The First Liberty Prepetition Obligations are secured by the First Liberty Prepetition Liens granted by CAH 6.   The First Liberty Prepetition Liens have priority with regard to all other liens as set forth on Exhibit A hereto, are subject to the liens granted herein and are subordinate to the Carve-Out (as defined below).

(iv)       **First Liberty's Prepetition Liens.**   Subject to the terms hereof, the Debtors stipulate and acknowledge that (a) the First Liberty Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the liens granted herein and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

Error! No property name supplied.

(b) the First Liberty Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the First Liberty Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the First Liberty Prepetition Obligations exist, and no portion of the First Liberty Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the First Liberty Prepetition Obligations constitute allowable claims, and (d) on the date that this Order was entered, the Debtors have waived, discharged and released First Liberty, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to the amount, validity, or enforceability of the First Liberty Prepetition Obligations, (y) to challenge or object to the validity, enforceability, or non-voidability of the First Liberty Prepetition Liens securing the First Liberty Prepetition Obligations, and (z) to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against First Liberty or arising out of, based upon or related to the First Liberty Loan Documents or otherwise.

O.    Without prejudice to the rights of any other party (but subject to the limitations thereon described in Paragraph 22 below), the Debtors admit, stipulate, acknowledge and agree as follows:

(i)    **Prepetition Loan Documents with CFG Community Bank.** Prior to the Petition Date, CFG Community Bank ("CFG Bank") extended a $2,502,710.00 loan to CAH 11 (the "CFG Loan"), as evidenced by, among other things: (a) a Loan Agreement, dated March 31, 2010, executed by and between CAH 11 and CFG Bank (the "CFG Loan Agreement"); (b) a Promissory Note, dated March 31, 2010, executed and delivered by CAH 11 to the order of CFG Bank in the stated principal amount of $2,502,710.00 (the "CFG Note"); (c) the CFG Security Documents (as hereafter defined); (d) a Guaranty of Payment and Performance, dated March 31, 2010, executed and delivered by HMC/CAH in favor of CFG Bank, pursuant to which HMC/CAH absolutely and unconditionally guaranteed payment and performance of all indebtedness and obligations that are owed by CAH 11 to CFG Bank under the CFG Loan Agreement and the CFG Note (the "HMC/CAH Guaranty"); (e) a Subordination Agreement, dated March 31, 2010, executed and delivered by HHI in favor of CFG Bank (the "HHI–CFG Subordination Agreement"); and (f) all other documents executed and/or delivered to CFG Bank under or in connection with the CFG Loan, including, without limitation all agreements, promissory notes, guaranties, mortgages, deeds of trust, security agreements, UCC financing statements, intercreditor agreements, subordination agreements, certificates, instruments, and any other related documents executed and/or delivered with, to, or in favor of CFG Bank in connection therewith or related thereto (collectively, as amended, restated, supplemented or otherwise modified from time to time, the "CFG Prepetition

- 9 -

Loan Documents").

(ii)    **Prepetition Obligations to CFG.**  As of the Petition Date, the prepetition obligations for which CAH 11 and HMC/CAH were truly and justly indebted to CFG Bank under the CFG Prepetition Loan Documents, without defense, counterclaim or offset of any kind, aggregated not less than $2,506,603.11 (consisting of outstanding principal of $2,502,710.00 and accrued and unpaid interest of approximately $3,893.11), plus all accrued or hereafter accruing and unpaid interest thereon (at the applicable interest rate(s) provided for in the CFG Prepetition Loan Documents), and any additional costs, fees, expenses (including any attorneys' fees and expenses and accountants', appraisers' and financial consultant fees and expenses), and other charges that are chargeable or reimbursable under the CFG Prepetition Loan Documents, and any other prepetition Loan Obligations (as defined in the CFG Prepetition Loan Documents) of CAH 11 and HMC/CAH (collectively the "CFG Prepetition Obligations").

(iii)    **CFG's Prepetition Collateral.**  The CFG Prepetition Obligations owed to CFG Bank under the CFG Prepetition Loan Documents are secured by valid, perfected, enforceable and non-avoidable security interests and liens in, to and against all of the assets of CAH 11 (collectively, the "CFG Prepetition Liens"), including, among other things: (a) a duly perfected, first-priority deed of trust lien in, to and against certain real property of CAH 11, and all improvements situated thereon, located at 326 Asbury Road, Ripley (Lauderdale County) Tennessee 38063 (collectively, the "Lauderdale Property"), pursuant to and as more particularly described in a Deed of Trust and Security Agreement, dated as of March 31, 2010, executed by CAH 11 for the benefit of CFG Bank, and recorded in the Register's Office of Lauderdale County, Tennessee, in Book 612, Page 270 (the "CFG Deed of Trust"); (b) a duly perfected, first-priority lien in and assignment of all rents and leases related to the Property (collectively, the "CAH 11 Rents"), pursuant to and as more particularly described in an Assignment of Rents and Leases, dated March 31, 2010, executed and delivered by CAH 11 in favor of CFG Bank, and recorded in the Register's Office of Lauderdale County, Tennessee, in Book 612, Page 299 (the "CFG Assignment of Rents"); (c) duly perfected, first-priority security interests and liens in, to and against substantially all of CAH 11's existing and after acquired business assets, including, without limitation, all machinery, furniture, fixtures, equipment, inventory, goods, rents, permits, escrow accounts (relating to the Property), insurance proceeds (relating to the Property), certain contract rights, general intangibles and similar assets of CAH 11, and all products and proceeds of the foregoing (collectively, the "CAH 11 Business Collateral"), pursuant to and as more particularly described in the CFG Deed of Trust and one or more UCC financing statements recorded among the financing records of the State of Delaware and the State of Tennessee from CAH 11 in favor of CFG Bank (collectively, the "CFG Financing Statements"); (d) duly perfected, second-priority security interests and liens in, to and against all of CAH 11's accounts, payment intangibles, instruments and other rights to receive payments, whether now existing or hereafter arising or acquired (collectively, the "CAH 11 Accounts"); and (e) duly perfected security interests

- 10 -

and liens in, to and against the Cash Collateral, as described and defined as "Collateral" in the CFG Prepetition Loan Documents (collectively, the "CFG Prepetition Collateral"). The CFG Prepetition Obligations are secured by the CFG Prepetition Liens granted by CAH 11. The CFG Prepetition Liens have priority with regard to all other liens as set forth on Exhibit A hereto, are subject to the liens granted herein and are subordinate to the Carve-Out (as defined below).

(iv) **CFG Prepetition Liens.** Subject to the terms hereof, the Debtors stipulate and acknowledge that (a) the CFG Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the liens granted herein and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the CFG Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the CFG Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the CFG Prepetition Obligations exist, and no portion of the CFG Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the CFG Prepetition Obligations constitute allowable claims, and (d) on the date that this Order was entered, the Debtors have waived, discharged and released CFG, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to the amount, validity, or enforceability of the CFG Prepetition Obligations, (y) to challenge or object to the validity, enforceability, or non-voidability of the CFG Prepetition Liens securing the CFG Prepetition Obligations, and (z) to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against CFG or arising out of, based upon or related to the CFG Loan Documents or otherwise.

P.     Without prejudice to the rights of any other party (but subject to the limitations

thereon described in Paragraph 22 below), the Debtors admit, stipulate, acknowledge and agree

as follows:

(i)     **Prepetition Loan Documents with Citizens Bank, N.A.** Prior to the Petition Date, CAH 1 was liable to Citizens Bank, N.A. ("Citizens") for all indebtedness, liabilities and other obligations of CAH 1 under (a) that certain that certain Promissory Note #23467017, dated September 30, 2008, in the original amount of $1,645,588.34 (the "Citizens Prepetition Note"),[4] (b) that certain

---

[4] The Citizens Prepetition Note matured on September 30, 2011. Citizens Bank is agreeable to a short term extension with respect to the same until January 31, 2012. Citizens Bank will make a determination after going through the necessary internal procedures and obtaining the necessary approvals, both internally and regulatory,

(cont'd)

Error! No property name supplied.

Commercial Security Agreement, dated September 30, 2008 (the "Citizens Prepetition Security Agreement", together with the Prepetition Note, the "Citizens Prepetition Credit Agreement"); and (c) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Citizens, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect the "Citizens Prepetition Loan Documents").

(ii)    **Prepetition Obligations to Citizens.**  As of the Petition Date, CAH 1 was indebted under the Citizens Prepetition Loan Documents (a) on account of CAH 1's Indebtedness (as defined in the Citizens Prepetition Loan Documents) to Citizens, in the aggregate principal amount of at least $1,476,966.07, plus, interest accrued and accruing (at the rates set forth in the Citizens Prepetition Loan Documents), costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the Citizens Prepetition Loan Documents) and other obligations (collectively the "Citizens Prepetition Obligations")[5]

(iii)    **Citizens' Prepetition Collateral.**  To secure the Citizens Prepetition Obligations, CAH 1 and CAH 2 granted security interests and liens (the "Citizens Prepetition Liens") to Citizens on certain real property and personal property of CAH 1 and CAH 2 and the proceeds thereof, including the Cash Collateral, as described and defined as "Collateral" in the Citizens Prepetition Loan Documents (collectively, the "Citizens Prepetition Collateral").  The Citizens Prepetition Obligations are secured by the Citizens Prepetition Liens granted by CAH 1 and CAH 2.  The Citizens Prepetition Liens have priority with regard to all other liens as set forth on Exhibit A hereto are subject to the liens granted herein, and are subordinate to the Carve-Out (as defined below).

(iv)    **Citizens Prepetition Liens.**  Subject to the terms hereof, the Debtors stipulate and acknowledge that (a) the Citizens Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the liens granted herein and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Citizens Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Citizens Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets,

---

(cont'd)
whether The Citizens Prepetition Note should be extended past January 31, 2012.  Accordingly, for the purposes of the "Maturity" as it relates to The Citizens Prepetition Note, January 31, 2012 shall be substituted for September 30, 2011.

[5] the parties are reconciling amounts that may be due on Loan 234567018  And, the entry of this Interim Agreed Order is without prejudice to the parties rights pertaining to Loan 234567018

**Error! No property name supplied.**

defenses or counterclaims to any of the Citizens Prepetition Obligations exist, and no portion of the Citizens Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Citizens Prepetition Obligations constitute allowable claims, and (d) on the date that this Order was entered, the Debtors have waived, discharged and released Citizens, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to the amount, validity, or enforceability of the Citizens Prepetition Obligations, (y) to challenge or object to the validity, enforceability, or non-voidability of the Citizens Prepetition Liens securing the Citizens Prepetition Obligations, and (z) to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against Citizens or arising out of, based upon or related to the Citizens Loan Documents or otherwise.

Q.    Without prejudice to the rights of any other party (but subject to the limitations thereon described in Paragraph 22 below), the Debtors admit, stipulate, acknowledge and agree as follows:

(i)    **Prepetition Loan Documents with Midland Loan Services, Inc.**  Prior to the Petition Date, CAH 4 was liable to Midland Loan Services, Inc., and its successors and assigns (collectively "Midland") for all indebtedness, liabilities and other obligations of CAH 4 under (a) that certain that certain Mortgage Note, dated October 15, 2003, in the original amount of $7,668,000.00 (the "Midland Prepetition Note"), (b) that certain Security Agreement, dated October 15, 2003 (the "Midland Prepetition Security Agreement", (c) that certain Mortgage and Rider 1 to Mortgage dated as of October 15, 2003, as thereafter assigned and modified by that certain Mortgage Modification, Release and Assumption Agreement dated February 13, 2008 (the "Midland Prepetition Mortgage"), (d) that certain MRF Trust Fund Agreement dated as of October 15, 2003, as thereafter assigned pursuant to that certain Assignment and Assumption of MRF Trust Fund Agreement dated as of February 15, 2008 (the "Midland Prepetition MRF Trust Fund Agreement") (d) that certain Regulatory Agreement dated as of October 13, 2003, as thereafter modified by that certain Regulatory Agreement dated as of March 31, 2009 (the "Midland/HUD Regulatory Agreement") (together with the Midland Prepetition Note, the Midland Prepetition Security Agreement, the Midland Prepetition Mortgage, the Midland Prepetition MRF Trust Fund Agreement, the "Midland Prepetition Credit Agreement"); and (e) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Midland, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect the "Midland Prepetition Loan

- 13 -

Documents").

(ii)     **Prepetition Obligations to Midland.**   As of the Petition Date, CAH 4 was indebted under the Midland Prepetition Loan Documents (a) on account of CAH 4's Obligations (as defined in the Midland Prepetition Loan Documents) to Midland, in the aggregate principal amount of approximately $6,629,121.18, plus, interest accrued and accruing (at the rates set forth in the Midland Prepetition Loan Documents), costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the Midland Prepetition Loan Documents) and other obligations (collectively the "Midland Prepetition Obligations").

(iii)     **Midland's Prepetition Collateral.**   To secure the Midland Prepetition Obligations, CAH 4 granted security interests and liens (the "Midland Prepetition Liens") to Midland on certain real property and personal property of CAH 4 and the proceeds thereof, including the Cash Collateral, as described and defined as "Collateral" in the Midland Prepetition Loan Documents (collectively, the "Midland Prepetition Collateral").   The Midland Prepetition Obligations are secured by the Midland Prepetition Liens granted by CAH 4 or its predecessor. The Midland Prepetition Liens have priority with regard to all other liens as set forth on Exhibit A hereto, are subject to the liens granted to Midland herein and may become subordinate to the Carve-Out (as defined below).

(iv)     **Midland Prepetition Liens.**   Subject to the terms hereof, the Debtors stipulate and acknowledge that (a) the Midland Prepetition Liens are valid, binding, enforceable, and perfected first priority liens, subject only to the liens granted to Midland herein and possibly the Carve-Out, and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Midland Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Midland Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Midland Prepetition Obligations exist, and no portion of the Midland Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Midland Prepetition Obligations constitute allowable claims, (d) notwithstanding anything else to the contrary in this Order, the Debtors shall comply with the Midland/HUD Regulatory Agreement, (e) nothing in this Order shall alter or amend any right of Midland, HUD, CAH # 4 or any other party to the funds held pursuant to the Midland Prepetition MRF Trust Fund Agreement, and (f) on the date that this Order was entered, the Debtors have waived, discharged and released Midland, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to the amount, validity, or enforceability of the Midland Prepetition Obligations, (y) to challenge or object to the validity, enforceability, or non-voidability of the Midland Prepetition Liens securing the Midland Prepetition Obligations, and (z)

- 14 -

to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against Midland or arising out of, based upon or related to the Midland Loan Documents or otherwise.

R.  Without prejudice to the rights of any other party (but subject to the limitations thereon described in Paragraph 22 below), the Debtors admit, stipulate, acknowledge and agree as follows:

(i)  **Prepetition Loan Documents with Fidelity Security Life Insurance Company, Rosalia Hall, Richard Jones, Larry Arthur, DFP, LLC, Sun Finance, Inc., and CAROJOTO, LLC.**  Prior to the Petition Date, HMC was liable to Fidelity Security Life Insurance Company, Rosalia Hall, Richard Jones, Larry Arthur, DFP, LLC, Sun Finance, Inc., and CAROJOTO, LLC (collectively, "Fidelity") for all indebtedness, liabilities and other obligations of HMC under (a) that certain that certain Promissory Note, dated January 24, 2011, in the original amount of $1,500,000.00, (b) that certain Promissory Note, dated January 24, 2011, in the original amount of $100,000.00, (c) that certain Promissory Note, dated January 24, 2011, in the original amount of $50,000.00, (d) that certain Promissory Note, dated January 24, 2011, in the original amount of $50,000.00, (e) that certain Promissory Note, dated January 24, 2011, in the original amount of $250,000.00, (f) that certain Promissory Note, dated January 24, 2011, in the original amount of $250,000.00, (g) that certain Promissory Note, dated January 24, 2011, in the original amount of $100,000.00, (collectively the "Fidelity Prepetition Notes"), (h) that certain Security Agreement, dated January 24, 2011 (the "Fidelity Prepetition Security Agreement", together with the Prepetition Note, the "Fidelity Prepetition Credit Agreement"); and (i) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Fidelity, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect the "Fidelity Prepetition Loan Documents").

(ii)  **Prepetition Obligations to Fidelity.**  As of the Petition Date, HMC was indebted under the Fidelity Prepetition Loan Documents (a) on account of HMC's obligations under the Fidelity Prepetition Loan Documents to Fidelity, in the aggregate principal amount of at least $2,300,000.00, plus, interest accrued and accruing (at the rates set forth in the Fidelity Prepetition Loan Documents), costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the Fidelity Prepetition Loan Documents) and other obligations (collectively the "Fidelity Prepetition Obligations").

- 15 -

(iii)    **Fidelity's Prepetition Collateral.**    To secure the Fidelity Prepetition Obligations, HMC granted security interests and liens (the "Fidelity Prepetition Liens") to Fidelity on (a) certain personal property of HMC and the proceeds thereof, including the Cash Collateral, as described and defined as "Collateral" in the Fidelity Prepetition Loan Documents, and (b) HMC's Equity Interests (as defined in the Fidelity Prepetition Loan Documents) in CAH 4 (collectively, the "Fidelity Prepetition Collateral").    The Fidelity Prepetition Obligations are secured by the Fidelity Prepetition Liens granted by HMC.    The Fidelity Prepetition Liens have priority with regard to all other liens as set forth on Exhibit A hereto, are subject to the liens granted herein and are subordinate to the Carve-Out (as defined below).

(iv)    **Fidelity Prepetition Liens.**    Subject to the terms hereof, the Debtors stipulate and acknowledge that (a) the Fidelity Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the liens granted herein and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Fidelity Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Fidelity Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Fidelity Prepetition Obligations exist, and no portion of the Fidelity Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Fidelity Prepetition Obligations constitute allowable claims, and (d) on the date that this Order was entered, the Debtors have waived, discharged and released Fidelity, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to the amount, validity, or enforceability of the Fidelity Prepetition Obligations, (y) to challenge or object to the validity, enforceability, or non-voidability of the Fidelity Prepetition Liens securing the Fidelity Prepetition Obligations, and (z) to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against Fidelity or arising out of, based upon or related to the Fidelity Loan Documents or otherwise.

S.    HHI asserts as follows:

(i)    **Prepetition Loan Documents with HHI.**    Prior to the Petition Date, HHI entered into that certain Master Funding Agreement and Amended and Restated Credit Agreement (the "Mezzanine Funding Agreement"), dated as of August 21, 2009, with HMC/CAH, CAH 1, CAH 2, CAH 3, CAH 5, CAH 7, CAH 9, CAH 10, CAH 11 (collectively, the "Debtor Mezzanine Borrowers").    For purposes of CMS cost reporting, each Mezzanine Borrower executed a separate note for those amounts funded under the Mezzanine Funding Agreement related to its facility only.    HHI and the Debtor Mezzanine Borrowers are parties to the Security

- 16 -

Error! No property name supplied.

Agreement, dated as of August 21, 2009. All other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of HHI, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect the "HHI Prepetition Loan Documents").

(ii)    **Prepetition Obligations to HHI.**    As of the Petition Date, obligations owed under the HHI Prepetition Loan Documents to HHI, totaled in the aggregate principal amount of approximately $13,983,987, plus all additional amounts as set forth in the HHI Prepetition Loan Documents, costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the HHI Prepetition Loan Documents) and other obligations (collectively the "HHI Prepetition Obligations").

(iii)    **HHI's Prepetition Collateral.**    To secure the HHI Prepetition Obligations, security interests and liens (the "HHI Prepetition Liens") were granted to HHI in substantially all of the Debtor Mezzanine Borrowers' personal property assets, including, but not limited to, the following: (a) all Accounts; (b) all Chattel Paper; (c) all Deposit Accounts; (d) all Documents; (e) all Equipment; (f) all Fixtures; (g) all General Intangibles; (h) all Instruments; (i) all Inventory; (j) all Investment Property; (k) all Letter of Credit Rights; (l) all Vehicles; (m) all books and records; and (n) the proceeds of all the foregoing property (collectively, clauses (a) through (n), the "HHI Prepetition Collateral"). The lien rights are cross-collateralized among the Debtor Mezzanine Borrowers. The HHI Prepetition Liens have priority with regard to all other liens as set forth on Exhibit A hereto, are subject to the liens granted herein and are subordinate to the Carve-Out (as defined below).

(iv)    **HHI Prepetition Liens.**    HHI asserts that the HHI Prepetition Liens are valid, binding, enforceable, and perfected liens.

(v)    **Reservation Of Rights.**    HHI and the Debtors reserve all rights they may have against one another.

T.    Hereafter: (i) Gemino, First Liberty Bank, CFG, Citizens, Midland, Fidelity, are referred to, collectively, as the "Prepetition Lenders"; (ii) the Gemino Prepetition Loan Documents, Liberty Bank Prepetition Loan Documents, CFG Prepetition Loan Documents, Midland Prepetition Loan Documents, and Fidelity Prepetition Loan Documents are referred to, collectively, as the "Prepetition Loan Documents"; (iii) the Gemino Prepetition Collateral, Liberty Bank Prepetition Collateral, CFG Prepetition Collateral, Midland Prepetition Collateral,

- 17 -

and Fidelity Prepetition Collateral are referred to, collectively, as the "<u>Prepetition Collateral</u>"; and (iv) the Gemino Prepetition Loan Obligations, Liberty Bank Prepetition Loan Obligations, CFG Prepetition Loan Obligations, Midland Prepetition Loan Obligations, and Fidelity Prepetition Loan Obligations are referred to, collectively, as the "<u>Prepetition Loan Obligations</u>".

U.    Notwithstanding anything to the contrary herein, the Debtors reserve all rights, pursuant to section 506(a) of the Bankruptcy Code to challenge the extent of the value of any of the Prepetition Lenders' interests in their Prepetition Collateral.

### The Debtors' Need for Use of Cash Collateral

V.    An immediate need exists for the Debtors to have access to the Prepetition Lenders' respective Cash Collateral in order to continue their operations, meet their payroll and other necessary, ordinary course business expenditures, administer and preserve the value of their estates, and maintain adequate access to cash in amounts customary and necessary for companies of this size in this industry to maintain customer and vendor confidence. The ability of the Debtors to finance their operations by way of working capital requires their access to cash resources, the absence of which would immediately and irreparably harm the Debtors, their estates, and their creditors. The Debtors require these cash resources to operate their businesses, preserve the confidences of vendors, suppliers and patients, and to preserve the value of their businesses.

W.    The Debtors have requested that, pursuant to Section 363(c) of the Bankruptcy Code, the Prepetition Lenders consent to the Debtors' use of their respective Cash Collateral and the Debtors' use, sale and lease of the other Pre-Petition Collateral pursuant to the terms and conditions of this Agreed Interim Order during the Interim Cash Collateral Period (as defined below). The Debtors acknowledge and agree that the Prepetition Lenders are entitled to adequate protection pursuant to Sections 361 and 363(e) of the Bankruptcy Code with respect to

- 18 -

their respective Cash Collateral and other Pre-Petition Collateral, including, without limitation, to compensate the Prepetition Lenders for any loss or diminution in the value of their respective Cash Collateral or other Pre-Petition Collateral resulting from the Debtors' use of their respective Cash Collateral, the use, sale or lease of other Pre-Petition Collateral and the imposition of the automatic stay during the Interim Cash Collateral Period.

X.    Subject to the entry, and continued effectiveness, of this Agreed Interim Order, the Prepetition Lenders have consented to the Debtors' use of their respective Cash Collateral and use, sale or lease of other Pre-Petition Collateral during the Interim Cash Collateral Period. The foregoing notwithstanding, nothing in this Agreed Interim Order shall be construed as limiting or prohibiting the Prepetition Lenders from objecting to any relief sought by the Debtors in these Chapter 11 Cases, including, without limitation, any DIP Financing[6] or any motion for the further use of their respective Cash Collateral, other than the entry of this Agreed Interim Order and any Final Order entered on the Cash Collateral Motion ("Final Order"), provided such final order is on terms acceptable to the Prepetition Lenders.

Y.    The Interim Relief requested herein is, subject to the terms and conditions hereof, necessary, essential and appropriate for the continued operations of the Debtors' businesses and the preservation of their estates and the value of the Debtors' businesses.

Z.    Good and sufficient cause has been shown for the entry of this Agreed Interim Order.  Among other things, the entry of this Agreed Interim Order is in the best interests of the Debtors, their creditors and their estates because it will enable the Debtors to (i) continue operating their businesses and avoid an immediate shutdown of operations, (ii) meet obligations

---

[6] Midland's consent is limited to the budget period expiring on December 16, 2011 as to the Drumright hospital. The term "DIP Financing" means any debtor-in-possession financing facility, cash loans or liquidity facility

(cont'd)

Error! No property name supplied.

for payroll, necessary expenditures, and other operating expenses, (iii) pay necessary fees and professional expenses under the Bankruptcy Code and make payments authorized under other orders entered by the Court, (iv) obtain needed goods and services, (v) retain vendor, patient and employee confidence, and (vi) maintain adequate cash resources customary and necessary for hospitals of this size, thereby avoiding immediate and irreparable harm to the Debtors' estates.

AA.    Prior notice of the Interim Hearing for the entry of the Agreed Interim Order and the Interim Relief requested in the Cash Collateral Motion was given by the Debtors to (i) the office of the United States Trustee for the Western District of Missouri; (ii) all known parties asserting liens on the Debtors' assets; (iii) counsel to the Prepetition Lenders; and (iv) the parties listed on the Debtors' list of twenty (20) largest unsecured creditors (the "Initial Notice Parties"). Requisite, due and proper notice has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code and no other notice need be provided for entry of this Agreed Interim Order.

BB.    The Debtors have requested immediate entry of this Agreed Interim Order pursuant to Bankruptcy Rule 6004(g), and the Prepetition Lenders have consented to the Interim Relief contained herein. Good and sufficient cause has been shown for the entry of this Agreed Interim Order.

NOW, based upon the Cash Collateral Motion of the Debtors and the record before the Court with respect to the Cash Collateral Motion made by the Debtors, the Prepetition Lenders and the Committee at the Interim Hearing, and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** effective immediately that:

---

(cont'd)

provided to the Debtors pursuant to Section 364 of the Bankruptcy Code secured by liens on and against property of the Debtors' estates. Any party that provides the Debtors with DIP Financing shall be referred to as a "DIP Lender."

**Error! No property name supplied.**

1.      The Cash Collateral Motion is GRANTED with respect to the Interim Relief on
the terms and conditions set forth herein and the findings and conclusions above are true in all
respects and incorporated by reference in this Agreed Interim Order.

2.      (a)      So long as no breach of the termination provisions pursuant to section 16
hereof has occurred, this Agreed Interim Order shall remain in effect until the earliest of (i) the
close of business on December 31, 2011, or (ii) the conclusion of the final hearing on the Cash
Collateral Motion authorizing the Debtors' continued use of Cash Collateral (the "Final
Hearing") (such period, as it may be extended pursuant to the following proviso, the "Interim
Cash Collateral Period").  The Debtors' ability and authorization to use the Prepetition
Lenders' Cash Collateral during the Interim Cash Collateral Period shall at all times be subject
to the termination provisions of Paragraph 16 of this Agreed Interim Order.

(b)      During the Interim Cash Collateral Period, the Debtors waive any right to
seek relief under the Bankruptcy Code, including, without limitation, under Sections 105(a) and
363(c), to the extent any such relief would in any way restrict or impair the rights and remedies
of the Prepetition Lenders as set forth in this Agreed Interim Order; *provided*, *however*, (i) after
the occurrence of a termination event set forth in Paragraph 16 hereof, the Debtors may seek
entry of an Order authorizing the use of any Prepetition Lender's Cash Collateral over its
objection; (ii) at any time, the Debtors may seek to sell the Pre-Petition Collateral; and (iii) with
respects to sub-paragraphs (i) and (ii) above, the Prepetition Lenders reserve all rights and
remedies, under the Bankruptcy Code, this Agreed Interim Order or otherwise, including,
without limitation, the right to object to any such relief that involves their respective Cash
Collateral or Prepetition Collateral.  If the Debtors, or any other person, challenges the expiration
or termination of the Interim Cash Collateral Period, any such objector's remedy shall be limited

Error! No property name supplied.

to requesting a hearing before the Court, with at least five (5) business days' written notice to the

Prepetition Lenders.  A change in circumstances shall not be grounds for modification of this

Section 2(b).

### Good Faith, Reliance and Conduct

3.       The Debtors, the Prepetition Lenders and their respective agents, advisors and

employees have acted in good faith in negotiating, consenting and agreeing to the Debtors' use

of the Prepetition Lenders' respective Cash Collateral and use, sale and lease of other Pre-

Petition Collateral as contemplated and provided by this Agreed Interim Order.  The negotiation

of the terms and provisions of this Agreed Interim Order have been conducted at arm's length,

and the Court finds that such terms and conditions are fair and reasonable, under the

circumstances, and reflect the Debtors' exercise of reasonable business judgment consistent with

the Debtors' fiduciary duties.

4.       To the extent any Prepetition Lender is not secured in the Pre-Petition Collateral,

it shall not have Replacement Liens (as defined below) or a Super-Priority Claim (as defined

below) with regard to any use of Cash Collateral which is not found to be Cash Collateral

pursuant to Section 363 of the Bankruptcy Code.  In the event that any Court of competent

jurisdiction determines, in a final non-appealable order, that any Prepetition Lender was

undersecured or unsecured as of the Petition Date, and not entitled to be paid interest, fees and

related charges post-petition, then, with respect to any such Prepetition Lender, (i) the Debtors'

obligations to make all payments and to comply with all other terms and conditions established

by this Agreed Interim Order shall not terminate or abate, but all such payments of interest, fees

and related charges paid during the Interim Cash Collateral Period shall be applied to the secured

principal amount of the Prepetition Lender's Obligations as of the Petition Date, or as may

otherwise be provided in such order, and (ii) the Prepetition Lender(s) shall be entitled to a

- 22 -

hearing before the Court with at least five (5) business days' written notice to the Debtors and their counsel, re-examining the adequate protection of its secured interests in the Pre-Petition Collateral and Replacement Collateral (as defined below), and the authority of the Debtors to use a particular Prepetition Lender's Cash Collateral.

5.    (a)    Nothing in this Agreed Interim Order, the Prepetition Loan Documents or any related documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Lenders or their agents, advisors or employees (in their capacities as such) any liability for any claims arising from the activities of the Debtors or any of their affiliates, before or after the Petition Date, in the operation of their businesses, or in connection with its restructuring efforts.

(b)    In exercising any of their rights or remedies, as and when permitted pursuant to this Agreed Interim Order or the Prepetition Loan Documents, the Prepetition Lenders shall not be deemed to be in control of the operations of the Debtors.

6.    Based on the findings set forth in this Agreed Interim Order, and the Prepetition Lenders' reliance in good faith on the terms thereof, if any of the provisions of this Agreed Interim Order are hereafter modified, vacated or stayed by an order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any claim, lien, security interest or priority authorized for the Prepetition Lenders' benefit that is granted or attaches prior to the effective date of such stay, modification or vacation, and any use of Cash Collateral or use, sale or lease of other Pre-Petition Collateral by the Debtors pursuant to this Agreed Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Agreed Interim Order.

Error! No property name supplied.

**Authorized Use of Prepetition Lenders' Cash Collateral**

7.      Cash Collateral.  The Debtors are hereby authorized to use Cash Collateral during the Interim Cash Collateral Period, subject to the conditions and limitations set forth herein.

8.      Authorized Uses of Cash Collateral.  The Debtors may use Cash Collateral during the Interim Cash Collateral Period, as limited by the Budget described in Paragraph 11 herein, to pay only the ordinary and reasonable expenses of operating its businesses which are necessary to avoid immediate and irreparable harm.  To avoid any misunderstanding HMC/CAH charges each of the Debtor hospitals for services provided to such Debtors by HMC/CAH and these services are ordinary course and reasonable expenses of operating the Debtors business and necessary to avoid immediate and irreparable harm.  Furthermore, HMC/CAH makes certain distributions and consolidated disbursements on behalf of and for the benefit of the other Debtors which disbursements are reimbursed to HMC/CAH from the applicable Debtor, and such distributions and consolidated disbursements are in the ordinary course of business, are reasonable and necessary expenses and are necessary to avoid immediate and irreparable harm to the Debtors.

9.      Modification of Prepetition Loan Documents.  During the Interim Cash Collateral Period, the terms of the Prepetition Loan Documents shall continue in full force and effect except as may be modified by operation of law or pursuant to the terms of this Agreed Interim Order.

**Adequate Protection**

Adequate Protection in Favor of Prepetition Lenders for the Debtors' Use of Cash Collateral

10.     Adequate Protection.  On account of the Debtors' use of Cash Collateral, their use, sale or lease of the other Prepetition Collateral and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, in each case during the Interim Cash Collateral Period, the Prepetition Lenders are hereby granted the following adequate protection with

- 24 -

respect to such Prepetition Lenders' respective Prepetition Collateral, pursuant to Sections 361 and 363(e) of the Bankruptcy Code:

(a)    <u>Interest, Fees and Costs</u>.  Debtors shall make monthly adequate protection payments to the Prepetition Lenders, as follows:  (i) $75,000.00 to Gemino payable upon the entry of the Agreed Interim Order for the Petition Date through the entry of this Agreed Interim order and thereafter $90,000.00 payable on or before the 5th day of each month; (ii) $61,767.00 to Liberty Bank beginning on November 11, 2011; (iii) $26,293.19 to CFG Bank immediately upon the entry of the Agreed Interim Order, and continuing on the first (1st) day of each month thereafter during the term of the Agreed Interim Order; (iv) $14,766.00 to Citizens beginning upon the entry of the Agreed Interim Order; (v) $50,570.00 to Midland beginning on October 31, 2011; and (vi) $21,083.00 to Fidelity beginning on January 6, 2012.  To the extent that the foregoing adequate protection payments are not sufficient to cover a particular Prepetition Lender's interest, fees and costs, the Prepetition Lenders reserve all rights to add such deficiencies to their outstanding loan balances and the Budget (as defined below) shall not be a cap on amounts that may be allowable pursuant to section 506(b) of the Bankruptcy Code.

(b)    <u>Replacement Collateral and Replacement Liens</u>.  The Debtors hereby grant, assign and pledge to the Prepetition Lenders and HHI valid, perfected and enforceable liens and security interests (the "<u>Replacement Liens</u>") in all of the Debtors' property created from and after the Petition Date and all of the Debtors' right, title and interest in, to and under the Pre-Petition Collateral, to the extent same existed on the Petition Date and the proceeds, products, offspring, rents and profits of all of the foregoing, all as may otherwise be described in the Prepetition Loan Documents (collectively, the "<u>Replacement Collateral</u>").

Error! No property name supplied.

(c)    <u>Automatic Perfection of Replacement Liens</u>.  The Replacement Liens

granted under this Agreed Interim Order shall be valid, perfected and enforceable against the

Replacement Collateral as of the Petition Date without further filing or recording of any

document or instrument or the taking of any further actions, and shall not be subject to dispute,

avoidance or subordination.  Notwithstanding the automatic perfection of the Replacement Liens

granted pursuant to this Agreed Interim Order, the Prepetition Lenders are hereby authorized, but

not required, to file financing statements and other similar instruments in any jurisdiction, and to

take any other action they deem necessary or appropriate in order to validate, evidence or perfect

such Replacement Liens.  A certified copy of this Agreed Interim Order may, in the Prepetition

Lenders' discretion, be filed with any filing offices in addition to, or in lieu of, such financing

statements or other similar instruments, and all filing offices are hereby authorized to accept such

certified copy of this Agreed Interim Order for filing.  The Debtors are authorized and directed to

execute and deliver all instruments and documents prepared by the Prepetition Lenders and to

pay all reasonable fees and expenses that are reasonably required or necessary to facilitate any

such filings or recordings elected to be made by the Prepetition Lenders.

(d)    <u>Priority of Replacement Liens</u>.  The Replacement Liens granted hereunder

shall be subject and subordinate in priority to (i) any liens, security interests and other

encumbrances, existing as of the Petition Date, (ii) any liens, security interests and other

encumbrances that attach to the Replacement Collateral after the Petition Date, that are senior,

valid, perfected, and enforceable, that are granted with the Prepetition Lenders' consent or that

are otherwise senior to the pre-petition liens in favor of Prepetition Lenders, and (iii) the Carve-

Out.  The Replacement Liens shall be valid and enforceable against any trustee appointed in the

Debtors' Chapter 11 Cases, or in any subsequent proceeding affecting the Debtors, including any

Error! No property name supplied.

conversion of any of the Debtors' Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy

Code.  The Replacement Liens granted to any Prepetition Lender shall have the same priority in

Debtor's property as set forth in Exhibit A hereto.

      (e)     Taxes and U.S Trustee Fees.  The Debtors shall and hereby agree to pay

all post-petition federal, state and county taxes (other than real property taxes) and quarterly fees

required to be paid pursuant to 28 U.S.C. § 1930(a)(6), as and when due, regardless of whether

such taxes or fees appear on the Budget and any such payments in excess of amounts budgeted

pursuant to paragraph 11 below shall not be considered in calculating whether Debtors have

exceeded the Budget and caused a default or termination event under the Agreed Interim Order.

      (f)     Superpriority Administrative Expense Claim.  Subject and subordinate

only to the Carve-Out (defined below), the Prepetition Loan Obligations, to the extent that the

stay under section 362 of the Bankruptcy Code, or the use, sale, or lease of the Prepetition

Collateral results in the diminution in value of any Prepetition Lender's interest in its Prepetition

Collateral and Cash Collateral for the period from the Petition Date through the termination of

the Interim Cash Collateral Period, are hereby granted and entitled to status as an administrative

expense claim (the "Super-Priority Claim") pursuant to Section 507(b) of the Bankruptcy

Code, with priority over all other administrative expense claims, now existing or hereafter

arising, of the kind specified in or ordered pursuant to Sections 105, 326, 330, 331, 351, 503(b),

506(c), 507(a), and 1114 of the Bankruptcy Code; provided, however, that as between the

respective Prepetition Lenders, any Super-Priority Claim shall have the priority set forth in

Exhibit A hereto in each of the respective Debtor cases where such Prepetition Lender is a

secured party.  HHI shall be entitled to a Super-Priority Claim on the same terms as the

Prepetition Lenders, in any particular case, to the extent that HHI is determined to be a secured

Error! No property name supplied.

lender with regard to that Debtor and such Super Priority Claim shall be a claim only in that

Debtor's case.[7]

## **The Budget**

11.    <u>Interim Budget</u>.  Attached to this Agreed Interim Order as <u>Exhibit B</u> is a budget

(the "<u>Budget</u>") for the period from October 10, 2011 through and including April 6, 2012, which

has been prepared by the Debtors.  The Budget reflects, on a line-item basis, anticipated cash

receipts and expenditures and includes all necessary and required expenses which the Debtors

expect to incur during the term of the Budget in order to avoid immediate and irreparable harm.

The Debtors are authorized to use the Cash Collateral only for payment of such items as is set

forth in the Budget, with allowance for a ten percent (10%) aggregate (and not line-item)

variance on a rolling forward, cumulative basis (such variance to be calculated on a 4 week

basis) and also subject to the terms and conditions set forth in the Prepetition Loan Documents

and this Agreed Interim Order; <u>provided</u>, <u>however</u>, for purposes of calculating such variance, any

line item reflecting payment of professional fees shall not be included and no such professional

shall be entitled to be paid more than is set forth on such line item (other than as set forth in

Paragraph 22).  Any disbursements by the Debtors other than for budgeted amounts that cause

more than a 10% variance as set forth above (other than the Prepetition Lenders' interest, fees

and expense reimbursement), shall constitute a termination event in accordance with the

provisions of this Agreed Interim Order unless the Prepetition Lenders consent to those changes

in writing or the Court enters an Order, after notice to the Prepetition Lenders and a hearing.  The

Prepetition Lenders are not required to advance to the Debtors any amounts that may be

available for lending under the Prepetition Loan Documents.

---

[7] Any claims provided pursuant to this Agreed Interim Order to HHI are expressly subject to the

(cont'd)

Error! No property name supplied.

## Disclosure Required of the Debtors

12.    <u>Required Disclosure</u>.  As additional adequate protection for the benefit of the

Prepetition Lenders, the Debtors shall provide the Prepetition Lenders the following information

during the Interim Cash Collateral Period:

(a)    <u>Reporting</u>.  Copies of all reports as are required by the Prepetition Loan

Documents or such additional reports as any Prepetition Lender may reasonably request from

time to time, all in form, detail and substance reasonably satisfactory to such Prepetition Lender;[8]

(b)    <u>Copies of Documents</u>.  Copies of (i) all non-privileged reports, appraisals,

business plans, investigations or other similar documents provided to any Official Committee or

any potential DIP Lender, (ii) any and all audits prepared by the Debtors' accountants, and

(iii) subject to the Debtors' reasonable best efforts, copies of every final version of all non-

privileged consultants' reports, appraisals, business plans and similar documents as they become

available to the Debtors;[9]

(c)    <u>Communications Regarding Any Asset Sale, DIP Loan or Plan of</u>

<u>Reorganization</u>.  Monthly oral status reports concerning any asset sale, DIP Loan or Plan of

Reorganization involving any of the Debtors, together with copies of all non-privileged

documents  including, without limitation, letter(s) of intent, copies of draft and final versions of

all consultants' reports, business plans, term sheets, equity purchase agreements, merger

agreements, asset purchase agreements, Chapter 11 plan term sheets, draft Chapter 11 plans

---

(cont'd)
pending state court litigation between certain of the Debtors and HHI.
[8] In addition, Debtors will provide the information in subparagraph (a) to HHI.
[9] With regard to Paragraph 12, Subparagraphs (b)(i), (b)(iii) and (c), the Debtors shall provide the Prepetition Lenders with a privilege log, within seven (7) business days of the Debtors providing such documents to any Official Committee or that become available to the Debtors, identifying the title of the document provided, preparer of the document, the legal privilege claimed and a general description of such document(s).

Error! No property name supplied.

and similar documents as they become available to the Debtors; provided, however, pursuant to this subparagraph, each Prepetition Lender shall only be entitled to information that pertains to such Prepetition Lender's interest in collateral.

(d)     Requests for Additional Information.  Within five (5) business days or such other time period agreed to at the time of the request by Gemino, the Debtors shall, to the extent possible, provide such requested non-privileged reports, analysis, documents and information as reasonably requested; and

(e)     Weekly Reports.  On each Wednesday, no later than 10:00 p.m. (applicable Central Time), a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for the preceding week, the dollar variance and the percentage variance of such actual receipts and disbursements from those reflected in the Budget for that week, and the rolling forward, cumulative variance from the Budget.

(f)     Monthly Reports.  As soon as available, but in any event within forty-five (45) days after the end of each month, commencing with the month ending October 31, 2011 and for each month thereafter, deliver to the Prepetition Lenders their respective Debtors' internally prepared monthly consolidated and consolidating financial statements, along with year-to-date information, including a balance sheet, income statement and statement of cash flows with respect to the period measured.

13.     If the Debtors fail to deliver the reports, documents, information and analysis to the Prepetition Lenders by the dates and times required under Paragraph 12, the Prepetition Lenders may request that the Court further restrict the Debtors' use of the Cash Collateral, and the Debtors agree that the Prepetition Lenders' request shall be heard in an expedited manner by the Court with at least five (5) business days' written notice to the Debtors.

Error! No property name supplied.

14.    <u>Access and Inspection</u>.  Upon written notice by any Prepetition Lender, to Debtors and their counsel, the Debtors shall, within three (3) business days, permit any of the Prepetition Lenders agents, consultants, advisors, auditors and employees (collectively, "<u>Consultants</u>") full and reasonable access, during normal business hours, to inspect, review and photocopy or otherwise duplicate (as applicable) the Debtors' books, records and place of business to verify the existence, condition, value and location of property in which the Prepetition Lenders hold liens or security interests.  The Debtors shall permit, without material disruption to the operation of the Debtors' business, Consultants full access to examine the respective corporate, financial and operating records, make copies thereof, inspect the assets, properties, operations and affairs of the Debtors, visit any or all of the offices of the Debtors to discuss such matters with their officers, independent auditors (and the Debtors hereby authorize such independent auditors to discuss such matters with the Consultants), and the Debtors shall cooperate with the Consultants in all respects.  The Debtors shall provide the Prepetition Lenders and the Consultants, with commercial reasonable promptness, such financial information concerning the Debtors' cash flow projections, business plan, and other aspects of operations as such parties may reasonably request from time to time except matters and documents that are privileged.

## <u>Accounts</u>

15.    <u>Cash Management Accounts</u>.  (a) to the extent Section 345(b) of the Bankruptcy Code requires otherwise, the Debtors shall maintain the cash management system as in existence as of the Petition Date, in accordance with (i) the First Initial Interim Cash Collateral Order and (ii) the Interim Order Granting Emergency Motion for Expedited Order Authorizing Maintenance of Cash Management System and Continued Use of Certain Existing Bank Accounts, Deposit Practices and Certain Business Forms [Docket No. 23], except as may be

Error! No property name supplied.

modified by any final order entered on the Debtors' *Emergency Motion for Expedited Order Authorizing Maintenance of Cash Management System and Continued Use of Certain Existing Bank Accounts, Deposit Practices and Certain Business Forms [Docket No. 6]* or the Cash Collateral Motion.  The Debtors and Gemino shall use reasonable efforts to negotiate a closing of some or all of the accounts at CBP.

(b)  Except as otherwise agreed to by Gemino and for tracking purposes during this Initial Interim Period, Cash Collateral that is subject to Gemino's interest in Cash Collateral and for which Gemino is in first-priority position as identified in <u>Exhibit A</u> hereto shall (i) be deposited into Debtors' accounts (the "<u>Collection Accounts</u>") in a manner consistent with the Debtors' and Gemino's pre-petition practices; (ii) to the extent a Collection Account is at an institution other than Citizens Bank of Pennsylvania ("<u>CBP</u>"), the Debtors shall transfer any Cash Collateral collected in such a Collection Account to CBP such that the Cash Collateral shall aggregate into accounts at CBP prior to being transferred to the Debtors' disbursement account; and (iii) the Debtors shall not disburse from the Collection Accounts except to CBP to be aggregated for transfer.  Gemino's existing rights to receive account and balance information and review account balances electronically with CBP shall be preserved.  To avoid any confusion, any automatic cash sweeps from the Citizens Bank of Pennsylvania accounts to accounts held by Gemino are stayed.  The requirements of this paragraph **<u>do not apply</u>** to Cash Collateral that is not subject to Gemino's interest in Cash Collateral and for which Gemino is not in first-priority position as identified on <u>Exhibit A</u> hereto.

(c)      All entities that have taken or will take possession of Cash Collateral following the Petition Date are directed to return such amounts by wire transfer to the Debtors US Bank

Error! No property name supplied.

Account # 145592399904 within 24 hours of receiving service of this Interim Order or within 24 hours of receiving such amounts, whichever is later.

### Termination of the Debtors' Ability to Use Cash Collateral

16.    Termination Events.  A Prepetition Lender(s) may seek an expedited hearing on no less than five (5) business days written notice seeking to terminate the Debtors' ability to use the respective Prepetition Lender's Cash Collateral during the Interim Cash Collateral Period: (i) immediately upon the occurrence of any event described in Subparagraphs (a), (c), (d), (e), (f), (g), (h), or (j) below, or (ii)  if any event described in any other subparagraph below shall occur, five (5) business days after a Prepetition Lender delivers written notice to the Debtors that an event of default has occurred, unless such event of default has been fully cured within such five (5) business day period:

(a)    the expiration of the Agreed Interim Order as provided in Paragraph 2 hereof, other than due to the entry of the Final Order or any other order of the Court approving the Debtors' use of Cash Collateral, without a particular Prepetition Lender's prior written consent to such extension of the Interim Cash Collateral Period;

(b)    the Debtors failure to comply with any of the material terms or conditions of this Agreed Interim Order, including, but not limited to, the Midland/HUD Regulatory Agreement;

(c)    the modification or extension of this Agreed Interim Order, without providing the Prepetition Lenders a minimum of five (5) business days prior written notice of the hearing on such modification or extension;

(d)    the Debtors fail to remit to any Prepetition Lender any payments required under this Agreed Interim Order;

- 33 -

(e)      an application is filed by the Debtors, without the prior written consent of the affected Prepetition Lender, for the approval of any claim arising under Section 507(b) of the Bankruptcy Code or any lien in the Chapter 11 Cases which is *pari passu* with or senior to the affected Prepetition Lender's Super-Priority Claim or Replacement Liens, excluding, in all cases, the Super-Priority Claims, Replacement Liens or other liens arising under or otherwise permitted by this Agreed Interim Order; provided, however, it shall not be a termination event as to a particular Prepetition Lender if Debtors obtain postpetition financing that completely pays off and replaces that particular Prepetition Lender's loans (with or without that Prepetition Lender's consent) on one or more of the Debtor hospitals;

(f)      (i) any of the Debtor A/R Borrowers' Chapter 11 Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (ii) any of the Debtor A/R Borrowers shall file a motion, or other pleading, seeking dismissal of any of their Chapter 11 Cases under Section 1112 of the Bankruptcy Code, or otherwise; or (iii) a trustee under Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' businesses (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106 of the Bankruptcy Code shall be appointed or elected in any of the Debtor A/R Borrowers' Chapter 11 Cases.  To avoid any confusion, the Debtors are parties to a certain lawsuit against HHI in the Circuit Court of Jackson County, Missouri, and such lawsuit *is **not*** a termination event herein;

(g)      (i) any of the Debtors shall assert in any pleading filed in any court that any material provision of this Agreed Interim Order is not valid and binding for any reason, or (ii) any material provision of this Agreed Interim Order shall for any reason, other than the entry of the Final Order, or any other order of this Court approving the Debtors' use of Cash

- 34 -

Error! No property name supplied.

Collateral, cease to be valid and binding without the prior written consent of a particular

Prepetition Lender;

(h)      any laps of insurance on any of the Debtor's properties;

(i)      any of the Debtor A/R Borrowers shall fail to comply with Sections 2.03

(Interest and Fees), 2.05 (Payments), 2.07 (Lockboxes and Collections), 6.01 (Payment of Taxes

and Claims), 6.02 (Maintenance of Insurance, Financial Records and Existence), 6.03 (Business

Conducted), 6.05 (Taxes), 6.08 (Officer's Certificate), 6.12 (Places of Business), 6.15 (Accounts

Receivable Monitoring System), 6.17 (Compliance with Laws), 6.18 (Collateral Reporting), 6.19

(Collateral), 6.22 (Change in Management), 6.25 (Deposit Account Control Agreements; Bank

Accounts), 7.02 (Liens and Encumbrances), 7.03 (Negative Pledge), 7.04 (Transactions with

Affiliates or Subsidiaries), 7.06 (Investments), 7.07 (Loans to Other Persons), 7.08

(Subordinated Debt Payments) and 7.09 (Distributions) of the Gemino Prepetition Loan

Documents, except to the extent that such compliance is excused by this Agreed Interim Order or

operation of the Bankruptcy Code;

(j)      if DIP Financing has been approved by the Court with regard to any of the

Debtors, a default under the DIP Financing agreement shall be a default under this Agreed

Interim Order;

(k)      the occurrence of a condition or event after the Petition Date that, in the

reasonable judgment of a particular Prepetition Lender, could be reasonably expected to have a

material adverse effect on the property, business, condition (financial or otherwise) or prospects

of the Debtors, taken as a whole, or the Prepetition Collateral for that particular Prepetition

Lender; or

Error! No property name supplied.

(l)    any governmental authority exercises any rights in connection with setoff or recoupment or other similar remedies with respect to any material amount owing any Account, except to the extent such setoff or recoupment is related to an ERP entered into in the Debtors' ordinary course of business.

Upon the occurrence of a termination event with respect to any Prepetition Lender, as set forth above (and including any applicable cure period), such Prepetition Lender's consent to the Debtors' use of  such Prepetition Lender's Cash Collateral shall automatically terminate and the Debtors may not use, sell or lease such Cash Collateral and shall segregate and account for any such Cash Collateral in their possession, custody or control, and shall hold such Prepetition Lender's Cash Collateral for the exclusive benefit of such Prepetition Lender, subject to further order of the Court.

### Exercise of Remedies by the Prepetition Lenders

17.    <u>Limitation on Exercise of Rights and Remedies</u>.  The Prepetition Lenders shall not take any action during the Interim Cash Collateral Period to seize or take control over any of their respective Cash Collateral, Pre-Petition Collateral, Replacement Collateral or the Debtors' other property, nor shall they impose freezes of assets or seek to exercise any alleged right of setoff or recoupment, or exercise any other right or remedy against their respective Pre-Petition Collateral, Cash Collateral, Replacement Collateral or the Debtors' other property during the Interim Cash Collateral Period; <u>provided</u>, that the Prepetition Lenders may do any of the foregoing after application to, and receiving authority from, the Court, to the extent necessary, upon a breach or violation by the Debtors of any of the terms or conditions of, or upon the termination of, this Agreed Interim Order.

18.    <u>Additional Relief</u>.  Notwithstanding any provision hereof, this Agreed Interim Order is without prejudice to each Prepetition Lender's rights to seek any other or additional

- 36 -

Error! No property name supplied.

relief in, or relating to, the Chapter 11 Cases, including, without limitation, relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code, and the filing of objections and/or claims relating to motions for adequate protection, or the use, sale, lease or other disposition of their respective Pre-Petition Collateral, Replacement Collateral or Cash Collateral. Each Prepetition Lender expressly reserves its rights to claim that the provisions of this Agreed Interim Order do not constitute "adequate protection" for the purposes of Sections 361 and 363(c) and (e) of the Bankruptcy Code, or otherwise, and to request additional protection over and above the provisions of this Agreed Interim Order.

19.    <u>No Waiver</u>.  Except as expressly set forth herein, no rights of any Prepetition Lender are waived pursuant to, or modified by, this Agreed Interim Order.  Each Prepetition Lender's rights and remedies pursuant to the Prepetition Loan Documents and this Agreed Interim Order shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies.  Any Prepetition Lender's failure, at any time or times hereafter, to require strict performance by the Debtors of any provision of this Agreed Interim Order shall not waive, affect or diminish any right of that Prepetition Lender thereafter to demand strict compliance and performance herewith.  Any failure or delay on any Prepetition Lender's part in the exercise of any rights, remedies, claims, powers, benefits or privileges under the Prepetition Loan Documents or this Agreed Interim Order shall not constitute a waiver by that Prepetition Lender, subject the Prepetition Lender to any liability to any entity under this Agreed Interim Order or preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  No Prepetition Lender's rights or remedies under this Agreed Interim Order shall be deemed to

Error! No property name supplied.

have been suspended or waived by the Prepetition Lender unless such suspension or waiver is in writing and directed to the Debtors or the Court specifying such suspension or waiver.

20.    <u>No Reliance</u>.  In the negotiation of this Agreed Interim Order, the Prepetition Lenders did not, and during the Interim Cash Collateral Period, the Prepetition Lenders do not, have any obligation or duty to any other entity to exercise any of their rights, remedies, claims, powers, benefit or privileges.  No entity may rely upon any delay or failure or in any way seek to assert a defense to any obligation owing to the Prepetition Lenders based on the Prepetition Lenders' failure or delay to exercise their rights or remedies.

### Additional Provisions Governing Rights of the Parties

21.    <u>Proofs of Claim</u>.  Each Prepetition Lender  may, but shall not be required to, file proofs of claim in respect of claims arising from the Prepetition Loan Obligations or the Prepetition Loan Documents, in the Chapter 11 Cases, such claims being fully acknowledged by the Debtors and asserted by each Prepetition Lender with notice to all parties in interest.

22.    <u>Challenge Rights</u>.  The findings contained in recital paragraphs of this Agreed Interim Order shall be binding upon all parties in interest, including without limitation, the Debtors and any Official Committee, except if and to the extent (a) a party in interest (other than the Debtors but including any Official Committee) has filed an adversary proceeding challenging the amount, validity, enforceability, perfection,  priority, or avoidability (under Chapter 5 of the Bankruptcy Code or otherwise) of the Prepetition Loan Obligations or Prepetition Lenders' liens on the Pre-Petition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Prepetition Lenders relating to the Prepetition Loan Obligations, on behalf of the Debtors' estate, no later than January 31, 2012 unless such deadline is extended by order of the Court by agreement of the parties or for good cause shown, and (b) the Court subsequently enters a final judgment in favor of the plaintiff in any such timely and properly filed adversary

- 38 -

proceeding.  For all purposes in the Chapter 11 Cases and any subsequent Chapter 7 case, the

Prepetition Lenders' liens on the Pre-Petition Collateral shall be deemed legal, valid, binding,

perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise

unavoidable, and the Prepetition Lenders, the Prepetition Loan Obligations and Prepetition

Lenders' liens on the Pre-Petition Collateral shall not be subject to any other or further challenge

by any party in interest seeking to exercise the rights of the Debtors' estates, including without,

limitation, any successor thereto (including, without limitation, any Chapter 7 Trustee).  If any

such adversary proceeding is properly commenced as of such date, the findings contained in the

recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except

to the extent that such findings were expressly challenged and modified by final judgment in

such adversary proceeding.

23.    Carve-Out.  Prior to the Final Hearing, the Debtors and Prepetition Lenders shall

attempt to negotiate an appropriate "Carve-Out" or similar procedure for the payment of allowed

professional fees and disbursements incurred by the professionals retained, pursuant to

Bankruptcy Code §§ 327, 328 or 1103(a).  Notwithstanding anything herein to the contrary, no

Pre-Petition Collateral, Cash Collateral, or any portion of the Carve-Out may be used to object to

or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority,

extent or enforceability of the Prepetition Loan Obligations or the liens securing the Prepetition

Loan Obligations, or to prosecute or assert any claims or causes of action against the Prepetition

Lenders.  Nothing contained herein shall limit or impair the Prepetition Lenders' rights to object

to any request for compensation submitted by any professional retained by the Debtors or the

Committee, all of such rights being expressly preserved.

Error! No property name supplied.

24.    <u>Marshalling</u>.  Notwithstanding any other term or condition hereof, or of the Prepetition Loan Documents, the Prepetition Lenders shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Pre-Petition Collateral or the Replacement Collateral.

<u>**Miscellaneous**</u>

25.    <u>Binding Effect</u>.  The provisions of this Agreed Interim Order shall amend and replace the First Interim Cash Collateral Order, nunc pro tunc to the Petition Date, and be binding upon and inure to the benefit of the Debtors, the Prepetition Lenders, any Official Committee, and any trustee subsequently appointed for the estate of the Debtors, whether in the Chapter 11 Cases or in the event of a conversion to a case under Chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Agreed Interim Order.

26.    <u>Force and Effect, Jurisdiction</u>.  In the event that any order dismissing the Chapter 11 Cases is entered pursuant to Section 1112 of the Bankruptcy Code, or otherwise, (a) the Prepetition Loan Obligations, Replacement Liens and Super-Priority Claim granted to or for the benefit of the Prepetition Lenders pursuant to this Agreed Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Agreed Interim Order until all of the Prepetition Loan Obligations shall have been indefeasibly paid in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

27.    <u>Continuing Effect of Subordination Agreements</u>.  Any Subordination Agreements shall remain in full force and effect, be governed, in all respects, by section 510 of the Bankruptcy Code and shall continue with respect to the liens and security interests granted to the Prepetition Lenders under this Agreed Interim Order and the Prepetition Loan Documents.

Error! No property name supplied.

28.   <u>Titles and Headings</u>.  The titles and headings in this Agreed Interim Order are and shall be without substantive meaning or content of any kind whatsoever.

29.   <u>Time of the Essence</u>.  Time is of the essence as to all terms, conditions and provisions set forth in this Agreed Interim Order.

30.   <u>Amendment and Modification</u>.  The terms and conditions in this Agreed Interim Order may not be amended, altered, modified or affected without the prior written consent of the Debtors and Prepetition Lenders; <u>provided</u>, <u>however</u>, any Prepetition Lender and the Debtors may make non-material modifications or amendments to the Budget relating to that Prepetition Lender's Cash Collateral in a writing signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder.

31.   <u>Immediate Effect</u>.  This Agreed Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution thereof.

## NOTICE OF FINAL HEARING

32.   <u>Final Hearing</u>.  Following entry of this Agreed Interim Order, the Debtors shall immediately provide notice of the Cash Collateral Motion and a copy of this Agreed Interim Order and notice of the Final Hearing to (i) the Initial Notice Parties, (ii) any counsel to the Committee, (iii) any party that has filed a request for notice in the Chapter 11 Cases within 24 hours of the entry of this Order; and (iv) to the Patient Care Ombudsman (if appointed).  Such notice shall constitute good and sufficient notice of the Final Hearing.  The notice of approval of this Agreed Interim Order shall state that any party in interest objecting to the use of Cash Collateral or the terms of the Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than December 1, 2011 by 4:00 p.m. prevailing Central time, which

Error! No property name supplied.

objections shall be served so that the same are received on or before such date by:  (a) counsel to

the Debtors, Husch Blackwell LLP, 4801 Main Street, Suite 1000, Kansas City, MO 64112,

Attn:  Mark T. Benedict; (b) counsel to the Committee; (c) the U.S. Trustee; (d) counsel to

Gemino, (i) Vedder Price P.C., 222 North LaSalle Street, Suite 2600, Chicago, Illinois 60601,

Attn:  Michael M. Eidelman and Jonathan E. Aberman; and (ii) Polsinelli Shughart PC, 700 W.

47th St., Suite 700, Kansas City, MO 64112-1802, Attn:  Jim Bird and Andrew J. Nazar; and (e)

counsel to all other Prepetition Lenders and HHI.   Any objections by creditors or other parties in

interest to any of the provisions of this Agreed Interim Order shall be deemed waived unless

filed and served in accordance with the notice on or before the close of business on such date.  A

hearing to approve the Final Order shall take place on December 13, 2011, at 1:30 p.m.

    33.    <u>Reports to Committee</u>.  All reports that the Debtors provide to the Prepetition

Lenders pursuant to paragraph 12 above shall be provided to the Committee.

    34.    <u>Conflict</u>.  To the extent of any conflict between the terms of this Agreed Interim

Order and any other order, including but not limited to any order granting the Debtors' Motion

for Entry of an Order Authorizing Debtors to Maintain their Cash Management System and to

Continue Use of Certain Existing Bank Accounts, Deposit Practices and Certain Business Forms,

this Agreed Interim Order and any final cash collateral order shall control.

    35.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court has and will retain jurisdiction

to enforce this Agreed Interim Order according to its terms.

Dated:  November 10, 2011                    /s/Dennis R. Dow
        Kansas City, Missouri                The Honorable Dennis R. Dow
                                             United States Bankruptcy Judge

Error! No property name supplied.

## EXHIBIT A

## PRIORITY OF PREPETITION LENDERS' LIENS

| Entity | AKA | Location | Accounts Receivable |
| --- | --- | --- | --- |
| CAH 1 | Washington County Community Hospital | Plymoth, NC | Citizens Bank (1st) HHI (2nd) |
| CAH 2 | Oswego Medical Center | Oswego, KS | Citizens Bank (1st) Gemino (2nd) HHI (3rd) |
| CAH 3 | Horton Community Hospital | Horton, KS | Gemino (1st) HHI (2nd) |
| CAH 4 | Drumwright Regional Hospital | Drumwright, OK | Midland Loan for HUD |
| CAH 5 | Hillsboro Community Hospital | Hillsboro, KS | Gemino (1st) HHI (2nd) |
| CAH 6 | 1-70 Community Hospital | Sweet Springs, MO | Shareholder Loan (1st) First Liberty of OK (2nd) |
| CAH 7 | Prague Community Hospital | Prague, OK | Gemino (1st) |
| CAH 9 | Seiling Community Hospital | Seiling, OK | Gemino (1st) HHI (2nd) |
| CAH 10 | Yadkin Valley Community Hospital | Yadkinville, NC | Gemino (1st) HHI (2nd) |
| CAH 11 | Lauderdale Community Hospital | Ripley, TN | Gemino (1st) |
|  |  |  | CFG Community Bank (2nd) |
| CAH 12 | Fairfax Community Hospital | Fairfax, OK | Gemino |
| CAH 16 | Haskell County Community Hospital | Stigler, OK | Gemino |
| CORP | HMC/CAH Consolidated, Inc. | Kansas City, MO | Gemino (1st) HHI (2nd) |

Error! No property name supplied.

**EXHIBIT B**

## BUDGET

Error! No property name supplied.