THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE JOINT PLAN.   ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.11-44738-11 |
| | ) | (Jointly Administered) |
| HMC/CAH CONSOLIDATED, INC., | ) | Chapter 11 |
| et al., | ) | |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

**JOINT DISCLOSURE STATEMENT PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE FOR DEBTORS' JOINT
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**(NO SUBSTANTIVE CONSOLIDATION)**

HUSCH BLACKWELL LLP
Attorneys for Debtors
and Debtors-in-Possession
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000

---

[1]  The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: HMC/CAH Consolidated, Inc. (6921); CAH Acquisition Company #1, LLC (4473); CAH Acquisition Company #2, LLC (2041); CAH Acquisition Company #3, LLC (1827); CAH Acquisition Company #4, Inc. (0680); CAH Acquisition Company #5, LLC (0149); CAH Acquisition Company 6, LLC (4641); CAH Acquisition Company 7, LLC (5335); CAH Acquisition Company 9, LLC (1868); CAH Acquisition Company 10, LLC (2520); CAH Acquisition Company 11, LLC (0527); CAH Acquisition Company 12, LLC (0967); and CAH Acquisition Company 16, LLC (2420).

## TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................................1
   A.  Holders of Claims and Equity Interests Entitled to Vote.....................................3
   B.  Voting Procedures.............................................................................................9
   C.  Confirmation Hearing .....................................................................................10

II. OVERVIEW OF THE PLANS..................................................................................11

III. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS UNDER THE PLANS ..............................................................................23

IV. GENERAL INFORMATION....................................................................................57
   A.  Overview of Chapter 11 ..................................................................................57
   B.  Description of the Debtors' Businesses ...........................................................57
   C.  Prepetition Credit Structure ............................................................................58
      1.    Accounts Receivables Financing .............................................................58
      2.    Mezzanine Financing ..............................................................................58
      3.    Lauderdale (CAH 11) Financing .............................................................59
      4.    I-70 (CAH 6) Financing...........................................................................59
      5.    Drumright (CAH 4) Financing.................................................................60
      6.    Washington County Hospital (CAH 1) Financing.....................................60

V. EVENTS PRIOR TO THE COMMENCEMENT OF THE CHAPTER 11
CASES..........................................................................................................................60
   A.  HHI's Failure to Meet its Funding Obligations ...............................................60
   B.  Impact of HHI's Failures to Fund on A/R Facility ..........................................62

VI. SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES .............................62
   A.  Filing and First Day Orders ............................................................................62
   B.  Debtors' Retention of Professionals ...............................................................63
   C.  Appointment of the Committee and Retention of Professionals .......................63
   D.  The Cash Collateral Order ..............................................................................64
   E.  Claims Process and Bar Dates ........................................................................65
      1.    Schedules and Statements ........................................................................65
      2.    Bar Date .................................................................................................65
      3.    Approval of Equipment Replacement.......................................................65
      4.    Approval of EMR Financing ....................................................................66
      5.    Appointment of Ombudsman at CAH 16 and Favorable Ombudsman Report ........66
      6.    Purchase of Gemino Note ........................................................................66

VII. OTHER ISSUES WHICH MAY AFFECT DISTRIBUTIONS UNDER THE
PLANS .........................................................................................................................67
   A.  Healthcare Reforms and Future Implementation..............................................67
   B.  Economic Crisis ..............................................................................................67
   C.  HHI Litigation.................................................................................................67

D.    *Pro Rata* Distributions to Holders of Class 3B Claims electing Option 1
      Treatment ...............................................................................................68
E.    Environmental Liabilities...............................................................................68
F.    Potential Causes of Action ............................................................................68

**VIII. THE CHAPTER 11 PLANS** ...............................................................................**68**
A.    Description of the Classes and Summary of Treatment....................................68
   1.      Administrative Claims ..........................................................................69
   2.      Fees and Expenses of Professionals........................................................69
   3.      Priority Tax Claims .............................................................................71
   4.      HHS Secured ERP and Overpayment Claims...........................................71
   5.      Convenience Classes ...........................................................................71
   6.      Section 503(b)(9) Claims ......................................................................72
   7.      Descriptions and the Specific Treatment of the Classes of Each Debtor...................72
      HMC Plan ...........................................................................................72
      CAH 1 Plan .........................................................................................77
      CAH 2 Plan .........................................................................................80
      CAH 3 Plan .........................................................................................83
      CAH 4 Plan .........................................................................................86
      CAH 5 Plan .........................................................................................89
      CAH 6 Plan .........................................................................................92
      CAH 7 Plan .........................................................................................95
      CAH 9 Plan .........................................................................................97
      CAH 10 Plan .......................................................................................100
      CAH 11 Plan .......................................................................................103
      CAH 12 Plan .......................................................................................107
      CAH 16 Plan .......................................................................................109
   8.      Tort Claims .......................................................................................111
B.    Means for Implementation and Execution of the Plans ...................................112
   1.      Participating New Equity Owners Will Fund Plans ................................112
   2.      Creditor Trust...................................................................................112
   3.      Corporate Action ..............................................................................112
   4.      Effectuating Documents and Further Transactions...................................112
   5.      Closing of the Chapter 11 Cases ..........................................................112
C.    Distributions................................................................................................113
   1.      Method of Distribution Under the Plans ...............................................113
   2.      Timing of Distributions Under the Plan.................................................113
D.    Procedures for Treating Disputed Claims Under the Joint Plan ......................113
   1.      Disputed Claims................................................................................113
     (a)      No Distribution Pending Allowance ...........................................114
     (b)      Resolution of Disputed Claim .....................................................114
     (c)      Estimation .................................................................................115
     (d)      Allowance of Disputed Claims ....................................................115
     (e)      Release of Funds from Disputed Claims Reserve...........................115
     (f)      Deadline to File Objections to Claims .........................................116
E.    Treatment of Executory Contracts and Unexpired Leases ............................116
   1.      Generally.........................................................................................116

2.   Payment of Cure Costs.................................................................................116
3.   Approval of Assumption, Assumption and Assignment or Rejection of
     Executory Contracts and Unexpired Leases ...............................................117
4.   Claims for Damages....................................................................................117
5.   Postpetition Executory Contracts and Unexpired Leases ...........................117
F.   Effect of Confirmation.......................................................................................117
1.   No Substantive Consolidation.....................................................................117
2.   Vesting of Debtors' Assets and Claims in Reorganized Debtors and Creditor
     Trust Assets.................................................................................................118
     (a)   Debtors' Assets ................................................................................. 118
     (b)   Creditor Trust Assets ........................................................................ 118
3.   Binding Effect.............................................................................................118
4.   Discharge of Claims....................................................................................118
5.   Discharge. ...................................................................................................119
6.   Retention of Net Operating Loss Carryforwards. .......................................119
7.   Injunction or Stay........................................................................................120
8.   Release of Assets. .......................................................................................120
9.   Term of Injunctions or Stays.......................................................................120
10.  Rights of Action..........................................................................................121
11.  Exculpation. ...............................................................................................121
12.  Releases.......................................................................................................121
13.  Special Provisions Regarding HHI Litigation. ...........................................122
14.  Post-Effective Date Management and Operations of the Reorganized
     Debtors.........................................................................................................123
G.   Conditions Precedent to Effectiveness of the Plans.........................................123
1.   Conditions Precedent to Effective Date of Plans .......................................123
2.   Waiver of Conditions Precedent ................................................................124
3.   Effect of Failure of Conditions ..................................................................124
H.   Miscellaneous Provisions...................................................................................124

IX. CERTAIN FACTORS TO BE CONSIDERED....................................................124
A.   Certain Bankruptcy Considerations ..................................................................124

X. CONFIRMATION OF THE CHAPTER 11 PLANS ...........................................125
A.   Confirmation Hearing .......................................................................................125

XI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
PLANS ........................................................................................................................126
A.   Liquidation Under Chapter 7 ............................................................................126
B.   Alternative Plan of Liquidation ........................................................................126
C.   Certain Risk Factors..........................................................................................126

XII. TAX CONSEQUENCES OF THE JOINT PLAN.............................................127

XIII. CONCLUSION..................................................................................................127

# I.

## INTRODUCTION

HMC/CAH Consolidated, Inc., and 12 of its wholly-owned subsidiaries, as debtors and debtors-in-possession (each a "Debtor" and, collectively, the "Debtors") in these above-captioned, jointly administered chapter 11 cases, submit this Joint Disclosure Statement (the "Disclosure Statement") pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code") to holders of Claims against and Equity Interests in the Debtors in connection with (i) the solicitation of acceptances of each of the Debtors' plans of reorganization filed within the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 6, 2012, as the same may from time to time be amended (the "Joint Plan" or the "Plans," and with respect to each individual Debtor's chapter 11 plan, a "Plan"), filed by the Debtors with the United States Bankruptcy Court for the Western District of Missouri (the "Bankruptcy Court") and (ii) the hearing to consider confirmation of the Plan (the "Confirmation Hearing") scheduled for [_____], 2012, commencing at [_____] prevailing Central Time. Unless otherwise defined herein, all capitalized terms contained herein have the meanings ascribed to them in the Joint Plan.

The above-captioned Debtors, each of whom submitted a Plan in conjunction with this Disclosure Statement, are: (i) HMC/CAH Consolidated, Inc. ("HMC"); (ii) CAH Acquisition Company #1, LLC ("CAH 1"); (iii) CAH Acquisition Company #2, LLC ("CAH 2"); (iv) CAH Acquisition Company #3, LLC ("CAH 3"); (v) CAH Acquisition Company #4, Inc. ("CAH 4"); (vi) CAH Acquisition Company #5, LLC ("CAH 5"); (vii) CAH Acquisition Company 6, LLC ("CAH 6"); (viii) CAH Acquisition Company 7, LLC ("CAH 7"); (ix) CAH Acquisition Company 9, LLC ("CAH 9"); (x) CAH Acquisition Company 10, LLC ("CAH 10"); (xi) CAH Acquisition Company 11, LLC ("CAH 11"); (xii) CAH Acquisition Company 12, LLC ("CAH 12"); and (xiii) CAH Acquisition Company 16, LLC ("CAH 16").

The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. The Debtors are 13 separate legal entities and will remain separate under the Joint Plan which constitutes thirteen separate and distinct chapter 11 plans. This Disclosure Statement pertains to and describes each of the Chapter 11 Plans of each of the Debtors. For all purposes, the Debtors will continue to maintain their separate corporate existence, except as otherwise expressly provided for in the Joint Plan. Although the Debtors are filing a single Disclosure Statement that describes each of the Plans, the Debtors have not been substantively consolidated, are not proposing a substantively consolidated Plan or Plans, and the Debtors believe there is no basis for substantive consolidation.

The purpose of the Disclosure Statement is to provide sufficient information to enable creditors of the Debtors who are entitled to vote to make an informed decision as to whether to accept or reject the respective Debtors' Plans. This Disclosure Statement describes:

- the provisions of the Plans (Section II)

- the classification and treatment of Claims and Equity Interests under the Plans (Section III)

- the businesses of the Debtors (Section IV)

- the events leading to the commencement of the Chapter 11 Cases (Section V)

- significant events that have occurred in the Debtors' Chapter 11 Cases (Section VI)

- other issues which may affect distributions under the Plans (Section VII)

- the Plans (Section VIII)

- certain factors creditors should consider before voting (Section IX)

- the procedure for confirming the Plans (Section X)

- alternatives to confirmation and consummation of the Plans (Section XI)

- the existence, management, and dissolution of the Debtors (Section XII) and

- certain federal tax issues (Section XIII).

Attached as Exhibits to this Disclosure Statement are copies of the following documents:

- The Joint Plan (Exhibit A), and

- The Debtors' Liquidation Analysis (Exhibit B),

- Debtors' audited consolidated and consolidating financial statements for fiscal year 2010 (Exhibit C),

- Debtors' unaudited consolidated and consolidating financial statements for fiscal year 2011 (Exhibit D),

- Debtors' unaudited cumulative financial statements for fiscal year 2012 through April 30, 2012 (Exhibit E),

- Debtors' financial projections through fiscal year 2016 (Exhibit F), and

- Collected schedules to Disclosure Statement (Exhibit G).

Please note that if there is any inconsistency between the Joint Plan and the descriptions in this Disclosure Statement, the terms of the Joint Plan will govern; provided,

<u>however</u>, that if the Joint Plan is merely ambiguous with respect to a particular provision, then this Disclosure Statement reflects the intent of such ambiguous provision.

In addition, ballots for voting to accept or reject the individual Plans with respect to each of the respective Debtors against which a claimant holds a Claim ("Ballot") is enclosed with the Disclosure Statement for the holders of Claims that are entitled to vote to accept or reject each such Plan, as explained below.

Claimants must only vote to accept or reject the Plan with respect to the applicable Debtor against which such Claimant has a Claim.  A Claimant's vote with respect to a Plan for a Debtor against which it does not have a Claim is not a valid vote. To the extent that a Claimant holds Claims against more than one Debtor, such Claimant may be entitled to vote on more than one Plan, but in such case, the creditor must submit a separate ballot for each Plan with respect to which the creditor is entitled to vote.

On [_____], 2012, after notice and a hearing, the Bankruptcy Court entered the Disclosure Statement Order, approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment as to whether to accept or reject the Plans.   APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN(S).

The Disclosure Statement Order sets forth in detail the deadlines, procedures, and instructions for voting to accept or reject the Plan(s) and for filing objections to confirmation of the Plan(s), the record date for voting purposes, and the applicable standards for tabulating votes and elections contained in the Ballots.  In addition, detailed voting instructions accompany each Ballot.  Each holder of a Claim entitled to vote on a Plan or Plans will receive a solicitation package in the mail containing the Disclosure Statement, the Joint Plan, the Disclosure Statement Order, and a Ballot or Ballots, as appropriate, and should read these materials, including the instructions accompanying the Ballot(s), in their entirety before voting on the Plan(s).  These documents contain, among other things, important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes.  No solicitation of votes to accept the Plan(s) may be made except with approval of the Bankruptcy Court and pursuant to section 1125 of the Bankruptcy Code.

## A.     Holders of Claims and Equity Interests Entitled to Vote

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or interests in classes of claims or interests that are impaired and that are not deemed to have rejected a proposed plan are entitled to vote to accept or reject a proposed plan.  Classes of claims or interests in which the holders of claims or interests are unimpaired under a chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the plan. Classes of claims or equity interests in which the holders of such claims or equity interests will receive no recovery under a chapter 11 plan are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan.  For a detailed description of the treatment of Claims and Equity Interests under the Plan, see Section VIII of the Disclosure Statement.

The following Classes are impaired under the respective Plans as described below.

**HMC Plan**:

HMC Class 1A (Gemino Secured Claim)
HMC Class 1B (HHI Secured Claim)
HMC Class 1C (Sun Finance Secured Claim)
HMC Class 1D (First Liberty Bank Secured Claim)
HMC Class 1E (Midland Loan Services Secured Claim).
HMC Class 1F (CFG Community Bank Secured Claim)
HMC Class 1G (Fidelity Security Life Insurance Co. Secured Claim)
HMC Class 1H (Citizens Bank, N.A. Secured Claim)
HMC Class 1I (Rosalia Hall Secured Claim)
HMC Class 1J (Shelco, Inc. Secured Claim)
HMC Class 1K (Richard Jones Secured Claim)
HMC Class 1N (East Carolina Bank Secured Claim)
HMC Class 2 (Priority Non-Tax Claims)
HMC Class 3A (Convenience Claims)
HMC Class 3B (General Unsecured Claims)
HMC Class 3C (HHI Unsecured Claims)

**CAH 1 Plan:**

CAH 1 Class 1A (Citizens Secured Claim)
CAH 1 Class 1B (HHI Secured Claim)
CAH 1 Class 1C (HHS Overpayment Secured Claim)
CAH 1 Class 1D (Red Bay Environmental Secured Claim)
CAH 1 Class 1E (Washington County Secured Claim)
CAH 1 Class 2 (Priority Non-Tax Claims)
CAH 1 Class 3A (Convenience Claims)
CAH 1 Class 3B (General Unsecured Claims)
CAH 1 Class 3C (HHI Unsecured Claims)

**CAH 2 Plan:**

CAH 2 Class 1A (Gemino Secured Claim)
CAH 2 Class 1B (HHI Secured Claim)
CAH 2 Class 1C (HHS ERP Secured Claim)
CAH 2 Class 1D (HHS Overpayment Secured Claim)
CAH 2 Class 2 (Priority Non-Tax Claims)
CAH 2 Class 3A (Convenience Claims)
CAH 2 Class 3B (General Unsecured Claims)
CAH 2 Class 3C (HHI Unsecured Claims)

4

**CAH 3 Plan:**

CAH 3 Class 1A (Gemino Secured Claim)
CAH 3 Class 1B (HHI Secured Claim)
CAH 3 Class 1C (HHS Overpayment Secured Claim)
CAH 3 Class 2 (Priority Non-Tax Claims)
CAH 3 Class 3A (Convenience Claims)
CAH 3 Class 3B (General Unsecured Claims)
CAH 3 Class 3C (HHI Unsecured Claims)

**CAH 4 Plan:**

CAH 4 Class 1A (Midland Secured Claim)
CAH 4 Class 1B (HHS ERP Secured Claim)
CAH 4 Class 1C (HHS Overpayment Secured Claim)
CAH 4 Class 1D (Beasley Technology, Inc. Secured Claim)
CAH 4 Class 1E (Bioexpress Secured Claim)
CAH 4 Class 2 (Priority Non-Tax Claims)
CAH 4 Class 3A (Convenience Claims)
CAH 4 Class 3B (General Unsecured Claims)
CAH 4 Class 3C (HHI Unsecured Claims)

**CAH 5 Plan:**

CAH 5 Class 1A (Gemino Secured Claim)
CAH 5 Class 1B (HHI Secured Claim)
CAH 5 Class 1C (HHS Overpayment Secured Claim)
CAH 5 Class 1D (Hanna, Inc. Secured Claim)
CAH 5 Class 2 (Priority Non-Tax Claims)
CAH 5 Class 3A (Convenience Claims)
CAH 5 Class 3B (General Unsecured Claims)
CAH 5 Class 3C (HHI Unsecured Claims)

**CAH 6 Plan:**

CAH 6 Class 1A (First Liberty Bank Secured Claim)
CAH 6 Class 1B (DFP, LLC Secured Claim)
CAH 6 Class 1C (Fidelity Security Life Insurance Co. Secured Claim)
CAH 6 Class 1D (Larry Arthur Secured Claim)
CAH 6 Class 1E (Richard Jones Secured Claim)
CAH 6 Class 1F (Rosalia Hall Secured Claim)
CAH 6 Class 1G (Sun Finance Inc. Secured Claim)
CAH 6 Class 1H (HHS Overpayment Secured Claim)
CAH 6 Class 2 (Priority Non-Tax Claims)
CAH 6 Class 3A (Convenience Claims)
CAH 6 Class 3B (General Unsecured Claims)
CAH 6 Class 3C (HHI Unsecured Claims)

**CAH 7 Plan:**

CAH 7 Class 1A (Gemino Secured Claim)
CAH 7 Class 1B (HHS ERP Secured Claim)
CAH 7 Class 1C (HHS Overpayment Secured Claim)
CAH 7 Class 2 (Priority Non-Tax Claims)
CAH 7 Class 3A (Convenience Claims)
CAH 7 Class 3B (General Unsecured Claims)
CAH 7 Class 3C (HHI Unsecured Claims)

**CAH 9 Plan:**

CAH 9 Class 1A (Gemino Secured Claim)
CAH 9 Class 1B (HHI Secured Claim)
CAH 9 Class 1C (HHS ERP Secured Claim)
CAH 9 Class 1D (HHS Overpayment Secured Claim)
CAH 9 Class 2 (Priority Non-Tax Claims)
CAH 9 Class 3A (Convenience Claims)
CAH 9 Class 3B (General Unsecured Claims)
CAH 9 Class 3C (HHI Unsecured Claims)

**CAH 10 Plan:**

CAH 10 Class 1A (Gemino Secured Claim)
CAH 10 Class 1B (HHI Secured Claim)
CAH 10 Class 1C (DMA Secured Claims)
CAH 10 Class 1D (HHS Overpayment Secured Claim)
CAH 10 Class 1E (Getinge Castle Inc. Secured Claim)
CAH 10 Class 1F (Shelco, Inc. Secured Claim)
CAH 10 Class 2 (Priority Non-Tax Claims)
CAH 10 Class 3A (Convenience Claims)
CAH 10 Class 3B (General Unsecured Claims)
CAH 10 Class 3C (HHI Unsecured Claims)

**CAH 11 Plan:**

CAH 11 Class 1A (Gemino Secured Claim)
CAH 11 Class 1B (CFG Community Bank Secured Claim)
CAH 11 Class 1C (HHI Secured Claim)
CAH 11 Class 1D (HHS Overpayment Secured Claim)
CAH 11 Class 1E (TELEMEDX Secured Claim)
CAH 11 Class 2 (Priority Non-Tax Claims)
CAH 11 Class 3A (Convenience Claims)
CAH 11 Class 3B (General Unsecured Claims)
CAH 11 Class 3C (HHI Unsecured Claims)

**CAH 12 Plan:**

CAH 12 Class 1A (Gemino Secured Claim)
CAH 12 Class 1B (HHS Overpayment Secured Claim)
CAH 12 Class 2 (Priority Non-Tax Claims)
CAH 12 Class 3A (Convenience Claims)
CAH 12 Class 3B (General Unsecured Claims)
CAH 12 Class 3C (HHI Unsecured Claims)

**CAH 16 Plan:**

CAH 16 Class 1A (Gemino Secured Claim)
CAH 16 Class 1B (HHS Overpayment Secured Claim)
CAH 16 Class 1D (Farmers State Secured Claim)
CAH 16 Class 1E (M&T Bank Secured Claim)
CAH 16 Class 2 (Priority Non-Tax Claims)
CAH 16 Class 3A (Convenience Claims)
CAH 16 Class 3B (General Unsecured Claims)
CAH 16 Class 3C (HHI Unsecured Claims)

The holders of impaired Allowed Claims in each of the Plans identified above (the "Voting Classes") are entitled to vote to accept or reject the Plans and may receive distributions under the respective Plans.

The following Classes of the Plans are unimpaired. As a result holders of Claims in those Classes are conclusively presumed to have accepted the respective Plan and are not entitled to vote:

**HMC Plan:**

HMC Class 4 (Old Equity Interests)
HMC Class 1L (Commerce Bank Secured Claim)
HMC Class 1M (Ally Financial Secured Claim)

**CAH 1 Plan:**

CAH 1 Class 4 (Old Equity Interests)

**CAH 2 Plan:**

CAH 2 Class 4 (Old Equity Interests)

**CAH 3 Plan:**

CAH 3 Class 4 (Old Equity Interests)

**CAH 4 Plan:**

CAH 4 Class 4 (Old Equity Interests)

**CAH 5 Plan:**

CAH 5 Class 4 (Old Equity Interests)

**CAH 6 Plan:**

CAH 6 Class 4 (Old Equity Interests)

**CAH 7 Plan:**

CAH 7 Class 4 (Old Equity Interests)

**CAH 9 Plan:**

CAH 9 Class 4 (Old Equity Interests)

**CAH 10 Plan:**

CAH 10 Class 4 (Old Equity Interests)

**CAH 11 Plan:**

CAH 11 Class 1F (Zimmer US, Inc. Secured Claim)
CAH 11 Class 4 (Old Equity Interests)

**CAH 12 Plan:**

CAH 12 Class 4 (Old Equity Interests)

**CAH 16 Plan:**

CAH 16 Class 1C (Bank of Commerce & Trust Co. Secured Claim)
CAH 16 Class 4 (Old Equity Interests)

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims whose holders cast ballots for acceptance or rejection of the plan. Thus, acceptance of the respective Plan by the appropriate Voting Classes will occur only if at least two-thirds in dollar amount and a majority in number of the holders of such Claims in each Voting Class that actually cast their Ballots vote in favor of acceptance. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. For a more detailed description of the requirements for confirmation of the Plan, see Section X of the Disclosure Statement.

If a Class of Claims entitled to vote on a Plan rejects such Plan, the applicable Debtor reserves the right to amend such Plan or request confirmation of such a Plan pursuant to section 1129(b) of the Bankruptcy Code, or both.  Section 1129(b) permits the confirmation of a chapter 11 plan notwithstanding the nonacceptance of a plan by one or more impaired classes of claims or equity interests.  Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each nonaccepting class.  For a more detailed description of the requirements for confirmation of a nonconsensual plan, see Section X.B of the Disclosure Statement.

In the event that a Class of Claims entitled to vote does not vote to accept a Plan, the respective Debtor's determination whether to request confirmation of such Plan pursuant to section 1129(b) of the Bankruptcy Code will be announced prior to or at the Confirmation Hearing.

**B.     Voting Procedures**

If you are entitled to vote to accept or reject a Plan, a Ballot is enclosed for the purpose of voting on that Plan.  If you hold Claims in more than one Class in the applicable Debtor's case and you are entitled to vote Claims in more than one Class, and/or you are entitled to vote Claims in more than one Debtor's case, you will receive separate Ballots, which must be used for each corresponding separate Class of Claims and/or each corresponding Debtor's Plan.  Please vote and return your Ballot(s) to the respective location specified in the instructions accompanying each Ballot.

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF A PLAN MUST BE FORWARDED IN ACCORDANCE WITH THE ACCOMPANYING INSTRUCTIONS IN SUFFICIENT TIME FOR IT TO BE RECEIVED BY DEBTORS' COUNSEL NO LATER THAN [_____] PREVAILING CENTRAL TIME ON [_____].  ANY EXECUTED BALLOT RECEIVED WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF A PLAN SHALL NOT BE COUNTED.  ANY EXECUTED BALLOT RECEIVED WHICH INDICATES BOTH AN ACCEPTANCE AND REJECTION OF A PLAN SHALL BE COUNTED AS AN ACCEPTANCE.  ACCEPTANCE OF A BALLOT FOR VOTING PURPOSES DOES NOT PRECLUDE THE DEBTORS FROM LATER OBJECTING TO SUCH CLAIM.

Any Claim in an impaired Class as to which an objection or request for estimation is pending or which is scheduled by the applicable Debtor as unliquidated, disputed, or contingent and for which no proof of claim has been filed is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing such Claim solely for the purpose of voting on the applicable Plan or estimating the Claim for Plan purposes.

Pursuant to the Disclosure Statement Order, the Bankruptcy Court set [**July 15, 2012**] as the record date (the "Record Date") for voting on the Plans.  Accordingly, only holders of record as of the Record Date that otherwise are entitled to vote under a Plan will receive a Ballot and may vote on such Plan.

If you believe you are a holder of a Claim entitled to vote on a Plan and did not receive a Ballot or if you received a damaged Ballot or lost your Ballot, or if you have any questions concerning the Disclosure Statement, the Joint Plan, or the procedures for voting on the Plans, please contact HMC/CAH Consolidated Bankruptcy Information Hotline at 1-800-795-7290 or HMCRestructuring@huschblackwell.com

## C.    Confirmation Hearing

Pursuant to section 1128 of the Bankruptcy Code, a hearing on confirmation of the Plans (the "Confirmation Hearing") will be held on [_____], 2012, commencing at [_____] prevailing Central Time, before the Honorable Dennis R. Dow, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Western District of Missouri, 400 East 9th Street, Kansas City, Missouri.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan(s) be served and filed so that they are received on or before [_____], 2012, at [_____] prevailing Central Time, in the manner described below in Section X.A of the Disclosure Statement.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.  HOLDERS OF CLAIMS AND INTERESTS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY INCLUDING THE JOINT PLAN ANNEXED HERETO, PRIOR TO VOTING ON THE PLAN(S).

THIS DISCLOSURE STATEMENT HAS NOT BEEN FILED WITH, REVIEWED, OR APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION AND THE COMMISSION HAS NOT PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE RESPECTIVE DEBTORS' PLANS.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLANS AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLANS ARE CONTROLLING; PROVIDED, HOWEVER, THAT THE DISCLOSURE STATEMENT REFLECTS THE INTENT OF JOINT PLAN WITH RESPECT TO ANY MERELY AMBIGUOUS PROVISION IN THE JOINT PLAN.  THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLANS, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLANS ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS.

THE DEBTORS BELIEVE THE RESPECTIVE PLANS ARE IN THE BEST INTERESTS OF THEIR CREDITORS, THE DEBTORS, AND THEIR CHAPTER 11 ESTATES.

**THE DEBTORS URGE CREDITORS TO VOTE TO ACCEPT THE PLANS.**

## II.

### OVERVIEW OF THE PLANS

The following is a brief overview of each of the Debtors' respective Plans as contained in the Joint Plan. This overview is qualified in its entirety by reference to provisions of the Joint Plan, a copy of which is attached hereto as Exhibit A. For a more detailed description of the terms and provisions of the Joint Plan, see Section VIII of this Disclosure Statement.

Each of the Debtors is proposing a chapter 11 plan of reorganization and is seeking a discharge, pursuant to section 1141 of the Bankruptcy Code. As discussed in greater detail below, the Debtors have structured their respective Plans to ensure the ongoing availability to the Reorganized Debtors of approximately $12.4 million in net operating loss carryforwards which could be lost if there were a "change of control" of the Debtors under Tax Code § 382 and applicable regulations. For a more detailed description, see Section VIII.F.6 of this Disclosure Statement.

In general, the Plans each divide creditors into one or more classes of secured creditors, a class of non-tax priority claims, a convenience class of unsecured creditors holding claims up to $1,000, a class of general unsecured creditors, a special unsecured creditor class for the unsecured claim of HHI, and a class of equity security holders.

Secured creditors will be paid their Allowed Secured Claims in full and (if paid over time) with interest. The Plans each contemplate that in a dispute over the value of – or interest on – a secured claim, the secured creditor will be paid the value of their collateral as determined by the Bankruptcy Court at an interest rate determined by the Bankruptcy Court. The Joint Plan proposes the payment of interest to secured creditors. Attached as Schedule 2.1 is a chart listing the existing rates of interest with respect to each of the secured creditors pursuant to the applicable loan documents. While the Debtors hope to secure the agreement of their respective secured creditors (where appropriate) to interest rate concessions (as indicated by the proposed treatments set forth in the Joint Plan) the interest rates listed on Schedule 2.1 represent the highest rate of interest which the Debtors would pay to its respective secured creditors under the Plans.

Members of all classes of unsecured creditors may elect to be paid in full the Allowed amount of their Claims over time (for a period of up to 20 years) through acceptance of Class 1 Preferred Stock. Alternately, holders of claims in Convenience Classes have the option of receiving a 50% cash distribution on their Allowed Claims on the Effective Date. Certain holders of General Unsecured Claims (those parties holding such claims in the amounts of

11

$1,001 to $4,000) may elect to be treated in the Convenience Class in the applicable Plan by choosing to cap the Allowed amount of their Claims at $1,000 and receive a 50% cash-out option as described above.  The Debtors estimate that, of the approximately 1600 holders of unsecured claims, roughly 850 hold Claims which fall into the Convenience Classes.  If all eligible holders of General Unsecured Claims also elect to be treated in the Convenience Classes, that number rises to approximately 1200 of the 1600 total claims.

Holders of Allowed general unsecured Claims against each Debtor also may choose, as an alternative to acceptance of payment in full in Class 1 Preferred Stock, to share in a *pro rata* distribution of a "pot" of $50,000 per Plan (totaling $650,000 for all Plans) to be distributed by a Creditor Trust administered by a trustee designated by the Committee.

HHI's alleged unsecured deficiency claims are separately classified in each Plan due, among other things, to its alleged rights as a secured lender, its alleged rights with respect to guaranties, and its prior participation on the Debtors' Board of Directors.  As detailed in Section VIII.F.13, HHI's Claims are the subject of a substantial dispute, and the Plans provide for that dispute to be litigated to conclusion after confirmation and the Effective Date.  Consequently, HHI's treatment contemplates the various outcomes of the litigation and, if Allowed, HHI will receive comparable treatment to the general unsecured classes by being provided a cash-out "pot" option or the long-term payment-in-full option in the form of Class 1 Preferred Stock. Pending resolution of the HHI Litigation, any such distributions would be escrowed by the Debtors.

Because all classes of creditors have the option to receive payment in full over time, holders of Old Equity Interests will retain their interest; provided, however, that such holders may not receive any distributions until all payments of Class 1 and Class 2 Preferred Stock are completed in full.

The Plan gives effect to existing subordination agreements.

A more specific description of each Plan follows:[2]

### HMC Plan

Pursuant to the HMC Plan, HMC proposes a chapter 11 reorganization.  All holders of Old Equity Interests in HMC shall retain such interest after the Effective Date, provided, however, that no such holders shall receive any distribution under the Plan until all Class 1 Preferred Stock and Class 2 Preferred Stock shall have been redeemed in full.

Under the HMC Plan, Reorganized HMC will, among other things: (i) commence payment on secured obligations to Gemino, Sun Finance, Commerce Bank, and Ally Financial as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of HMC's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii) surrender collateral to or pay

---

[2] Each such description is qualified in its entirety by reference to the Joint Plan.

certain secured creditors (iv) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (v) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (vi) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vii) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate. With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Gemino Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the HMC Creditor Trust with respect to those holders of HMC Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 1 Plan

Pursuant to the CAH 1 Plan, CAH 1 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 1 shall remain unaffected by the Plan.

Under the CAH 1 Plan, Reorganized CAH 1 will, among other things: (i) commence payment on secured obligations to Citizens Bank and Red Bay Environmental as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of CAH 1's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v)

fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate.  With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 1 Creditor Trust with respect to those holders of CAH 1 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### **CAH 2 Plan**

Pursuant to the CAH 2 Plan, CAH 2 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 2 shall remain unaffected by the Plan.

Under the CAH 2 Plan, Reorganized CAH 2 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of CAH 2's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii) commence payments pursuant to an established HHS ERP; (iv) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (v) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (vi) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vii) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate.

With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 2 Creditor Trust with respect to those holders of CAH 2 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 3 Plan

Pursuant to the CAH 3 Plan, CAH 3 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 3 shall remain unaffected by the Plan.

Under the CAH 3 Plan, Reorganized CAH 3 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of CAH 3's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii)  pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate.  With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be

paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 3 Creditor Trust with respect to those holders of CAH 3 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

## CAH 4 Plan

Pursuant to the CAH 4 Plan, CAH 4 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 4 shall remain unaffected by the Plan.

Under the CAH 4 Plan, Reorganized CAH 4 will, among other things: (i) commence payment on secured obligations to Gemino and Midland, as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of CAH 4's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii)  pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide an election for creditors with General Unsecured Claims in the Allowed amount of $4,000 or less to affirmatively opt-in to a convenience class; (v) provide a cash distribution on the Effective Date to General Unsecured Claims, subject to an affirmative opt-out under the Plan to receive payment in full over 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; (vi) provide a cash distribution on the Effective Date to the HHI General Unsecured Claim in the event that HHI votes in favor of each of the Debtors' Plans; (vii) pay HHS ERP Claims in full as they come due following the Effective Date pursuant to the terms of the Plan.  With regard to each of the foregoing proposed distributions to the HHI Secured Claim and the HHI Unsecured Claim, because certain of the Debtors and HHI are involved in pending state court litigation described below in greater detail, in the event that HHI does not vote in favor of each of the Plans, CAH 4 proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 4 Creditor Trust with respect to those holders of CAH 4 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

## CAH 5 Plan

Pursuant to the CAH 5 Plan, CAH 5 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 5 shall remain unaffected by the Plan.

Under the CAH 5 Plan, Reorganized CAH 5 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of CAH 5's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide an election for creditors with

16

General Unsecured Claims in the Allowed amount of $4,000 or less to affirmatively opt-in to a convenience class; (v) provide a cash distribution on the Effective Date to General Unsecured Claims, subject to an affirmative opt-out under the Plan to receive payment in full over 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; (vi) provide a cash distribution on the Effective Date to the HHI General Unsecured Claim in the event that HHI votes in favor of each of the Debtors' Plans. With regard to each of the foregoing proposed distributions to the HHI Secured Claim and the HHI Unsecured Claim, because certain of the Debtors and HHI are involved in pending state court litigation described below in greater detail, in the event that HHI does not vote in favor of each of the Plans, CAH 5 proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made. Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 5 Creditor Trust with respect to those holders of CAH 5 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 6 Plan

Pursuant to the CAH 6 Plan, CAH 6 proposes a chapter 11 reorganization. Old Equity Interests in CAH 6 shall remain unaffected by the Plan.

Under the CAH 6 Plan, Reorganized CAH 6 will, among other things: (i) commence payment on secured obligations to First Liberty Bank, DFP, LLC, Fidelity Security Life Insurance Co., Larry Arthur, Richard Jones, and Rosalia Hall, as modified by the Plan; (ii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iii) pay established HHS ERP Claims in full as they come due following the Effective Date; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate. With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made. With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both

17

principal and interest will be paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 6 Creditor Trust with respect to those holders of CAH 6 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 7 Plan

Pursuant to the CAH 7 Plan, CAH 7 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 7 shall remain unaffected by the Plan.

Under the CAH 7 Plan, Reorganized CAH 7 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii)  pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iii) pay established HHS ERP Claims in full as they come due following the Effective Date pursuant to the terms of the Plan; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) fund a creditor trust on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate. With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account. Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 7 Creditor Trust with respect to those holders of CAH 7 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

## CAH 9 Plan

Pursuant to the CAH 9 Plan, CAH 9 proposes a chapter 11 reorganization. Old Equity Interests in CAH 9 shall remain unaffected by the Plan.

Under the CAH 9 Plan, Reorganized CAH 9 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim (established at the value of CAH 9's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate. With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made. With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account. Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation. Upon following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 9 Creditor Trust with respect to those holders of CAH 9 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

## CAH 10 Plan

Pursuant to the CAH 10 Plan, CAH 10 proposes a chapter 11 reorganization. Old Equity Interests in CAH 10 shall remain unaffected by the Plan.

Under the CAH 10 Plan, Reorganized CAH 10 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii) commence payment of interest-only payments with respect to the HHI Secured Claim

(established at the value of CAH 10's Collateral), if any, into escrow pending resolution of the HHI Litigation with such interest to be paid at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court; (iii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate.  With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation; (vii) pay DMA the Allowed amount of its Claim pursuant to an agreed payment plan by recoupment from future Medicaid payments; and (viii) provide Shelco, Inc., to the extent that its Allowed Claim is Secured, with the value of its collateral with interest at the Till rate and to the extent of any Unsecured portion of its Secured Claim as a cure cost on the underlying lease.  With regard to each of the foregoing proposed distributions to the HHI Secured Claim and the HHI Unsecured Claim, because certain of the Debtors and HHI are involved in pending state court litigation described below in greater detail, in the event that HHI does not vote in favor of each of the Plans, CAH 10 proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 10 Creditor Trust with respect to those holders of CAH 10 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 11 Plan

Pursuant to the CAH 11 Plan, CAH 11 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 11 shall remain unaffected by the Plan.

Under the CAH 10 Plan, Reorganized CAH 10 will, among other things: (i) commence payment on secured obligations to Gemino and CFG Community Bank, as

modified by the Plan; (ii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iii) pay Zimmer US, Inc. in full on or before the Effective Date; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate.  With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made.  With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account.  Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation.  Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 11 Creditor Trust with respect to those holders of CAH 11 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 12 Plan

Pursuant to the CAH 12 Plan, CAH 12 proposes a chapter 11 reorganization.  Old Equity Interests in CAH 12 shall remain unaffected by the Plan.

Under the CAH 12 Plan, Reorganized CAH 12 will, among other things: (i) commence payment on secured obligations to Gemino, as modified by the Plan; (ii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iii) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (iv) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal

21

Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (v) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate. With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made. With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account. Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation. Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 12 Creditor Trust with respect to those holders of CAH 12 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

### CAH 16 Plan

Pursuant to the CAH 16 Plan, CAH 16 proposes a chapter 11 reorganization. Old Equity Interests in CAH 16 shall remain unaffected by the Plan.

Under the CAH 16 Plan, Reorganized CAH 16 will, among other things: (i) commence payment on secured obligations to Gemino, Farmers State, and M&T Bank, each as modified by the Plan; (ii) surrender the collateral subject to the Bank of Commerce & Trust Co. Secured Claim; (iii) pay holders of Allowed Priority Non-Tax Claims in full as of the Effective Date of the Plan; (iv) provide for the (a) holders of Allowed General Unsecured Claims in an amount up to $1,000 and (b) holders of Allowed General Unsecured Claims in an amount from $1,001 up to and including $4,000 that affirmatively elect to have their Allowed General Unsecured Claims treated as Allowed Convenience Claims (Allowed and capped in the amount of $1,000) to elect to receive either cash on the Effective Date in the amount of 50% of such Allowed Convenience Claim or payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock; (v) fund a creditor trust on the Effective Date which will provide a cash distribution to holders of Allowed General Unsecured Claims, subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate; and (vi) escrow funds on the Effective Date which will provide a cash distribution to the Allowed HHI General Unsecured Claim subject to an affirmative election under the Plan to receive payment-in-full over an extended time period not to exceed 20 years with interest at the Federal Judgment Rate or at such rate as ordered by the Court, not to exceed the *Till* Rate. With regard to each of the foregoing proposed distributions with respect to the HHI Secured Claim and the HHI Unsecured Claim, because the Debtors and HHI are involved in pending state court litigation described below in greater detail, the Debtor proposes to hold all amounts that may be payable to HHI in an escrow account until a judicial determination regarding the Allowability of HHI's Claims has been made. With respect to the HHI Secured claim, the Debtor will make payments (into an escrow account) of interest only based upon the value of the

Collateral, until such time as the senior Citizen's Secured Claim is satisfied at which time payments of both principal and interest will be paid into the escrow account. Escrowed funds, up to the amount of HHI's Allowed Claim, if any, will be released upon conclusion of the HHI Litigation. Upon and following the Effective Date, distributions on account of Allowed Claims shall be made by (i) the CAH 16 Creditor Trust with respect to those holders of CAH 16 Class 3B Claims which elected Option 1 Treatment and (ii) the Reorganized Debtors with respect to all other Allowed Claims.

**III.**

**SUMMARY OF CLASSIFICATION AND TREATMENT
OF CLAIMS AND INTERESTS UNDER THE PLANS**

The following table briefly summarizes the classification and treatment of Claims and Equity Interests under the applicable Plans. The summary also identifies which Classes are entitled to vote on each Plan based on the rules set forth in the Bankruptcy Code and estimates recovery for each Class. The summary set forth herein is qualified in its entirety by reference to the full text of the Joint Plan.

On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Administrative Expense Claim against the Debtors agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor, as debtor-in-possession, shall be paid by the applicable Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Requests for payment of Administrative Claims must be filed and served on the applicable Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 35 days after the entry of the Confirmation Order, provided, however, that Claims pursuant to Section 503(b)(9) of the Bankruptcy Code are governed by the Court's Twenty-Day Claims Order [Docket No. 199], and such Claims are subject to the claims objection deadlines contained in Sections 8.02 and 8.06 of the Joint Plan. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Administrative Claims Bar Date will be forever barred from asserting such Administrative Claims against the applicable Debtor, the Creditor Trust, or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date. In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

On the Effective Date, or as soon thereafter as is reasonably practicable, pursuant to section 1129(a)(9) of the Bankruptcy Code, unless otherwise agreed to by the holder of an

Allowed Priority Tax Claim and the applicable Debtor, each holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, in an amount equal to such Allowed Priority Tax Claim.

The following chart reflects estimated recoveries to the Classes under the respective Plans. Any total Claim amounts listed for any particular Classes below reflect the Debtors' estimate as of the Petition Date and, where a range is set forth, include Claims that may be objected to as a part of the Plan process. These estimates reflect the high and low ends of the potential ranges to account for the possibility that the objections to be lodged by the Creditor Trusts, the Debtors, or the Reorganized Debtors, as applicable, do not result in the outcome expected by the those parties. With respect to General Unsecured Claims asserted against HMC in particular, the high end of the estimated range includes numerous claims that appear to be filed in the incorrect Debtor's case and are not Claims against HMC. This accounts for the high level of variance between the low and high ends of the estimated ranges of Claims against HMC.

**HMC Plan**

| HMC Class | Description | Treatment[3] | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12. Payments: Monthly principal and interest. Interest: 7% fixed. Term: 7 years. Amortization: 7 years. Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHI | Claim: (*DISPUTED*) $46,966.13 (or court-determined value). Payments: Monthly interest only until Class 1A paid in full, then principal and interest. Interest: Till rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court. Term: 10 years following satisfaction of Class 1A. Amortization: 10 years. Other: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: Sun Finance | Claim: $2,500,000. Payments: Monthly principal and interest. Interest: 6% fixed. Term: 5 years from effective date of Plan. Amortization: 5 years. Other: Retains liens and existing covenants. | Yes | 100% |
| 1D | Secured Claim: | Claim: (*DISPUTED*) Up to $9,656,503.48. | Yes | 100% |

---

[3] All descriptions of the treatment of each of the Classes listed below are brief summaries of the central elements of the proposed treatment of such Classes and are provided only for ease of reference. All such descriptions are qualified in their entirety by the descriptions of such treatments contained elsewhere in this Disclosure Statement and, ultimately, in the Joint Plan.

| HMC Class | Description | Treatment[3] | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | First Liberty Bank | Payments: Paid in full by CAH 6. | | |
| 1E | Secured Claim: Midland Loan Services | Claim: (*DISPUTED*) Up to $6,629,121.18. Payments: Paid in full by CAH 4. | Yes | 100% |
| 1F | Secured Claim: CFG Community Bank | Claim: (*DISPUTED*) Up to $2,507,089.74. Payments: Paid in full by CAH 11. | Yes | 100% |
| 1G | Secured Claim: Fidelity Security Life Insurance Co. | Claim: (*DISPUTED*) Up to $1,556,055.21. Payments: Paid in full by CAH 6. | Yes | 100% |
| 1H | Secured Claim: Citizens Bank, N.A. | Claim: (*DISPUTED*) Up to $1,492,387.88. Payments: Paid in full by CAH 1. | Yes | 100% |
| 1I | Secured Claim: Rosalia Hall | Claim: (*DISPUTED*) Up to $103,736.76. Payments: Paid in full by CAH 6. | Yes | 100% |
| 1J | Secured Claim: Shelco, Inc. | Claim: (*DISPUTED*) Up to $73,438.76. Payments: Paid in full by CAH 10. | Yes | 100% |
| 1K | Secured Claim: Richard Jones | Claim: (*DISPUTED*) Up to $51,868.40. Payments: Paid in full by CAH 6. | Yes | 100% |
| 1L | Secured Claim: Commerce Bank | Claim: $31,790.01 Payments: Paid pursuant to existing agreement. Other: Retains security interest in collateral, agreement and obligations unaltered except to excise any *ipso facto* clause in agreement. | No | 100% |
| 1M | Secured Claim: Ally Financial | Claim: $27,594.24 Payments: Paid pursuant to existing agreement. Other: Retains security interest in collateral, agreement and obligations unaltered except to excise any *ipso facto* clause in agreement. | No | 100% |
| 1N | Secured Claim: East Carolina Bank | Claim: (*DISPUTED*) Up to $7,025.00. Payments: Paid in full by CAH 1. | Yes | 100% |
| 2 | Priority Non-Tax Claims | Claim: $0 - $43,023.72 (est. aggregate). Payments: Twelve equal monthly installments. Interest: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed. Term: 1 year. Amortization: 1 year. | Yes | 100% |

25

| HMC Class | Description | Treatment[3] | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 3A | Convenience Claims | <u>Claim</u>: $6,550.62 (est. aggregate); Claims which may elect Convenience Class Treatment – $18,088.80 (est. aggregate).<br><u>Class Members</u>:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000.<br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |
| 3B | General Unsecured Claims | <u>Claim</u>: $423,986 - $4,839,709 (est. aggregate).<br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 1% - 100%<br><br>OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | <u>Claim</u>: Up to filed amount of $16,128,097.38 (*DISPUTED*).<br><u>Payments</u>: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  <u>OPTION 1</u> – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or | Yes | Approx. OPTION 1: 4% - 100%<br><br>OPTION 2: 100% |

| HMC Class | Description | Treatment[3] | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock.<br>Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | | |
| 4 | Old Equity Interests | Retain interest after the Effective Date.<br>No such holders shall receive any distribution under the Plan until all Class 1 Preferred Stock and Class 2 Preferred Stock redeemed in full. | No | 100% |

## CAH 1 Plan

| CAH 1 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Citizens Bank | Claim: $1,476,966.07.<br>Payments: Monthly principal and interest.<br>Interest: 6.5% fixed.<br>Term: The earlier of 5 years or replacement of CAH 1 hospital facility.<br>Amortization: 20 years.<br>Other: Retains liens and existing covenants; remove provisions for default rates of interest. | Yes | 100% |
| 1B | Secured Claim: HHI | Claim: (*DISPUTED*) $1,066,492.95 (or court-determined value).<br>Payments: Monthly interest only until Class 1A paid in full, then principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 10 years following satisfaction of Class 1A.<br>Amortization: 10 years.<br>Other: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule.<br>Payments: Equal monthly installments of principal and interest per regulatory ERP.<br>Interest: Statutory interest (estimated 10 -10.75% | Yes | 100% |

| CAH 1 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | fixed).<br>Term: Up to 5 years.<br>Amortization: Up to 5 years. | | |
| 1D | Secured Claim: Red Bay Environmental | Claim: (*DISPUTED*) Up to $5,400.00.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: One year.<br>Amortization: One year.<br>Other: Retains lien. | Yes | 100% |
| 1E | Secured Claim: Washington County | Claim: (*DISPUTED*) Value of collateral (up to $700,000).<br>Payments: Balloon payment at term.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: The earlier of seven years or replacement of hospital facility.<br>Amortization: N/A.<br>Other: Retains lien. | Yes | 100% |
| 2 | Priority Non-Tax Claims | Claim: $0 - $263,228.95 (est. aggregate).<br>Payments: Equal monthly installments of principal and interest.<br>Interest: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br>Term: 1 year.<br>Amortization: 1 year. | Yes | 100% |
| 3A | Convenience Claims | Claim: $33,749.90 (est. aggregate); Claims which may elect Convenience Class Treatment – $100,580.02 (est. aggregate).<br>Class Members: 1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000.<br>Payments: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |

| CAH 1 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | | |
| 3B | General Unsecured Claims | Claim: $1,308,245.09 - $2,157,242 (est. aggregate). Payments: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  OPTION 1 – a *pro rata* portion of $50,000, or OPTION 2 – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 2.3% - 100% OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*). Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100% OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

**CAH 2 Plan**

| CAH 2 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | <u>Claim</u>: $4,696,784.12.<br><u>Payments</u>: Monthly principal and interest.<br><u>Interest</u>: 7% fixed.<br><u>Term</u>: 7 years.<br><u>Amortization</u>: 7 years.<br><u>Other</u>: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHI | <u>Claim</u>: (*DISPUTED*) $154,973.29 (or court-determined value).<br><u>Payments</u>: Monthly interest only until Class 1A paid in full, then principal and interest.<br><u>Interest</u>: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br><u>Term</u>: 10 years following satisfaction of Class 1A.<br><u>Amortization</u>: 10 years.<br><u>Other</u>: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: HHS ERP | <u>Claim</u>: See Schedule.<br><u>Payments</u>: Equal monthly installments of principal and interest per regulatory ERP.<br><u>Interest</u>: Statutory interest (estimated 10 -10.75% fixed).<br><u>Term</u>: Up to 5 years.<br><u>Amortization</u>: Up to 5 years. | Yes | 100% |
| 1D | Secured Claim: HHS Overpayment | <u>Claim</u>: (*DISPUTED*) See Schedule.<br><u>Payments</u>: Equal monthly installments of principal and interest per regulatory ERP.<br><u>Interest</u>: Statutory interest (estimated 10 -10.75% fixed).<br><u>Term</u>: Up to 5 years.<br><u>Amortization</u>: Up to 5 years. | Yes | 100% |
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $46,976.46 (est. aggregate).<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br><u>Term</u>: 1 year.<br><u>Amortization</u>: 1 year. | Yes | 100% |

| CAH 2 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 3A | Convenience Claims | <u>Claim</u>: $15,309.05 (est. aggregate); Claims which may elect Convenience Class Treatment – $37,312.93 (est. aggregate). <br><u>Class Members</u>:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. <br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50% <br><br>OPTION 2: 100% |
| 3B | General Unsecured Claims | <u>Claim</u>: $135,178.65 - $1,000,792 (est. aggregate). <br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 5% - 100% <br><br>OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | <u>Claim</u>: Up to filed amount of $16,128,097.38 (*DISPUTED*). <br><u>Payments</u>: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 | Yes | Aggregate Approx. OPTION 1: 4% - 100% <br><br>OPTION |

| CAH 2 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | (aggregating to $650,000 for all Debtors); or <u>OPTION 2</u> – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock.<br><u>Other</u>: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | | 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

**CAH 3 Plan**

| CAH 3 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | <u>Claim</u>: $4,696,784.12.<br><u>Payments</u>: Monthly principal and interest.<br><u>Interest</u>: 7% fixed.<br><u>Term</u>: 7 years.<br><u>Amortization</u>: 7 years.<br><u>Other</u>: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHI | <u>Claim</u>: (*DISPUTED*) $229,683.28 (or court-determined value).<br><u>Payments</u>: Monthly interest only until Class 1A paid in full, then principal and interest.<br><u>Interest</u>: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br><u>Term</u>: 10 years following satisfaction of Class 1A.<br><u>Amortization</u>: 10 years.<br><u>Other</u>: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: HHS Overpayment | <u>Claim</u>: (*DISPUTED*) See Schedule.<br><u>Payments</u>: Equal monthly installments of principal and interest per regulatory ERP.<br><u>Interest</u>: Statutory interest (estimated 10 -10.75% fixed).<br><u>Term</u>: Up to 5 years.<br><u>Amortization</u>: Up to 5 years. | Yes | 100% |

| CAH 3 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $77,495.68 (est. aggregate).<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br><u>Term</u>: 1 year.<br><u>Amortization</u>: 1 year. | Yes | 100% |
| 3A | Convenience Claims | <u>Claim</u>: $23,164.93 (est. aggregate); Claims which may elect Convenience Class Treatment – $59,983.67 (est. aggregate).<br><u>Class Members</u>:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000.<br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |
| 3B | General Unsecured Claims | <u>Claim</u>: $526,780.87 - $1,046,719 (est. aggregate).<br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a | Yes | OPTION 1: 4.8% - 100%<br><br>OPTION 2: 100% |

| CAH 3 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | member of this Class. | | |
| 3C | General Unsecured Claims of HHI | <u>Claim</u>: Up to filed amount of $16,128,097.38 (*DISPUTED*).<br><u>Payments</u>: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or <u>OPTION 2</u> – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock.<br><u>Other</u>: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases. HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100%<br><br>OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

**CAH 4 Plan**

| CAH 4 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Midland | <u>Claim</u>: $6,629,121.<br><u>Payments</u>: Monthly principal and interest.<br><u>Interest</u>: Per existing agreement (fixed).<br><u>Term</u>: Extended 2 years from current maturity.<br><u>Amortization</u>: 20 years.<br><u>Other</u>: Retains liens and existing covenants except modifications with respect to default rate, replacement reserve, and audit. | Yes | 100% |
| 1B | Secured Claim: HHS ERP | <u>Claim</u>: See Schedule.<br><u>Payments</u>: Equal monthly installments of principal and interest per regulatory ERP.<br><u>Interest</u>: Statutory interest (estimated 10 -10.75% fixed).<br><u>Term</u>: Up to 5 years.<br><u>Amortization</u>: Up to 5 years. | Yes | 100% |

34

| CAH 4 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1C | Secured Claim: HHS Overpayment | <u>Claim</u>: (*DISPUTED*) See Schedule.<br><u>Payments</u>: Equal monthly installments of principal and interest per regulatory ERP.<br><u>Interest</u>: Statutory interest (estimated 10 -10.75% fixed).<br><u>Term</u>: Up to 5 years.<br><u>Amortization</u>: Up to 5 years. | Yes | 100% |
| 1D | Secured Claim: Beasley Technology, Inc. | <u>Claim</u>: (*DISPUTED*) Value of collateral up to amount of claim, $1463.16.<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br><u>Term</u>: The earlier of five years or replacement of hospital facility.<br><u>Amortization</u>: 5 years.<br><u>Other</u>: Retains lien; maintenance and insurance covenants. | Yes | 100% |
| 1E | Secured Claim: Bioexpress | <u>Claim</u>: (*DISPUTED*) Value of collateral up to amount of claim, $1,749.<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br><u>Term</u>: The earlier of five years or replacement of hospital facility.<br><u>Amortization</u>: 5 years.<br><u>Other</u>: Retains lien; maintenance and insurance covenants. | Yes | 100% |
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $66,752.02 (est. aggregate).<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br><u>Term</u>: 1 year.<br><u>Amortization</u>: 1 year. | Yes | 100% |
| 3A | Convenience Claims | <u>Claim</u>: $17,474.96 (est. aggregate); Claims which may elect Convenience Class Treatment – $94,944.63 (est. aggregate).<br><u>Class Members</u>:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |

35

| CAH 4 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. <u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | | |
| 3B | General Unsecured Claims | <u>Claim</u>: $755,334.58 - $1,543,370 (est. aggregate). <u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 3.2% - 100% <br><br> OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | <u>Claim</u>: Up to filed amount of $16,128,097.38 (*DISPUTED*). <u>Payments</u>: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or <u>OPTION 2</u> – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. <u>Other</u>: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be | Yes | Aggregate Approx. OPTION 1: 4% - 100% <br><br> OPTION 2: 100% |

| CAH 4 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | deemed to have been an election of such treatment in all of the Debtors' cases. HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | | |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

**CAH 5 Plan**

| CAH 5 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12.<br>Payments: Monthly principal and interest.<br>Interest: 7% fixed.<br>Term: 7 years.<br>Amortization: 7 years.<br>Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHI | Claim: (*DISPUTED*) $173,971.82 (or court-determined value).<br>Payments: Monthly interest only until Class 1A paid in full, then principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 10 years following satisfaction of Class 1A.<br>Amortization: 10 years.<br>Other: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule.<br>Payments: Equal monthly installments of principal and interest per regulatory ERP.<br>Interest: Statutory interest (estimated 10 -10.75% fixed).<br>Term: Up to 5 years.<br>Amortization: Up to 5 years. | Yes | 100% |
| 1D | Secured Claim: Hanna, Inc. | Claim: (*DISPUTED*) Value of collateral up to amount of claim, $6,500.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court. | Yes | 100% |

37

| CAH 5 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Term: 5 years. Amortization: 5 years. Other: Retains liens; insurance and maintenance covenants. | | |
| 2 | Priority Non-Tax Claims | Claim: $0 - $48,093.26 (est. aggregate). Payments: Equal monthly installments of principal and interest. Interest: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed. Term: 1 year. Amortization: 1 year. | Yes | 100% |
| 3A | Convenience Claims | Claim: $16,892.55 (est. aggregate); Claims which may elect Convenience Class Treatment – $88,884.20 (est. aggregate). Class Members: 1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. Payments: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50%  OPTION 2: 100% |
| 3B | General Unsecured Claims | Claim: $431,475.13 - $1,081,118 (est. aggregate). Payments: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  OPTION 1 – a *pro rata* portion of $50,000, or OPTION 2 – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. Other: Holders of such Claims not making an | Yes | OPTION 1: 4.6% - 100%  OPTION 2: 100% |

38

| CAH 5 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | election are deemed to have chosen OPTION 1. Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | | |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*). Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases. HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100% OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

**CAH 6 Plan**

| CAH 6 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: First Liberty Bank | Claim: $9,656,503.48. Payments: Monthly principal and interest. Interest: 6.25% fixed. Term: Extended 2 years past current maturity. Other: Retains liens and existing covenants; remove default interest rate. | Yes | 100% |
| 1B | Secured Claim: DFP, LLC | Claim: $250,000.00. Payments: Equal monthly installments of principal and interest. Interest: 6% fixed. Term: 5 years. | Yes | 100% |

39

| CAH 6 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Amortization: 5 years.<br>Other: Retains liens and existing covenants; remove default interest rate. | | |
| 1C | Secured Claim: Fidelity Security Life Insurance Co. | Claim: $1,556,055.21.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: 6% fixed.<br>Term: 5 years.<br>Amortization: 5 years.<br>Other: Retains liens and existing covenants; remove default interest rate. | Yes | 100% |
| 1D | Secured Claim: Larry Arthur | Claim: $50,000.00.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: 6% fixed.<br>Term: 5 years.<br>Amortization: 5 years.<br>Other: Retains liens and existing covenants; remove default interest rate. | Yes | 100% |
| 1E | Secured Claim: Richard Jones | Claim: $51,868.40.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: 6% fixed.<br>Term: 5 years.<br>Amortization: 5 years.<br>Other: Retains liens and existing covenants; remove default interest rate. | Yes | 100% |
| 1F | Secured Claim: Rosalia Hall | Claim: $103,736.76.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: 6% fixed.<br>Term: 5 years.<br>Amortization: 5 years.<br>Other: Retains liens and existing covenants; remove default interest rate. | Yes | 100% |
| 1G | Secured Claim: Sun Finance Inc. | Claim: $750,000.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: 6% fixed.<br>Term: 5 years.<br>Amortization: 5 years.<br>Other: Retains liens and existing covenants; remove default interest rate. | Yes | 100% |

40

| CAH 6 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1H | Secured Claim: HHS Overpayment | <u>Claim</u>: (*DISPUTED*) See Schedule. <br> <u>Payments</u>: Equal monthly installments of principal and interest per regulatory ERP. <br> <u>Interest</u>: Statutory interest (estimated 10 -10.75% fixed). <br> <u>Term</u>: 5 years. <br> <u>Amortization</u>: 5 years. | Yes | 100% |
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $40,043.74 (est. aggregate). <br> <u>Payments</u>: Equal monthly installments of principal and interest. <br> <u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed. <br> <u>Term</u>: 1 year. <br> <u>Amortization</u>: 1 year. | Yes | 100% |
| 3A | Convenience Claims | <u>Claim</u>: $23,352.30 (est. aggregate); Claims which may elect Convenience Class Treatment – $64,223.78 (est. aggregate). <br> <u>Class Members</u>: 1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. <br> <u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim: <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> <u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50% <br><br> OPTION 2: 100% |
| 3B | General Unsecured Claims | <u>Claim</u>: $227,618.10 - $2,257,417 (est. aggregate). <br> <u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim: <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock | Yes | OPTION 1: 2.2% - 100% <br><br> OPTION 2: 100% |

| CAH 6 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | over time up to 20 years from future operations of the Debtor. <br> Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1. Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | | |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*). <br> Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <br> OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or <br> OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. <br> Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases. HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100% <br><br> OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

## CAH 7 Plan

| CAH 7 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12. <br> Payments: Monthly principal and interest. <br> Interest: 7% fixed. <br> Term: 7 years. <br> Amortization: 7 years. <br> Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHS ERP | Claim: See Schedule. <br> Payments: Payments: Equal monthly installments | Yes | 100% |

| CAH 7 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | of principal and interest per regulatory ERP. <br> Interest: Statutory interest (estimated 10 -10.75% fixed). <br> Term: Up to 5 years. <br> Amortization: Up to 5 years. | | |
| 1C | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule. <br> Payments: Equal monthly installments of principal and interest per regulatory ERP. <br> Interest: Statutory interest (estimated 10 -10.75% fixed). <br> Term: Up to 5 years. <br> Amortization: Up to 5 years. | Yes | 100% |
| 2 | Priority Non-Tax Claims | Claim: $100 - $64,282.72 (est. aggregate). <br> Payments: Equal monthly installments of principal and interest. <br> Interest: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed. <br> Term: 1 year. <br> Amortization: 1 year. | Yes | 100% |
| 3A | Convenience Claims | Claim: $20,561.21 (est. aggregate); Claims which may elect Convenience Class Treatment – $49,786.91 (est. aggregate). <br> Class Members: 1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. <br> Payments: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50% <br><br> OPTION 2: 100% |
| 3B | General Unsecured | Claim: $194,306.53 - $719,486 (est. aggregate). <br> Payments: Each holder can elect to receive, in full | Yes | OPTION 1: 6.9% - |

| CAH 7 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | Claims | satisfaction of its Allowed General Unsecured Claim: <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | | 100%<br><br>OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | <u>Claim</u>: Up to filed amount of $16,128,097.38 (*DISPUTED*).<br><u>Payments</u>: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or <u>OPTION 2</u> – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock.<br><u>Other</u>: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100%<br><br>OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

## CAH 9 Plan

| CAH 9 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | <u>Claim</u>: $4,696,784.12.<br><u>Payments</u>: Monthly principal and interest. | Yes | 100% |

| CAH 9 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Interest: 7% fixed.<br>Term: 7 years.<br>Amortization: 7 years.<br>Other: Retains liens and existing covenants. | | |
| 1B | Secured Claim: HHI | Claim: (*DISPUTED*) $40,897.46 (or court-determined value).<br>Payments: Monthly interest only until Class 1A paid in full, then principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 10 years following satisfaction of Class 1A.<br>Amortization: 10 years.<br>Other: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: HHS ERP | Claim: See Schedule.<br>Payments: Equal monthly installments of principal and interest per regulatory ERP.<br>Interest: Statutory interest (estimated 10 -10.75% fixed).<br>Term: Up to 5 years.<br>Amortization: Up to 5 years. | Yes | 100% |
| 1D | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule.<br>Payments: Equal monthly installments of principal and interest per regulatory ERP.<br>Interest: Statutory interest (estimated 10 -10.75% fixed).<br>Term: Up to 5 years.<br>Amortization: Up to 5 years. | Yes | 100% |
| 2 | Priority Non-Tax Claims | Claim: $0 - $38,707.84 (est. aggregate).<br>Payments: Equal monthly installments of principal and interest.<br>Interest: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br>Term: 1 year.<br>Amortization: 1 year. | Yes | 100% |
| 3A | Convenience Claims | Claim: $16,104.25 (est. aggregate); Claims which may elect Convenience Class Treatment – $64,108.17 (est. aggregate).<br>Class Members: 1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |

| CAH 9 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. <br> <u>Payments:</u> Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> <u>Other:</u> Holders of such Claims not making an election are deemed to have chosen OPTION 1. | | |
| 3B | General Unsecured Claims | <u>Claim:</u> $320,407- $1,465,626 (est. aggregate). <br> <u>Payments:</u> Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> <u>Other:</u> Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 3.4% - 100% <br><br> OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | <u>Claim:</u> Up to filed amount of $16,128,097.38 (*DISPUTED*). <br> <u>Payments:</u> HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or <u>OPTION 2</u> – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. <br> <u>Other:</u> HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such | Yes | Aggregate Approx. OPTION 1: 4% - 100% <br><br> OPTION 2: 100% |

| CAH 9 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | treatment in all of the Debtors' cases. HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | | |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

## CAH 10 Plan

| CAH 10 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12.<br>Payments: Monthly principal and interest.<br>Interest: 7% fixed.<br>Term: 7 years.<br>Amortization: 7 years.<br>Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHI | Claim: (*DISPUTED*) $110,377.11 (or court-determined value).<br>Payments: Monthly interest only until Class 1A paid in full, then principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 10 years following satisfaction of Class 1A.<br>Amortization: 10 years.<br>Other: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1C | Secured Claim: DMA | Claim: Undetermined.<br>Payments: Monthly installments of principal and interest in recoupment from future Medicaid accounts receivable.<br>Interest: 5% fixed.<br>Term: 6 months. | Yes | 100% |
| 1D | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule.<br>Payments: Equal monthly installments of principal and interest per regulatory ERP.<br>Interest: Statutory interest (estimated 10 -10.75% fixed).<br>Term: Up to 5 years.<br>Amortization: Up to 5 years. | Yes | 100% |

| CAH 10 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1E | Secured Claim: Getinge Castle Inc. | <u>Claim</u>: (*DISPUTED*). Value of collateral up to claim amount, $856.36.<br><u>Payments</u>: Paid in full upon allowance.<br><u>Other</u>: Retains liens. | Yes | 100% |
| 1F | Secured Claim: Shelco, Inc. | <u>Claim</u>: (*DISPUTED*) Value of collateral up to balance of claim amount, $73,438.76.<br>*If secured (fully or partially)* –<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br><u>Term</u>: 7 years.<br><u>Amortization</u>: 7 years.<br><u>Other</u>: Retains liens.<br><br>*If partially unsecured* –<br><u>Payments</u>: Cure of unsecured portion of Allowed Claim.<br><u>Interest</u>: None.<br><u>Term</u>: 3 years.<br><u>Amortization</u>: 3 years.<br><br>*If fully unsecured* –<br>CAH 10 Class 1F will receive the treatment of CAH 10 Class 3B. | Yes | 100% |
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $53,937.63 (est. aggregate).<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br><u>Term</u>: 1 year.<br><u>Amortization</u>: 1 year. | Yes | 100% |
| 3A | Convenience Claims | <u>Claim</u>: $44,178.35 (est. aggregate); Claims which may elect Convenience Class Treatment – $104,809.46 (est. aggregate).<br><u>Class Members</u>: 1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000.<br><u>Payments</u>: Each holder can elect to receive, in full | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |

48

| CAH 10 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br>Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | | |
| 3B | General Unsecured Claims | Claim: $1,952,068.28 - $2,797,920 (est. aggregate).<br>Payments: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  OPTION 1 – a *pro rata* portion of $50,000, or OPTION 2 – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br>Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 1.8% - 100%<br><br>OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*).<br>Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock.<br>Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes | Yes | Aggregate Approx. OPTION 1: 4% - 100%<br><br>OPTION 2: 100% |

| CAH 10 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | of action against HHI, including, without limitation, the HHI Litigation. | | |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

## CAH 11 Plan

| CAH 11 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12.<br>Payments: Monthly principal and interest.<br>Interest: 7% fixed.<br>Term: 7 years.<br>Amortization: 7 years.<br>Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: CFG Community Bank | Claim: $2,506,603.11.<br>Payments: Monthly principal and interest.<br>Interest: 6.5% fixed.<br>Term: Maturity date extended to the earlier of 5 years from Effective Date or hospital facility replacement.<br>Amortization: 20 years.<br>Other: Retains liens and existing covenants. | Yes | 100% |
| 1C | Secured Claim: HHI | Claim: (*DISPUTED*) $0 (or court-determined value).<br>Payments: Monthly interest only until Class 1A paid in full, then principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 10 years following satisfaction of Class 1A.<br>Amortization: 10 years.<br>Other: Retains liens, insurance and maintenance covenants, and special litigation provisions. | Yes | 100% |
| 1D | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule.<br>Payments: Equal monthly installments of principal and interest per regulatory ERP.<br>Interest: Statutory interest (estimated 10 -10.75% fixed).<br>Term: Up to 5 years.<br>Amortization: Up to 5 years. | Yes | 100% |
| 1E | Secured Claim: TELEMEDX | Claim: (*DISPUTED*). Value of collateral up to the amount of the claim, $2,500.00. | Yes | 100% |

| CAH 11 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | <u>Payments</u>: Paid in full upon allowance. | | |
| 1F | Secured Claim: Zimmer US, Inc. | <u>Claim</u>: $1,448.00.<br><u>Payments</u>: Paid in full on or before the Effective Date. | No | 100% |
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $208,200.19 (est. aggregate).<br><u>Payments</u>: Equal monthly installments of principal and interest.<br><u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br><u>Term</u>: 1 year.<br><u>Amortization</u>: 1 year. | Yes | 100% |
| 3A | Convenience Claims | <u>Claim</u>: $29,311.08 (est. aggregate); Claims which may elect Convenience Class Treatment – $54,264.69 (est. aggregate).<br><u>Class Members</u>:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or  2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000.<br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor.<br><u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |
| 3B | General Unsecured Claims | <u>Claim</u>: $656,776.11 - $1,810,514 (est. aggregate).<br><u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. | Yes | OPTION 1: 2.8% - 100%<br><br>OPTION 2: 100% |

51

| CAH 11 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | | |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*). <br> Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <br> OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or <br> OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. <br> Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100% <br><br> OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

## CAH 12 Plan

| CAH 12 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12. <br> Payments: Monthly principal and interest. <br> Interest: 7% fixed. <br> Term: 7 years. <br> Amortization: 7 years. <br> Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule. <br> Payments: Equal monthly installments of principal and interest per regulatory ERP. <br> Interest: Statutory interest (estimated 10 -10.75% | Yes | 100% |

| CAH 12 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | fixed). <br> <u>Term</u>: Up to 5 years. <br> <u>Amortization</u>: Up to 5 years. | | |
| 2 | Priority Non-Tax Claims | <u>Claim</u>: $0 - $56,086.08 (est. aggregate). <br> <u>Payments</u>: Equal monthly installments of principal and interest. <br> <u>Interest</u>: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed. <br> <u>Term</u>: 1 year. <br> <u>Amortization</u>: 1 year. | Yes | 100% |
| 3A | Convenience Claims | <u>Claim</u>: $21,802.88 (est. aggregate); Claims which may elect Convenience Class Treatment – $62,763.17 (est. aggregate). <br> <u>Class Members</u>:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000. <br> <u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> <u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | Yes | OPTION 1: 12.5% - 50% <br><br> OPTION 2: 100% |
| 3B | General Unsecured Claims | <u>Claim</u>: $530,351.48 - $898,347 (est. aggregate). <br> <u>Payments</u>: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  <u>OPTION 1</u> – a *pro rata* portion of $50,000, or <u>OPTION 2</u> – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> <u>Other</u>: Holders of such Claims not making an election are deemed to have chosen OPTION | Yes | OPTION 1: 5.6% - 100% <br><br> OPTION 2: 100% |

53

| CAH 12 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | 1. Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | | |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*). Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases. HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100% OPTION 2: 100% |
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

**CAH 16 Plan**

| CAH 16 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1A | Secured Claim: Gemino | Claim: $4,696,784.12. Payments: Monthly principal and interest. Interest: 7% fixed. Term: 7 years. Amortization: 7 years. Other: Retains liens and existing covenants. | Yes | 100% |
| 1B | Secured Claim: HHS Overpayment | Claim: (*DISPUTED*) See Schedule. Payments: Equal monthly installments of principal and interest per regulatory ERP. Interest: Statutory interest (estimated 10 -10.75% fixed). Term: Up to 5 years. | Yes | 100% |

54

| CAH 16 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Amortization: Up to 5 years. | | |
| 1C | Secured Claim: Bank of Commerce & Trust Co. | Claim: $64,499.21.<br>Payments: Surrender Collateral in full satisfaction of the Claim. | No | 100% |
| 1D | Secured Claim: Farmers State | Claim: $21,296.51.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 1 year.<br>Amortization: 1 year.<br>Other: Retains lien. | Yes | 100% |
| 1E | Secured Claim: M&T Bank | Claim: $5,000.<br>Payments: Equal monthly installments of principal and interest.<br>Interest: *Till* rate (estimated 3.75%) fixed or as agreed or determined by Bankruptcy Court.<br>Term: 2 years.<br>Amortization: 2 year.<br>Other: Retains lien; insurance and maintenance covenants. | Yes | 100% |
| 2 | Priority Non-Tax Claims | Claim: $0 - $45,146.50 (est. aggregate).<br>Payments: Equal monthly installments of principal and interest.<br>Interest: Federal Judgment Rate or as agreed or determined by the Bankruptcy Court (estimated 0.11%) fixed.<br>Term: 1 year.<br>Amortization: 1 year. | Yes | 100% |
| 3A | Convenience Claims | Claim: $24,148.45 (est. aggregate); Claims which may elect Convenience Class Treatment – $81,587.29 (est. aggregate).<br>Class Members:  1) Holders of Allowed General Unsecured Claims in amounts ≤ $1,000, or 2) Holders of Allowed General Unsecured Claims in amounts between $1,001 and $4,000 which elect to have such Claim Allowed in the amount of $1,000.<br>Payments: Each holder can elect to receive, in full satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed | Yes | OPTION 1: 12.5% - 50%<br><br>OPTION 2: 100% |

55

| CAH 16 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| | | Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1. | | |
| 3B | General Unsecured Claims | Claim: $1,076,706.64 - $2,206,289 (est. aggregate). <br> Payments: Each holder can elect to receive, in full satisfaction of its Allowed General Unsecured Claim:  OPTION 1 – a *pro rata* portion of $50,000, or OPTION 2 – payment in full of its Allowed General Unsecured Claim in the form of Class 1 Preferred Stock over time up to 20 years from future operations of the Debtor. <br> Other: Holders of such Claims not making an election are deemed to have chosen OPTION 1.  Parties to an executory contract or unexpired lease not assumed under the Plan must return a ballot to make an election as a member of this Class. | Yes | OPTION 1: 2.3% - 100% <br><br> OPTION 2: 100% |
| 3C | General Unsecured Claims of HHI | Claim: Up to filed amount of $16,128,097.38 (*DISPUTED*). <br> Payments: HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000 (aggregating to $650,000 for all Debtors); or OPTION 2 – 100% of its Allowed Unsecured Claim against this Debtor to be distributed in the form of Class 1 Preferred Stock. <br> Other: HHI's election of OPTION 1 or OPTION 2 treatment in any of the Debtors' cases will be deemed to have been an election of such treatment in all of the Debtors' cases.  HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation. | Yes | Aggregate Approx. OPTION 1: 4% - 100% <br><br> OPTION 2: 100% |

56

| CAH 16 Class | Description | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 4 | Old Equity Interests | Retain interest after the Effective Date. | No | 100% |

## IV.

## GENERAL INFORMATION

### A.    Overview of Chapter 11

On October 10, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. This Court has ordered joint administration of these Chapter 11 Cases.

### B.    Description of the Debtors' Businesses

HMC/CAH Consolidated, Inc. is in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals or CAHs. The core focus of HMC's business plan was to purchase under-performing rural hospitals, effect an operational turnaround, and replace the technologically out of date and operationally inefficient medical facilities of its CAHs with newly constructed state-of-the art facilities. Since its incorporation, HMC has purchased twelve (12) rural hospitals certified as Critical Access Hospitals (collectively, the "CAH Hospitals") – two of these are new facilities and ten are aged facilities in need of replacement. These CAH Hospitals are located in the following states: Kansas (3), Oklahoma (5), Missouri (1), Tennessee (1) and North Carolina (2).

The CAH Hospitals are the lifeline of the communities that they serve. Specifically, the CAH Hospitals provide critical health services to rural residents, including emergency medical services. In the absence of the CAH Hospitals, the rural residents would require a significant and unacceptable amount of time to reach comparable health facilities. The CAH Hospitals also provide some of the most stable and highest paying employment opportunities in their communities. Indeed, in most the communities in which it operates, the CAH Hospital is the communities' second largest employer, behind only the county government. Accordingly, the importance of preserving the CAH Hospitals on a going concern, with full CAH certification, cannot be overemphasized. If the CAH Hospitals lose their CAH certification or otherwise shut down, the rural residents served by these hospitals will experience material reductions in access to quality health care, and the communities will suffer material losses of employment.

### C.    Prepetition Credit Structure

#### 1.    *Accounts Receivables Financing*

Gemino Healthcare Finance, LLC ("Gemino"), HMC, HMC Management, CAH 2, CAH 3, CAH 5, CAH 7, CAH 9, CAH 10, CAH 11, CAH 12, and CAH 16 (collectively, the "Debtor A/R Borrowers") are parties to that certain Credit Agreement, dated as of April 12, 2010, as amended, pursuant to which Gemino has provided a secured revolving Credit Facility in the maximum amount of $6,000,000.00 (the "A/R Facility") to the Debtor A/R Borrowers.[4]

The amounts borrowed under the A/R Facility were used to fund general working capital requirements. As of the Petition Date, approximately $4.7 million was outstanding under the A/R Facility (the "Gemino Prepetition Obligations"). As of the Petition Date there was no remaining availability under the A/R Facility.

Pursuant to the A/R Facility, the Debtor A/R Borrowers granted first priority liens and security interests in favor of Gemino in substantially all of the Debtor A/R Borrowers' personal property assets, including, the following:   (i) all accounts, payment intangibles, instruments and other rights to receive payments of Debtor A/R Borrowers (including without limitation the Accounts), whether now existing or hereafter arising or acquired; (ii) all General Intangibles (including without limitation, contract rights and Intellectual Property), Chattel Paper. Documents, supporting obligations, Letter-of-Credit Rights, certain identified Commercial Tort Claims, remedies, guarantees and collateral evidencing, securing or otherwise relating to or associated with the property in subpart (i) above, including without limitation all rights of enforcement and collection, (iii) all Commercial Lockboxes, all Government Lockboxes, all Collection Accounts, (iv) all funds received thereby or deposited therein, and any checks or instruments from time to time representing or evidencing the same, (v) all books and records of Borrower evidencing or relating to or associated with any of the foregoing; (vi) all information and data compiled or derived by Borrower with respect to any of the foregoing (other than any such information and data subject to legal restrictions of patient confidentiality), and (viii) all collections, Accessions, receipts and Proceeds derived from any of the foregoing (collectively, clauses (i) through (viii), the "Gemino Prepetition Collateral").

#### 2.    *Mezzanine Financing*

To provide working capital, fund hospital acquisitions, and fund the replacement of hospital facilities pursuant to HMC's business plan, HMC, CAH 1, CAH 2, CAH 3, CAH 4, CAH 5, CAH 6, CAH 7, CAH 9, CAH 10, CAH 11 entered into that certain Master Funding Agreement and Amended and Restated Credit Agreement (the "MFA"), dated as of August 21, 2009, with HPCG Hospital Investment, LLC, an Arizona limited liability company ("HHI"). HHI asserts that CAH 12 and CAH 16 are parties to the Master Funding Agreement—an assertion disputed by the Debtors.   HHI filed proofs of claim asserting amounts outstanding as of the Petition Date of approximately $16.1 million, an amount disputed by the Debtors.

---

[4]    On or about March 23, 2012, the Gemino Credit Agreement (along with any Claims associated therewith) was transferred to HMC/CAH Note Acquisition, LLC. See Docket No. 393. HMC/CAH Note Acquisition, LLC was formed by certain of HMC's shareholders. The Gemino note was purchased by HMC/CAH Note Acquisition, LLC for an amount above par.

While each Debtor (except CAH 12 and CAH 16) executed promissory notes for its borrowings under the MFA, each Debtor (except CAH 12 and CAH 16) executed a guaranty of the other Debtors indebtedness under the MFA.

Pursuant to that certain Security Agreement, dated as of August 21, 2009, certain of the Debtors granted liens and security interests in favor of HHI in substantially all of the Debtors' personal property assets, including, but not limited to, the following: (i) all Accounts; (ii) all Chattel Paper; (iii) all Deposit Accounts; (iv) all Documents; (v) all Equipment; (vi) all Fixtures; (vii) all General Intangibles; (viii) all Instruments; (ix) all Inventory; (x) all Investment Property; (xi) all Letter of Credit Rights; (xii) all Vehicles; (xiii) all books and records; and (xiv) the proceeds of all the foregoing property (collectively, clauses (i) through (xiv), the "HHI Prepetition Collateral"). The lien rights are cross-collateralized among the Debtor Mezzanine Borrowers. The assets of CAH 4 and CAH 6 were expressly excluded as collateral. Based on the Debtors' review, HHI failed to perfect or file mortgages against various Debtors. Pursuant to its proofs of claim, HHI asserts a secured claim against HMC, CAH 1, CAH 2, CAH 3, CAH 5, CAH 7, CAH 9, CAH 10, and CAH 11. As more fully detailed below, the Debtors dispute HHI's Claims and believe HHI is while unsecured with respect to CAH 7 and CAH 11.

### 3.      *Lauderdale (CAH 11) Financing*

CAH 11 and CFG Community Bank  ("CFG") are parties to that certain Loan Agreement dated March 31, 2010 (the "CFG Loan Agreement"), pursuant to which CFG loaned to CAH 11 $2,502,701.00. As of the Petition Date, approximately $2,502,710 was outstanding under the CFG Loan Agreement (the "CFG Prepetition Obligations").

Pursuant to the CFG Loan Agreement, CAH 11 granted CFG a security interest in and to all personal property of CAH 11. Additionally, CAH 11 executed a Mortgage on the CAH Hospital's real property in favor of CFG (together with the liens on personal property, the "CFG Prepetition Collateral"). The Debtors believe that, pursuant to a certain Subordination Agreement between CFG, CAH 11 and HHI, HHI agreed to subordinate any security interests in CAH 11's assets to CFG. Additionally, the Debtors believe that HHI agreed that it was an unsecured creditor of CAH 11 and would remain so as long as any debt was outstanding to CFG by CAH 11 under the Loan Agreement. As set forth below, HHI disputes its unsecured status and the matter is being prosecuted before this Bankruptcy Court. The CFG Prepetition Obligations fully matured in March 2012.

### 4.      *I-70 (CAH 6) Financing*

CAH 6, HMC and First Liberty Bank ("First Liberty") are parties to that certain Loan Agreement dated as of December 6, 2010 (the "First Liberty Loan Agreement"), pursuant to which First Liberty loaned CAH 6 $9,300,000.00 which loan has a USDA Guarantee. As of the Petition Date, approximately $9,195,960 was outstanding under the First Liberty Loan Agreement (the "First Liberty Prepetition Obligations"). Pursuant to the First Liberty Loan Agreement, CAH 6 granted a security in, among other things, (a) furniture, fixtures and equipment, and (b) all accounts, including Health Care Insurance Receivables. Further, CAH 6 executed a Deed of Trust in favor of First Liberty Bank with respect to the CAH Hospital's real property in Sweet Springs, Missouri (together with the personal property liens, the "First Liberty

59

Prepetition Collateral").    On or about January 25, 2011, a group of HMC's directors, shareholders and shareholder affiliates, consisting of Larry Arthur, Richard Jones, Rosalia Hall, Sun Finance, DFP, LLC, Fidelity Security Life Insurance Company, made a short term working capital loan of $2,300,000 to HMC and its subsidiaries secured by, among other things, a security interest accounts receivables and general intangibles of CAH 6.

### 5.    Drumright (CAH 4) Financing

CAH 4 assumed the liabilities of the Drumright Municipal Healthcare Authority on that certain Mortgage Note dated October 15, 2003 in the original principal amount of $7,666,000.00 (the "Midland Loan Agreement") granted in favor of Midland Loan Services, Inc. ("Midland").  Midland obtained a loan guarantee from the Department of Housing and Urban Development ("HUD") of CAH 4's obligations.   As of the Petition Date, approximately $6,629,121 was outstanding under the Midland Loan Agreement (the "Midland Prepetition Obligations").  Pursuant to that certain Security Agreement, CAH 4 granted a security interest in accounts and the furniture, fixtures and equipment located at the CAH Hospital.  Additionally, CAH 4 acquired the real property of the CAH Hospital subject to the existing real estate mortgage in favor of Midland Loan Servicing, Inc. for HUD (the mortgage, together with the liens of furniture, fixtures and equipment, the "Midland Prepetition Collateral"). In addition to the loan obligations, CAH 4 is a party to a certain Regulatory Agreement with HUD related to CAH 4.  A default on the Regulatory Agreement is a default on the Midland Prepetition Obligations.

### 6.    Washington County Hospital (CAH 1) Financing

CAH 1  executed that certain Promissory Note (the "Citizens Loan Agreement") in favor of Citizens Bank, N.A. ("Citizens" and, collectively with Gemino, HHI, CFG, First Liberty, and Midland, the "Lenders") in the amount of $1,646,688.34.  As of the Petition Date, approximately $1,452,948 was outstanding under the Citizens Loan Agreement (the "Citizens Prepetition Obligations").   Pursuant to the Security Agreement, CAH 1 pledged a security interest in all assets and granted a real estate mortgage on the CAH 1 Hospital.  Additionally, Citizens has a security agreement on all of the assets of CAH 1 and a real estate mortgage on CAH 2's CAH Hospital (collectively with the liens on CAH 1 assets and mortgage on CAH 1 property, the "Citizens Prepetition Collateral").   The Citizens Prepetition Obligations fully matured prior to the Petition Date.

### V.

### EVENTS PRIOR TO THE COMMENCEMENT OF THE
### CHAPTER 11 CASES

### A.    HHI's Failure to Meet its Funding Obligations

As described in detail below, the Debtors assert that HHI's refusals to meet its funding obligations pursuant to the MFA, in breach thereof, have been the primary cause of the Debtors' filings pursuant to chapter 11 of the Bankruptcy Code.

60

Between the Fall of 2009 and the Spring of 2010, the Debtors and HHI worked together to secure financing for the replacement costs of the hospitals owned by CAH 1, CAH 3, CAH 5, and CAH 7 (collectively, the "Four Hospital Projects"). The Debtors and HHI were able to secure bank lenders that would lend up to 80% of the Four Hospital Projects on the basis of a 90% USDA guarantee and the Debtors assert that HHI agreed to directly fund the remaining 20% of the Four Hospital Projects at or before the respective loan closings.

In the fall of 2010, HHI made written representations to the Bank of Hays, Kansas, the bank lender for the CAH 5 project, that it was committed to funding $10.0 million for all Four Hospital Projects and it made the same representation to the Debtors' representatives. HHI then did not fund three of the projects and it funded only $500,000 of the paid-in capital required for the CAH 5 project. The Debtors assert that ultimately none of the four loans underlying the Four Hospital Projects closed because HHI breached its obligations to fund its portion of the project costs. Initially, HHI represented to HMC's board of directors that it was not able to fund the Four Hospital Projects. Fourteen days after advising HMC's board of its alleged inability to fund, HHI offered to fund the $10.0 million for the Four Hospital Projects, plus $3.0 million in working capital, in exchange for an approximately two-thirds controlling stake in the ownership of the Debtors.

HHI's failure to fund the Four Projects has caused one or more of CAH 1, CAH 3, CAH 5, and CAH 7 to default on their obligations to the sellers (i.e. the local communities) under the hospital acquisition agreements for the Four Hospital Projects. Specifically: (i) CAH 1 is in default of its obligation to Washington County, North Carolina, to start construction on the replacement for the Washington County Hospital facility and has triggered a $700,000 penalty under the CAH 1 acquisition agreement; (ii) CAH 3 is in default of its obligation to the local not-for-profit hospital corporation in Horton, Kansas, to start construction on the replacement for the Horton Community Hospital facility; (iii) CAH 5 is in default of its obligation to the City of Hillsboro, Kansas, to start construction on the replacement for the Hillsboro Community Hospital facility; and (iv) CAH 7 is now in default of its obligation to the local not-for-profit hospital corporation in Prague, Oklahoma, to start construction on the replacement for the Prague Community Hospital facility.

On June 30, 2011, the Debtors filed suit against, among others, HHI in the Circuit Court of Jackson County, Missouri (the "State Court Litigation"), because (among other things) of HHI's failure to perform its contractual obligations, pursuant to the MFA. In the State Court Litigation, the Debtors sought declaratory relief that the Debtors are not in default and that their performance under the MFA is excused. The Debtors also sought injunctive relief.

Following the filing of the State Court Litigation, HHI filed a counter-claim seeking, among other things, foreclosure on all 12 of the Debtors' hospitals and authority to notify senior lenders of HHI's position that the Debtors are in default. The Debtors dispute these allegations and dispute that HHI is entiled to the relief requested. Likewise, HHI disputes the allegations in the section above and is defending the State Court Litigation.

## B.      Impact of HHI's Failures to Fund on A/R Facility

Pursuant to the A/R Facility, ten of the Debtors should have had an Advance Rate of 50% on Eligible Accounts that exceed $12,500,000.00 from its A/R lender Gemino. Accordingly, based on the $6,000,000 cap for the A/R Facility, the Debtors should have been able to borrow the full amount of the A/R Facility in the amount of $6,000,000.00. However, because of the impact on the Debtors' financial performance of HHI's refusal to fund the Four Hospital Projects, Gemino imposed additional reserves from the Eligible Accounts such that the Debtors could only access approximately $4,000,000.00 of availability under the A/R Facility. While Gemino allowed the Debtors to borrow a $600,000.00 overadvance (with corresponding overadvance fees), even with this overadvance, the Debtors Advance Rate was less than 41% and provided insufficient liquidity to fund payroll.

In sum, the Debtors believe that HHI's breaches of the MFA have had the dual negative repercussions of:  (i) causing CAH 1, CAH 3, CAH 5, and CAH 7 to breach their obligations related to the Four Hospital Projects; and (ii) causing the Debtors to suffer from an overly restrictive Advance Rate under the Gemino Loan.  The net effect of HHI's breaches is that the Debtors did not have sufficient liquidity to continue their businesses and sought relief pursuant to chapter 11 of the Bankruptcy Code.

## VI.

## SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES

On October 10, 2011, the Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.  The Debtors continue to operate their businesses and manage their properties as Debtors in Possession pursuant to section 1107 and 1108 of the Bankruptcy Code.  The following is a brief description of the major events during the Chapter 11 Cases.

## A.      Filing and First Day Orders

On the Petition Date, the Debtors submitted to the Bankruptcy Court a number of "*first day orders,*" along with supporting applications and affidavits.  These first day orders included, among other things:

- *Case Administration Orders*.  (i) an order authorizing the joint administration of the Chapter 11 Cases, (ii) an order extending the time to file the Debtors' schedules and statements, and (iii) an order establishing notice procedures and omnibus hearing dates.

- *Payment on Account of Certain Prepetition Claims*.  These first day orders included:  (i) an order authorizing the payment of prepetition wages, compensation and employee benefits and (ii) an order authorizing the payment of prepetition sales and use taxes.

62

- *Business Operations*. These first day orders included: (i) an order maintaining existing bank accounts and business forms, (ii) an order authorizing the maintenance of the Debtors' centralized cash management system, (iii) an order providing adequate assurance of future payment to utility companies.

- *Financing Matters*. The first day orders also included an interim order authorizing the Debtors to use cash collateral pending a final hearing on the Debtor's use of cash collateral.

## B.     Debtors' Retention of Professionals

The Bankruptcy Court has entered orders authorizing the Debtors to retain the following professionals to assist in the chapter 11 cases: (i) Husch Blackwell, LLP as chapter 11 counsel; (ii) Denman & Company, LLP as financial advisors; (iii) CliftonLarsonAllen LLP as Tax Advisors; (iv) Royal Blue Capital, LLC as Capital Investment Consultant; and (v) CBIZ, Inc. as Appraisers. The Court has also authorized the Debtors to retain other professionals, including those professionals used in the ordinary course of business.

## C.     Appointment of the Committee and Retention of Professionals

On October 21, 2011, in accordance with section 1102 of the Bankruptcy Code, the United States Trustee for the Western District of Missouri (the "UST") appointed the Committee to represent in a fiduciary capacity the interests of the Debtors' unsecured creditors.

During the Chapter 11 Cases, the Debtors consulted regularly with the Committee concerning the administration of the Chapter 11 Cases, and sought consensus of the Committee for actions and transactions outside of the ordinary course of business. The Committee, together with its advisors, participated actively, together with the Debtors' management and professionals, regarding the Debtors' business operations, operating performance and business plan.

The members of the Committee are set forth below.

Committee Members:

| | |
|---|---|
| Agility Health, Inc. | Rural Access Medical Providers, PA |
| Attn: Kenneth E. Scholten | Attn: Stephen B. Futh |
| 607 Dewey Avenue NW, Suite 300 | 3 Traveller Lane |
| Grand Rapids, MI 49504 | New Bern, NC 28562 |
| | |
| Spectron Corporation | North Carolina Baptist Hospital |
| Attn: Pamela J. Young | Attn: J. McLain Wallace Jr. |
| 5416 S. Yale, Suite 650 | Medical Center Boulevard |
| Tulsa, OK 74135 | Winston-Salem, NC 27157-1021 |
| | |
| Oklahoma Blood Institute | |
| Attn: Mark Patterson | |

1001 N. Lincoln Blvd.
Oklahoma, OK 73104

The Bankruptcy Court entered orders authorizing the Committee to retain the following professionals:

| Attorneys: | Financial Advisors: |
|---|---|
| Kilpatrick Townsend & Stockton LLP | J.H. Cohn LLP |
| 1100 Peachtree Street NE | 333 Thornall Street |
| Suite 2800 | Edison, NJ 08837 |
| Atlanta, Georgia 30309-4530 | |
| | |
| Lentz Clark Deines PA | |
| 9260 Glenwood | |
| Overland Park, KS 66212 | |

## D.     The Cash Collateral Order

To facilitate the establishment of normal vendor relations and to avoid short-term liquidity concerns, after the commencement of the Chapter 11 Cases, the Debtors negotiated agreements with their secured lenders for the use of cash collateral which agreements were formalized in the Final Order (i) Authorizing Use Of Cash Collateral Pursuant To Sections 361 And 363 Of The Bankruptcy Code And Bankruptcy Rule 4001, (ii) Granting Adequate Protection, And (iii) Granting Related Relief (the "Cash Collateral Order") (Docket No. 200).

In addition to the arrangement outlined above, the Cash Collateral Order also provides that the Debtors have stipulated to, among other things, the validity and binding nature of the Prepetition Loan Documents between the Debtors and the Prepetition Lenders, the amount of principal balance due under the Prepetition Loan Documents and the validity, enforceability and extent of the Prepetition Lenders' liens securing the Prepetition Loan Obligations.   In addition, the Cash Collateral Order also grants investigation rights to the Committee to challenge the "amount, validity, enforceability, perfection, priority, extent (whether a lien attached to a particular asset) or avoidability of a Prepetition Lender's lien or claim."  The challenge period has expired and no action was brought by the Committee to challenge either the Prepetition Lender's lien or claim except as to certain insider loans.  All defined terms used in this paragraph but not otherwise defined in the Joint Plan or Disclosure Statement shall have the meanings ascribed to them in the Cash Collateral Order.

The Cash Collateral Order also approved the granting of replacement liens to the extent of the diminution of collateral value as of the Petition Date as well as waiving any rights to pursue the equitable doctrine of marshaling with respect to the Prepetition Lenders and any of the Prepetition Collateral or the Replacement Collateral (as those terms are defined in the Cash Collateral Order).

E.    **Claims Process and Bar Dates**

1.    *Schedules and Statements*

On October 26, 2011, the Debtors obtained an order from the Bankruptcy Court extending the date for filing their schedules of assets and liabilities, and statements of financial affairs (collectively, the "Schedules") until November 23, 2011, and obtained a further extension of that deadline until January 6, 2012.  On January 6, 2012, each of the Debtors filed their complete Schedules, itemizing the various claims against the Debtors.  On March 5, 2012, the Debtors filed amended and restated Schedules amending and adding other claims.

2.    *Bar Date*

By order dated March 6, 2012 (the "Bar Date Order"), pursuant to Bankruptcy Rule 3003(c)(3), the Bankruptcy Court fixed May 15, 2012 (the "Proofs of Claim Bar Date") as the date by which proofs of claim were required to be filed in the Chapter 11 Cases as well as the deadline for filing claims pursuant to 11 U.S.C. §503(b)(9) (the "503(b)(9) Claims") (the "503(b)(9) Bar Date," and, together with the Proofs of Claim Bar Date, the "Bar Date").  In accordance with the Bar Date Order, on or about March 9, 2012, a proof of claim form, a notice describing the Bar Date and a copy of the Bar Date Order were mailed to all creditors listed on the Debtors' Schedules, each member of the Committee and all persons and entities requesting notice pursuant to Bankruptcy Rule 2002 as of the date of entry of the Bar Date Order.

Counterparties to executory contracts or unexpired leases that had not been rejected by Order of the Court before the Bar Date were excluded from application of the Bar Date and Bar Date Order.  The Joint Plan sets forth certain contracts and leases to be assumed pursuant to the Joint Plan. All other unexpired leases and executory contacrts will be rejected on the Effective Date.  Claims arising from such rejection will be subject to the claims procedures set forth in the Joint Plan.

3.    *Approval of Equipment Replacement*

As a system of hospitals charged with maintaining quality patient care, the Debtors requested and received authorization from this Court to lease, as is the general (and the Debtors') practice, equipment to replace outdated medical and diagnostic equipment which had outlived its useful life.  Pursuant to the Order Authorizing Debtors to Resume Payments on Equipment Lease Schedule No. 001 with Farnam Street Financial, Inc. and to add additional Equipment to said Lease Schedule [Docket No. 198] as well as the Order Authorizing Debtors Continued Operation of Their Business in the Ordinary Course [Docket No. 194], the Debtors were permitted, subject to various restrictions, to continue to renew and upgrade their equipment even during the pendency of these Bankruptcy proceedings in order to better serve their patients. Since the Petition Date, the most significant replacements have been: CT Scanners at CAH 1, CAH 3, and CAH 16; telemetry equipment at CAH 6; x-ray equipment at CAH 7; and HVAC equipment at CAH 11.

### 4.      Approval of EMR Financing

Pursuant to the Order Authorizing the Assumption of Certain Agreements with First Financial Healthcare Solutions pursuant to Section 365 of the Bankruptcy Code [Docket No. 340], the Debtors were allowed to continue the financing with respect to the ongoing development and implementation of the electronic medical records ("EMR") systems at several of the Debtors' facilities.

EMR are computerized medical records created by a hospital or physician's office which is part of a local health information system that facilitates the easy storage, retrieval, and modification of such records without resort to paper records and their attendant problems, complexities, and physical storage requirements. EMR allows for medical records to be available to medical care personnel more quickly, especially in emergency situations, as well as providing ease of portability of a patient's medical records as that patient is cared for by multiple caregivers in a particular facility or receives care at different facilities through a medical care cycle.

Pursuant to revisions to federal health care laws adopted in 2009, medical providers seeking reimbursement from Medicare and Medicaid generally are required to implement some form of EMR system no later than December 31, 2014 and, to facilitate this process, the federal government provides incentive payment to medical providers upon achieving certain milestones.  Without continued funding of the EMR system, the Debtors would likely have been required to refund CMS for previous incentive payments, as well as, reduction in reimbursement rates, and losing out on the opportunity to improve patient care through a more efficient and streamlined records system.

### 5.      Appointment of Ombudsman at CAH 16 and Favorable Ombudsman Report

The Debtors initially received a determination from the Court that the appointment of a patient care ombudsman was not necessary.  [Docket No. 107]  However, in response to certain alleged deficiencies in patient care at the hospital operated by CAH 16, the UST requested that an ombudsman be appointed with respect to that Debtor.  On January 3, 2012, E. Marissa Lane was so appointed.  On March 5, 2012, Ms. Lane filed the Ombudsman Report for the period of 01/03/12 through 03/03/12 [Docket No. 321] in which she relates her review of the operations of the Debtor and commented that "the facility has done an excellent job of meeting the financial challenges inherent in the bankruptcy process" and that overall she found the "hospital to be operating well."

### 6.      Purchase of Gemino Note

As noted above, on or about March 23, 2012, the Gemino Credit Agreement (along with any Claims associated therewith) was transferred to HMC/CAH Note Acquisition, LLC.  HMC/CAH Note Acquisition, LLC was formed by certain of HMC's shareholders who purchased the Gemino Note for an amount above the par value of the note. In response to Gemino's desire to exit their position and credible indications that parties potentially hostile to the Debtors were seeking to purchase the note from Gemino, the Debtors facilitated the purchase of the note by the group of friendly investors.  Among other things, such purchase maintained the

considerable benefits to the Debtors provided by the Subordination Agreement between Gemino and HHI.  The Committee continues to investigate the propriety of the acquisition of the Gemino Note.

## VII.

## OTHER ISSUES WHICH MAY AFFECT DISTRIBUTIONS UNDER THE PLANS

### A.      Healthcare Reforms and Future Implementation

Regulatory risk is inherent in the healthcare business since the government can at any time make unpredictable changes to the reimbursement or qualification requirements for healthcare providers, including critical access hospitals.  The Debtors' future operations and profitability could be adversely affected by any such changes.   The current political and regulatory climate and the pending national elections contribute to the uncertainty with respect to the Medicare system and reimbursement rates.

Additionally, the risk of bad debt is inherent in the healthcare business since hospitals are legally required to treat any person with a medical emergency that arrives at the hospital.  This means that persons who are uninsured and without the ability to pay must be admitted for emergency treatment.  The Debtors' future operations and profitability could be adversely affected by this legal requirement.

### B.      Economic Crisis

Among a variety of more general macroeconomic concerns which affect all businesses in the United States and which remain a risk to the Debtors' future operations, the ongoing fiscal downturn has affected the number of people with health insurance and the demand for healthcare.  Those without insurance often choose not to seek healthcare for chronic or acute health issues unless such issues rise to the level of an emergency. However, by this point, not only has the opportunity passed for much cheaper preventative care, but the provision of care to patients in emergency rooms is particularly costly.  As corollary to the above, if such patients are not eligible for support from a governmental program, the Debtors may be forced to write off these (sometimes significant) costs.  Moreover, both public and private insurers continue to consider cuts in reimbursement rates as a way to "control costs" of healthcare.    There is currently pending before Congress a proposed 20% cut in Medicare reimbursement rates.

### C.      HHI Litigation

As is described elsewhere in the Disclosure Statement, the Debtors are engaged in ongoing litigation with HHI.  Although the Debtors believe that the bases for their claims (and defenses to HHI's counterclaims) are strong, any litigation involves significant risk.  As such, the results of the HHI Litigation could have considerable impact on the Debtors and the pool of unsecured claims.  Simply put, the larger the allowed unsecured claim of HHI, the longer it will take to make all of the distributions to those other parties who will receive Class 1 and Class 2 Preferred Stock (assuming HHI elects OPTION 2 treatment).

D. **_Pro Rata_ Distributions to Holders of Class 3B Claims electing Option 1 Treatment**

Because each of the Debtors' Plans allows for holders of Class 3B Claims to elect a _pro rata_ payment in cash from a $50,000 fund, rather than payment of 100% of the Allowed Claim in Class 1 Preferred Stock, the actual amounts of the payments from such funds will depend on the total amount of Allowed Claims in each of the Debtors' cases which elect to receive this treatment. Until the Debtors receive the election from each creditor in Class 3B and the Allowed amount of each such Claim is determined, the actual amount of the _pro rata_ distribution to be paid to the holder of such Claim will remain undetermined. The Debtors have set forth ranges of amounts of potential Claims in the respective Debtors' various Classes and the associated potential ranges of recoveries in Section III above.

E. **Environmental Liabilities**

There were no material outstanding enforcement actions or judgments pending against the Debtors as of the Petition Date. Since the inception of these Chapter 11 Cases, the Debtors have received no material claims for environmental matters.

F. **Potential Causes of Action**

Among several hospitals and healthcare providers, CAH 9 (Seiling Community Hospital) was named in a pending medical malpractice claim for an alleged wrongful death purportedly associated with treatment received at the hospital facility for a patient who was treated and transferred to another facility. CAH 9 disputes liability in the patient's death. The claim is covered by the Debtor's insurance, and the insurance carrier is providing the Debtor's defense in that action. The Debtor has primary coverage of up to $1.0 million and excess coverage of an additional $1.0 million. The Debtor believes it has no liability with respect to the incident and it further believes that it has adequate insurance coverage to cover the potential liability.

More generally, Litigation risk is inherent in the healthcare business since a bad medical outcome for a patient can lead to the filing of a malpractice claim. The company carries liability insurance to mitigate this risk but the company's future operations and profitability could be adversely affected by this risk of litigation.

## VIII.

## THE CHAPTER 11 PLANS

The Debtors' Joint Plan contains contain 13 distinct chapter 11 plans. Each of the Debtors' Plans is a chapter 11 plan of reorganization. The Debtors will continue to maintain their separate corporate existence, except as otherwise expressly provided for in the Joint Plan.

A. **Description of the Classes and Summary of Treatment**

The Plan classifies Claims and Equity Interests separately and provides different treatment for different Classes of Claims and Equity Interests, in accordance with the Bankruptcy Code. As described more fully below, the Plan provides, separately for each Class, that holders

of certain Claims will receive various amounts and types of consideration based on the different rights of the holders of Claims in each Class.

### 1.    Administrative Claims

Administrative Claims are Claims constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Such Claims include all actual and necessary costs and expenses of preserving the estates of the Debtors, all actual and necessary costs and expenses of operating the business of the Debtors in Possession, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code.

Except as provided in the next sentence with respect to ordinary course obligations and in Section VIII.A.2 below with respect to professional compensation and reimbursement Claims, Administrative Claims will be paid in full, in Cash, on the later of the Effective Date and the date the Administrative Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable. Allowed Administrative Claims representing obligations incurred in the ordinary course of business by the Debtors in Possession (including, without limitation, amounts owed to vendors and suppliers that have sold goods or furnished services to the Debtors in Possession since the Petition Date) will be paid in full in the ordinary course of business in accordance with the terms and conditions of the particular transactions and any agreements relating thereto. The Debtors estimate that Allowed Administrative Claims payable on the Effective Date, exclusive of compensation and reimbursement of expenses payable to professionals retained in the Chapter 11 Cases, will be less than $100,000.

### 2.    Fees and Expenses of Professionals

Compensation and reimbursement Claims are Administrative Claims for the compensation of professionals and reimbursement of expenses incurred by such professionals pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Bankruptcy Code (the "Compensation and Reimbursement Claims"). All payments to professionals for Compensation and Reimbursement Claims will be made in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The aggregate amount paid by the Debtors in respect of compensation for services rendered and reimbursement of expenses incurred by professionals (including professionals employed by the Debtors and the Committee) through June 1, 2012 is approximately $765,000. The Bankruptcy Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

Applications for payment for services rendered and expenses incurred through March 31, 2012, have been submitted by the Debtors' and Committee's Professionals. The amounts requested and granted pursuant to such applications are summarized below.

69

| Professional | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed |
|---|---|---|---|---|
| Husch Blackwell LLP | $739,369.50 | $39,400.45 | N/A[5] | N/A |
| CliftonLarsonAllen LLP | $15,100.00 | $0 | $15,100.00 | $0 |
| Kilpatrick Townsend & Stockton LLP | $424,078.50 | $15,600.81 | N/A[6] | N/A |
| J.H. Cohn LLP | $62,354.50 | $1,865.52 | $62,354.50 | $1,865.52 |
| Lentz Clark Deines PA | $9,319.00 | $95.31 | $9,319.00 | $95.31 |

In addition based in interim statements, the Debtors project additional fees of approximately $250,000 for the Debtors' professionals and $100,000 for the Committee's professionals though June 1, 2012. Although difficult to establish with precision, the Debtors project additional fees of approximately $750,000 for the Debtors' professionals, and $500,000 for the Committee's professionals though the Effective Date (pursuant to the Cash Collateral Order, the Debtors are authorized to pay and have been paying $110,000 and $40,000 per month to the Debtors' and Committee's professionals, respectively, which will reduce the amounts to be paid to such professionals on the Effective Date).

Section 503(b) of the Bankruptcy Code provides for payment of compensation to creditors, indenture trustees and other entities making a "substantial contribution" to a reorganization case and to attorneys for and other professional advisors to such entities. The amounts, if any, which may be sought by entities for such compensation are not known by the Debtors at this time. Requests for compensation must be approved by the Bankruptcy Court after a hearing on notice at which the Debtors and other parties in interest may participate and object to the allowance of any claims for compensation and reimbursement of expenses.

Pursuant to the Plan, each holder of a Compensation and Reimbursement Claim will be required to file its final application for the allowance of compensation for services rendered and reimbursement of expenses incurred by no later than the date that is thirty-five (35) days after the Confirmation Date or such other date as may be fixed by the Bankruptcy Court. Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order. Professional fees shall be allocated among the Debtors consistent with the Debtors' pre-petition allocation of "Home Office" costs includable on each Debtor's Medicare cost report in a manner consistent with all applicable laws, rules, or

---

[5] The Bankruptcy Court has not yet entered the order approving the application for fees and expenses of Husch Blackwell. There were no objections filed to said application. Through agreement with the UST, Husch Blackwell has voluntarily agreed to reduce its fees for this period to $726,137.00 and its expenses to $39,227.45.

[6] An objection to the application of Kilpatrick Townsend & Stockton for fees and expenses for this period was lodged and the hearing with respect to the objection has not yet been held.

regulations governing such cost reports. Such allocation shall not be deemed a distribution under the CAH 6 Regulatory Agreement.

### 3.   *Priority Tax Claims*

Priority Tax Claims are Claims of governmental units for taxes entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code. The Debtors estimate that the amount of Allowed Priority Tax Claims that have not previously been paid pursuant to an order of the Bankruptcy Court will aggregate approximately less than $300,000.

Pursuant to the Plan, except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim will be paid on the Effective Date, or as soon thereafter as is reasonably practicable, in full, in Cash, an amount equal to such Allowed Priority Tax Claim.

### 4.   *HHS Secured ERP and Overpayment Claims*

The Department of Health and Human Services ("HHS") has asserted certain Secured Claims in the Debtors' cases which relate to the recoupment of overpayments made by CMS to such Debtors for the reimbursement for Medicare services. HHS ERP Secured Claims relate to those Claims for which the respective Debtor and HHS have agreed to the amount of the overpayment through an audit process and the Debtor has committed to the repayment of the amount through an extended repayment plan ("ERP") over time up to 60 months from future Medicare disbursements pursuant to the applicable federal regulations. HHS Overpayment Secured Claims are Claims filed by HHS for FY2011 for which an audit has not been completed. As a general matter, the Debtors dispute the amount and/or basis for these Claims in excess of the amounts reported by Debtors on the respective cost reports, but, as indicated in the applicable section regarding the treatment of such Claims in the respective Debtors' Plans, to the extent that it is determined that a Debtor does owe HHS for an overpayment, the Debtors will pay such amounts according to the same payment scheme as the HHS ERP Secured Claims. Attached as Schedule 8.1 is a listing of such Claims and the respective amounts of each.

### 5.   *Convenience Classes*

The Debtors provide, in each of their respective cases, for a Convenience Class, Class 3A, consisting of holders of Claims up to $1,000 which may elect to receive an immediate 50% payout of their Allowed Claim. In addition, General Unsecured Claimants in all the Debtors' Plans holding Claims in an amount from $1,001 to $4,000 may elect to have their Claim Allowed and capped at $1,000 and receive the same 50% payout on such Allowed Claim. Providing for such a class of Claims in each of the Debtors' respective Plans allows the Debtors to realize significant administrative savings for the estates by eliminating/reducing the necessity to adjudicate, administer and manage such small dollar amount claims as a part Class 3B Claims in each of the Debtors' Plans. The Debtors estimate that there are, in the aggregate, approximately 850 of the approximately 1600 creditors holding Claims in an amount of $1,000 or less. Dispensing with the majority of the Debtors' Claims in a swift and efficient manner will permit the Debtors to appropriately focus their attention and resources on those Claims with

greater impact on those Debtors' estates, and consequently, will inure to the benefit of the estates' creditors.  If all creditors holding Allowed Claims between $1,001 and $4,000 opt-in to the Convenience Class, then the number of creditors holding such claims grows to approximately 1200 of the 1600 total creditors.

### 6.    Section 503(b)(9) Claims

As referenced above, the Bar Date Order fixed May 15, 2012 as the deadline for filing claims pursuant to 11 U.S.C. §503(b)(9) for goods provided to the Debtors in the 20-day period before the Petition Date to the extent that such claimant disagreed with the amount listed in the Debtors' Twenty Day Claims Notice [Docket No. 243] filed pursuant to the Order Establishing Procedures For The Assertion Of Section 503(B)(9) Claims Relating To Goods Received Within Twenty Days Prior To The Petition Date [Docket No. 199].The Debtors have received a significant number of proofs of claim related to Section 503(b)(9) and are in the process of reviewing and reconciling such claims and anticipate objecting to a significant number of such filed proofs of claim under a variety of theories including that many of the claims simply do not pertain to goods received by the Debtors in the 20-day period before the Petition Date.  A list of the 503(b)(9) claims with which the Debtors agree as well as all other asserted 503(b)(9) claims, indicating whether such claim is currently disputed, shall be filed with the Plan Supplement as Schedule 8.2.

### 7.    Descriptions and the Specific Treatment of the Classes of Each Debtor

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in each of the Debtors and their respective plan treatments.

### HMC Plan

**HMC Class 1A (Gemino Secured Claim).**

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized HMC shall commence payment on the obligations comprising HMC Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the HMC bankruptcy case and Gemino shall retain its Prepetition liens.

**HMC Class 1B (HHI Secured Claim).**

HMC disputes HHI's Claim.  HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $46,696.13 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court.  Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any

payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account. In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim. If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of HMC Class 1B, any such proceeds which would otherwise have been distributed to HMC Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed. Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors. Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### HMC Class 1C (Sun Finance Secured Claim).

On the Effective Date, Reorganized HMC shall commence payment on the obligations comprising HMC Class 1C, pursuant to the Plan. The maturity date of Sun Finance Loan will be extended to five years from Effective Date of Plan with principal and interest paid monthly and amortized over the five-year term with interest accruing at a fixed rate of 6%. All provisions for default rate under the Sun Finance Loan will be excised. All other covenants of the Sun Finance Loan will remain unaltered and Sun Finance will retain its Prepetition liens.

### HMC Class 1D (First Liberty Bank Secured Claim).

The Debtors believe that the HMC Class 1D Claim was incorrectly filed against HMC. To the extent the HMC Class 1D Claim becomes an Allowed Claim against HMC and to the extent it is determined to be an Allowed Secured Claim, the holder of the HMC Class 1D Claim will retain its Prepetition liens and the HMC Class 1D Claim will be paid in full by CAH 6 and will not be paid by HMC. Likewise, to the extent that the HMC Class 1D Claim is determined to be an Allowed Unsecured Claim, the HMC Class 1D Claim will be paid in full by CAH 6 and will not paid be paid by HMC.

73

### HMC Class 1E (Midland Loan Services Secured Claim).

The Debtors believe that the HMC Class 1E Claim was incorrectly filed against HMC. To the extent the HMC Class 1E Claim becomes an Allowed Claim against HMC and to the extent it is determined to be an Allowed Secured Claim, the holder of the HMC Class 1E Claim will retain its Prepetition liens and the HMC Class 1E Claim will be paid in full by CAH 4 and will not be paid by HMC.  Likewise, to the extent that the HMC Class 1E Claim is determined to be an Allowed Unsecured Claim, the HMC Class 1E Claim will be paid in full by CAH 4 and will not be paid by HMC.

### HMC Class 1F (CFG Community Bank Secured Claim).

The Debtors believe that the HMC Class 1F Claim was incorrectly filed against HMC. To the extent the HMC Class 1F Claim becomes an Allowed Claim against HMC and to the extent it is determined to be an Allowed Secured Claim, the holder of the HMC Class 1F Claim will retain its Prepetition liens and the HMC Class 1F Claim will be paid in full by CAH 11 and will not be paid by HMC.  Likewise, to the extent that the HMC Class 1F Claim is determined to be an Allowed Unsecured Claim, the HMC Class 1F Claim will be paid in full by CAH 11 and will not be paid by HMC.

### HMC Class 1G (Fidelity Security Life Insurance Co. Secured Claim).

The holder of the HMC Class 1G Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1C and will not paid be paid by HMC.

### HMC Class 1H (Citizens Bank, N.A. Secured Claim).

The Debtors believe that the HMC Class 1H Claim was incorrectly filed against HMC. To the extent the HMC Class 1H Claim becomes an Allowed Claim against HMC and to the extent it is determined to be an Allowed Secured Claim, the holder of the HMC Class 1H Claim will retain its Prepetition liens and the HMC Class 1H Claim will be paid in full by CAH 1 and will not be paid by HMC.  Likewise, to the extent that the HMC Class 1H Claim is determined to be an Allowed Unsecured Claim, the HMC Class 1H Claim will be paid in full by CAH 1 and will not be paid by HMC.

### HMC Class 1I (Rosalia Hall Secured Claim).

The holder of the HMC Class 1I Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1F and will not paid be paid by HMC.

### HMC Class 1J (Shelco, Inc. Secured Claim).

HMC believes that the HMC Class 1J Claim was incorrectly filed against HMC and disputes the basis for the HMC Class 1J Claim.  The HMC Class 1J Claim is premised upon the effectiveness of a mechanics lien filed in North Carolina against CAH 10, a distinct corporate entity located in another state.  Additionally, even with respect to CAH 10,

because CAH 10 does not hold title to real property but rather leases from Yadkin County (a subdivision of the state against which such a lien is ineffective), such lien at CAH 10 would attach, if at all, only to CAH 10's leasehold interest.

To the extent the HMC Class 1J Claim becomes an Allowed Claim against HMC and to the extent it is determined to be an Allowed Secured Claim against HMC, the holder of the HMC Class 1J Claim will retain its Prepetition lien and the HMC Class 1J Claim shall be paid the value of its Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court.  To the extent that the HMC Class 1J Claim is determined **not** to be an Allowed Unsecured Claim against HMC, but an Allowed Secured Claim against CAH 10, the HMC Class 1J Claim will be paid in full by CAH 10 and will not be paid by HMC. To the extent that the HMC Class 1J Claim is determined to be an Allowed Unsecured Claim with respect to both HMC and CAH 10, the HMC Class 1J Claim will be treated as an HMC Class 3B Claim.

### HMC Class 1K (Richard Jones Secured Claim).

The holder of the HMC Class 1K Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1E and will not paid be paid by HMC.

### HMC Class 1L (Commerce Bank Secured Claim).

The holder of the HMC Class 1L Claim will be paid pursuant to its agreement with HMC and retain its security interest in its Collateral.  HMC's obligations under the loan documents shall be unaltered by this Plan; provided however, that any technical default under any *ipso facto* clause relating to the filing of the Chapter 11 Cases shall be waived.

### HMC Class 1M (Ally Financial Secured Claim).

The holder of the HMC Class 1M Claim will be paid pursuant to its agreement with HMC and retain its security interest in its Collateral. HMC's obligations under the loan documents shall be unaltered by this Plan; provided however, that any technical default under any *ipso facto* clause relating to the filing of the Chapter 11 Cases shall be waived.

### HMC Class 1N (East Carolina Bank Secured Claim).

The Debtors believe that the HMC Class 1N Claim was incorrectly filed against HMC and dispute the basis for the HMC Class 1N Claim. To the extent the HMC Class 1N Claim becomes an Allowed Claim against HMC and to the extent it is determined to be an Allowed Secured Claim, the holder of the HMC Class 1N Claim will retain its Prepetition liens and the HMC Class 1N Claim will be paid, by CAH 1, the value of its collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court and will not be paid by HMC.  Likewise, to the extent that the HMC Class 1N Claim is determined to be an Allowed Unsecured Claim, the HMC Class 1N Claim will be paid in full by CAH 1 and will not be paid by HMC.

**HMC Class 2 (Priority Non-Tax Claims).**

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

**HMC Class 3A (Convenience Claims).**

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against HMC in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against HMC in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

**HMC Class 3B (General Unsecured Claims).**

Each holder of an Allowed General Unsecured Claim in HMC Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the HMC Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this HMC Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

**HMC Class 3C (HHI General Unsecured Claim).**

HMC disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000;

76

or <u>OPTION 2</u> – 100% of its Allowed HMC Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of HMC Class 3C, any such proceeds which would otherwise have been distributed to HMC Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### HMC Class 4 (Old Equity Interests).

All members of HMC Class 4 Equity Interests shall retain such interest after the Effective Date, <u>provided</u>, <u>however</u>, that no holder of such HMC Class 4 Equity Interests shall receive any distribution under the Plan until all Class 1 Preferred Stock and Class 2 Preferred Stock shall have been redeemed in full.

### *CAH 1 Plan*

### CAH 1 Class 1A (Citizens Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 1 shall commence monthly payments of principal and interest based on a 20-year amortization following the Effective Date with interest payable at fixed rate of 6.5% with respect to the obligations comprising CAH 1 Class 1A.  Citizens shall retain its Prepetition lien and the maturity date of the Citizens Loan will be extended to the earlier of:  (i) 5 years from the Effective Date of the Plan or (ii) the date or replacement of the hospital securing CAH 1 Class 1A's liens.  The Citizens Loan shall be further modified to remove any provisions allowing default rates of interest.  All other covenants of the Citizens Loan remain unaltered by the CAH 1 bankruptcy case.

### CAH 1 Class 1B (HHI Secured Claim).

(a)    HMC disputes HHI's Claim.    HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $1,066,492.95 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court. Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest

only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account.  In the event HHI's claim becomes an Allowed Secured Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Claim.  If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of CAH 1 Class 1B, any such proceeds which would otherwise have been distributed to CAH 1 Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed.  Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 1 Class 1C (HHS Overpayment Secured Claim).

CAH 1 disputes the amount of the CAH 1 Class 1C Claim.  To the extent that the CAH 1 Class 1C Claim is agreed to by CAH 1, that an audit determines the correct amount of the CAH 1 Class 1C Claim, or the CAH 1 Class 1C Claim is otherwise Allowed, Reorganized CAH 1 shall commence payment on the obligations comprising CAH 1 Class 1C, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 1 Class 1D (Red Bay Environmental Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 1 shall commence payment of the Allowed Red Bay Environmental Secured Claim which shall be paid in twelve equal monthly installments plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court and Red Bay Environmental shall retain its Prepetition lien.

### CAH 1 Class 1E (Washington County Secured Claim).

CAH 1 disputes Washington County's Claim. Washington County shall retain its Prepetition lien and, if Allowed, shall be paid the value of its Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court upon the earlier of 7 years after the Effective Date or the replacement of the CAH 1 hospital facility.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

### CAH 1 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 1 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 1 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 1 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### CAH 1 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 1 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 1 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

79

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 1Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

**CAH 1 Class 3C (HHI General Unsecured Claim).**

In disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 1 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 1Class 3C, any such proceeds which would otherwise have been distributed to CAH 1Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 1 Class 4 (Old Equity Interests).**

CAH 1 Class 4 Equity Interests shall remain unaffected by the Plan.

**_CAH 2 Plan_**

**CAH 2 Class 1A (Gemino Secured Claim).**

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 2 shall commence payment on the obligations comprising CAH 2 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 2 bankruptcy case and Gemino shall retain its Prepetition liens.

80

**CAH 2 Class 1B (HHI Secured Claim).**

CAH 2 disputes HHI's Claim.  HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $154,973.29 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court.  Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account.  In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim.  If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of CAH 2 Class 1B, any such proceeds which would otherwise have been distributed to CAH 2 Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed.  Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 2 Class 1C (HHS ERP Secured Claim).**

On the Effective Date, Reorganized CAH2 shall commence payment on the obligations comprising CAH 2 Class 1C, as those obligations arise under the current agreed ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

**CAH 2 Class 1D (HHS Overpayment Secured Claim).**

CAH 2 disputes the amount of the CAH 2 Class 1D Claim.  To the extent that the CAH 2 Class 1D Claim is agreed to by CAH 2, that an audit determines the correct amount of the CAH 2 Class 1D Claim, or the CAH 2 Class 1D Claim is otherwise Allowed, Reorganized CAH 2 shall commence payment on the obligations comprising CAH 2

81

Class 1D, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 2 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 2 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 2 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 2 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### CAH 2 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 2 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 2 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 2 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

**CAH 2 Class 3C (HHI General Unsecured Claim).**

CAH 2 disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 2 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 2 Class 3C, any such proceeds which would otherwise have been distributed to CAH 2 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 2 Class 4 (Old Equity Interests).**

CAH 2 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 3 Plan*

**CAH 3 Class 1A (Gemino Secured Claim).**

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 3 shall commence payment on the obligations comprising CAH 3 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%.  All covenants of the Gemino Loan remain unaltered by the CAH 3 bankruptcy case and Gemino shall retain its Prepetition liens.

**CAH 3 Class 1B (HHI Secured Claim).**

CAH 3 disputes HHI's Claim.  HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $229,683.28 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or

such other rate agreed to by the parties or ordered by the Bankruptcy Court.  Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account.  In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim. If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of CAH 3 Class 1B, any such proceeds which would otherwise have been distributed to CAH 3 Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed.  Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 3 Class 1C (HHS Overpayment Secured Claim).

CAH 3 disputes the CAH 3 Class 1C Claim.  To the extent that the CAH 3 Class 1C Claim is agreed to by CAH 3, that an audit determines an amount of the CAH 3 Class 1C Claim, or the CAH 3 Class 1C Claim is otherwise Allowed, Reorganized CAH 3 shall commence payment on the obligations comprising CAH 3 Class 1C, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 3 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

84

**CAH 3 Class 3A (Convenience Claims).**

        Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 3 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 3 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

**CAH 3 Class 3B (General Unsecured Claims).**

        Each holder of an Allowed General Unsecured Claim in CAH 3 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 3 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

        Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

        Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 3 Class 3B and make an election as a member of this Class.

        Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

**CAH 3 Class 3C (HHI General Unsecured Claim).**

        CAH 3 disputes HHI's Claims. In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 3 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

        HHI is entitled to only a single satisfaction of its Claims. Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI. Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors. By way of example only, if HHI's

claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 3 Class 3C, any such proceeds which would otherwise have been distributed to CAH 3 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

## CAH 3 Class 4 (Old Equity Interests).

CAH 3 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 4 Plan*

## CAH 4 Class 1A (Midland Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 4 shall commence monthly payments of principal and interest (based on a 20 year amortization following the Effective Date) with respect to the obligations comprising CAH 4 Class 1A pursuant to the Plan and the maturity date of the Midland Loan will be extended to two years past the current maturity date.   The terms of the Midland loan documents shall be modified such that:  (i) the provision for default rate of interest will be removed and the provisions making the following a default shall be excised: (a) the requirement of the Regulatory Agreement that CAH 4 fund the replacement reserve will be deemed satisfied by the amounts that are currently in the replacement reserve and (b) the covenant to provide an audit of CAH 4 shall be removed but Midland will be allowed to obtain a consolidated audit.  All other covenants of the Midland Loan remain unaltered by the CAH 4 bankruptcy case and Midland shall retain its Prepetition lien.  To avoid doubt, the treatment of Midland does not affect the terms of the Regulatory Agreement between the Debtors and HUD; rather, the proposed treatment removes as a default with respect to the Midland Secured Claim certain items that may be defaults on the Regulatory Agreement.

## CAH 4 Class 1B (HHS ERP Secured Claim).

On the Effective Date, Reorganized CAH 4 shall commence payment on the obligations comprising CAH 4 Class 1B, as those obligations arise under the current agreed ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

## CAH 4 Class 1C (HHS Overpayment Secured Claim).

CAH 4 disputes the amount of the CAH 4 Class 1C Claim.  To the extent that the CAH 4 Class 1C Claim is agreed to by CAH 4, that an audit determines the correct amount of the CAH 4 Class 1C Claim, or the CAH 4 Class 1C Claim is otherwise

Allowed, Reorganized CAH 4 shall commence payment on the obligations comprising CAH 4 Class 1C, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 4 Class 1D (Beasley Technology, Inc. Secured Claim).

CAH 4 disputes Beasley Technology, Inc.'s Claim.  Beasley Technology, Inc. shall retain its Prepetition lien and, if Allowed, shall be paid the value of its collateral plus interest at the *Till* or such other rate agreed to by the parties or ordered by the Bankruptcy Court over a term of 5 years.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

### CAH 4 Class 1E (Bioexpress Secured Claim).

CAH 4 disputes Bioexpress's Claim.  Bioexpress shall retain its Prepetition lien and, if Allowed, shall be paid the value of its Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court over a term of 5 years.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

### CAH 4 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 4 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 4 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 4 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

**CAH 4 Class 3B (General Unsecured Claims).**

Each holder of an Allowed General Unsecured Claim in CAH 4 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 4 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 4 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

**CAH 4 Class 3C (HHI General Unsecured Claim).**

CAH 4 disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 4 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 4 Class 3C, any such proceeds which would otherwise have been distributed to CAH 4 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 4 Class 4 (Old Equity Interests).

CAH 4 Class 4 Equity Interests shall remain unaffected by the Plan.

### _CAH 5 Plan_

### CAH 5 Class 1A (Gemino Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 5 shall commence payment on the obligations comprising CAH 5 Class 1A, pursuant to the Plan. The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 5 bankruptcy case and Gemino shall retain its Prepetition liens.

### CAH 5 Class 1B (HHI Secured Claim).

CAH 5 disputes HHI's Claim. HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $173,971.82 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the _Till_ Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court. Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account. In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim. If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of CAH 5 Class 1B, any such proceeds which would otherwise have been distributed to CAH 5 Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed. Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a

89

waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 5 Class 1C (HHS Overpayment Secured Claim).

CAH 5 disputes the CAH 5 Class 1C Claim.  To the extent that the CAH 5 Class 1C Claim is agreed to by CAH 5, that an audit determines an amount of the CAH 5 Class 1C Claim, or the CAH 5 Class 1D Claim is otherwise Allowed, Reorganized CAH 5 shall commence payment on the obligations comprising CAH 5 Class 1C, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 5 Class 1D (Hanna, Inc. Secured Claim).

CAH 5 disputes Hanna, Inc.'s Claim.  Hanna, Inc. shall retain its Prepetition lien and, if Allowed, shall be paid the value of its collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court over a term of 5 years.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

### CAH 5 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 5 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 5 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 5 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected

OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### CAH 5 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 5 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 5 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 5 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

### CAH 5 Class 3C (HHI General Unsecured Claim).

CAH 5 disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 5 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 5 Class 3C, any such proceeds which would otherwise have been distributed to CAH 5 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 5 Class 4 (Old Equity Interests).**

CAH 5 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 6 Plan*

**CAH 6 Class 1A (First Liberty Bank Secured Claim).**

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 5 shall commence payment on the obligations comprising CAH 6 Class 1A, pursuant to the Plan. The maturity date of First Liberty Bank Loan will be extended to two years past the current maturity date and reamortized over the extended term. The provision in the loan documents for a default rate of interest will be removed and current interest will be paid at a fixed rate of 6.25%. All other terms of the First Liberty Bank Loan remain unaltered by the CAH 6 bankruptcy case and First Liberty Bank shall retain its Prepetition liens.

**CAH 6 Class 1B (DFP, LLC Secured Claim).**

On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1B, pursuant to the Plan. The maturity date of the DFP, LLC Loan will be extended to five years from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the Effective Date with interest payable at a fixed rate of 6%. All provisions for default rate under the DFP, LLC Loan will be excised. All other covenants of the DFP, LLC Loan will remain unaltered and the DFP, LLC will retain its Prepetition liens.

**CAH 6 Class 1C (Fidelity Security Life Insurance Co. Secured Claim).**

On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1C, pursuant to the Plan. The maturity date of the Fidelity Security Life Insurance Co. Loan will be extended to five years from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the Effective Date with interest payable at a fixed rate of 6%. All provisions for default rate under the Fidelity Security Life Insurance Co. Loan will be excised. All other covenants of the Fidelity Security Life Insurance Co. Loan will remain unaltered and the Fidelity Security Life Insurance Co. will retain its Prepetition liens.

**CAH 6 Class 1D (Larry Arthur Secured Claim).**

On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1D, pursuant to the Plan. The maturity date of the Larry Arthur Loan will be extended to five years from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the Effective Date with interest payable at a fixed rate of 6%. All provisions for default rate under the Larry Arthur Loan will be excised. All other covenants of the Larry Arthur Loan will remain unaltered and the Larry Arthur will retain his Prepetition liens.

**CAH 6 Class 1E (Richard Jones Secured Claim).**

On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1E, pursuant to the Plan. The maturity date of the Richard Jones Loan will be extended to five years from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the Effective Date with interest payable at a fixed rate of 6%. All other covenants of the Richard Jones Loan will remain unaltered and the Richard Jones will retain his Prepetition liens.

**CAH 6 Class 1F (Rosalia Hall Secured Claim).**

On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1F, pursuant to the Plan. The maturity date of the Rosalia Hall Loan will be extended to five years from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the Effective Date with interest payable at a fixed rate of 6%. All other covenants of the Rosalia Hall Loan will remain unaltered and the Rosalia Hall will retain her Prepetition liens.

**CAH 6 Class 1G (Sun Finance Inc. Secured Claim).**

On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1G, pursuant to the Plan. The maturity date of the Allowed Sun Finance Inc. Loan will be extended to five years from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the Effective Date with interest payable at a fixed rate of 6%. All other covenants of the Allowed Sun Finance Inc. Loan will remain unaltered and the Allowed Sun Finance Inc. will retain its Prepetition liens.

**CAH 6 Class 1C (HHS Overpayment Secured Claim).**

CAH 6 disputes the CAH 6 Class 1C Claim. To the extent that the CAH 6 Class 1C Claim is agreed to by CAH 6, that an audit determines an amount of the CAH 6 Class 1C Claim, or the CAH 6 Class 1C Claim is otherwise Allowed, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1C, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

**CAH 6 Class 2 (Priority Non-Tax Claims).**

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

## CAH 6 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 6 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 6 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

## CAH 6 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 6 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 6 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 6 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

## CAH 6 Class 3C (HHI General Unsecured Claim).

CAH 6 disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 6 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's

claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 6 Class 3C, any such proceeds which would otherwise have been distributed to CAH 6 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 6 Class 4 (Old Equity Interests).**

CAH 6 Class 4 Equity Interests shall remain unaffected by the Plan.

*CAH 7 Plan*

**CAH 7 Class 1A (Gemino Secured Claim).**

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 7 shall commence payment on the obligations comprising CAH 7 Class 1A, pursuant to the Plan. The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 7 bankruptcy case and Gemino shall retain its Prepetition liens.

**CAH 7 Class 1B (HHS ERP Secured Claim).**

On the Effective Date, Reorganized CAH 7 shall commence payment on the obligations comprising CAH 7 Class 1B, as those obligations arise under the current agreed ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

**CAH 7 Class 1C (HHS Overpayment Secured Claim).**

CAH 7 disputes the CAH 7 Class 1C Claim. To the extent that the CAH 7 Class 1C Claim is agreed to by CAH 7, that an audit determines the correct amount of the CAH 7 Class 1C Claim, or the CAH 7 Class 1C Claim is otherwise Allowed, Reorganized CAH 7 shall commence payment on the obligations comprising CAH 7 Class 1C, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

**CAH 7 Class 2 (Priority Non-Tax Claims).**

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid

at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 7 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 7 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 7 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### CAH 7 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 7 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 7 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 7 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

### CAH 7 Class 3C (HHI General Unsecured Claim).

CAH 7 disputes HHI's Claims. In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 7 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims. Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected

96

such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 7 Class 3C, any such proceeds which would otherwise have been distributed to CAH 7 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 7 Class 4 (Old Equity Interests).**

CAH 7 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 9 Plan*

**CAH 9 Class 1A (Gemino Secured Claim).**

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 9 shall commence payment on the obligations comprising CAH 9 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%.  All covenants of the Gemino Loan remain unaltered by the CAH 9 bankruptcy case and Gemino shall retain its Prepetition liens.

**CAH 9 Class 1B (HHI Secured Claim).**

CAH 9 disputes HHI's Claim.  HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $40,897.46 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court.  Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account.  In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim.  If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of CAH 9 Class 1B, any such proceeds which would otherwise have been distributed to CAH 9 Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed.  Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 9 Class 1C (HHS ERP Secured Claim).

On the Effective Date, Reorganized CAH 9 shall commence payment on the obligations comprising CAH 9 Class 1C, as those obligations arise under the current agreed ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 9 Class 1D (HHS Overpayment Secured Claim).

CAH 9 disputes the amount of the CAH 9 Class 1D Claim.  To the extent that the CAH 9 Class 1D Claim is agreed to by CAH 9, that an audit determines the correct amount of the CAH 9 Class 1D Claim, or the CAH 9 Class 1D Claim is otherwise Allowed, Reorganized CAH 9 shall commence payment on the obligations comprising CAH 9 Class 1D, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 9 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

**CAH 9 Class 3A (Convenience Claims).**

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 9 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 9 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

**CAH 9 Class 3B (General Unsecured Claims).**

Each holder of an Allowed General Unsecured Claim in CAH 9 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 9 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 9 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

**CAH 9 Class 3C (HHI General Unsecured Claim).**

CAH 9 disputes HHI's Claims. In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 9 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims. Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI. Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors. By way of example only, if HHI's

99

claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 9 Class 3C, any such proceeds which would otherwise have been distributed to CAH 9 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 9 Class 4 (Old Equity Interests).

CAH 9 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 10 Plan*

### CAH 10 Class 1A (Gemino Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 10 shall commence payment on the obligations comprising CAH 10 Class 1A, pursuant to the Plan. The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 10 bankruptcy case and Gemino shall retain its Prepetition liens.

### CAH 10 Class 1B (HHI Secured Claim).

CAH 10 disputes HHI's Claim. HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $110,377.11 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court. Pursuant to the Gemino Subordination Agreement, payments to HHI will be monthly interest only until payment in full of the Gemino Secured Claim and thereafter principal and interest based upon a 10-year amortization until paid in full; provided, however, until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account. In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim. If any escrow funds remain after such payment, then they will be returned to the Debtors.

In the event that the Court Disallows the Claim of CAH 10 Class 1B, any such proceeds which would otherwise have been distributed to CAH 10 Class 1B will be applied to HMC cash reserves.

While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

HHI is entitled to only a single recovery on its Claim(s) if Allowed.  Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 10 Class 1C (DMA Secured Claim).

The amount of the CAH 10 Class 1C is undetermined.  If the CAH 10 Class 1C Claim is Allowed, the Allowed amount will be paid in accordance with an agreed payment plan over 6 months at 5% fixed interest by recoupment from future Medicaid payments and in accordance with the Plan.

### CAH 10 Class 1E (Getinge Castle Inc. Secured Claim).

CAH 10 disputes Getinge Castle Inc.'s Claim.  Getinge Castle Inc. shall retain its Prepetition lien and, if Allowed, shall be paid in full on the date of Allowance.

### CAH 10 Class 1F (Shelco, Inc. Secured Claim).

CAH 10 disputes the basis for the CAH 10 Class 1F Claim.  The CAH 10 Class 1F is premised upon the effectiveness of a mechanics lien filed in North Carolina against CAH 10, but, because CAH 10 does not hold title to real property but rather leases from Yadkin County (a subdivision of the state against which such a lien is ineffective), such lien at CAH 10 would attach, if at all, only to CAH 10's leasehold interest.

If the CAH 10 Class 1F Claim is Allowed as a Secured Claim, Shelco, Inc. shall retain its Prepetition lien and shall be paid the value of its collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court for a term of 7 years.  Additionally, if the CAH 10 Class 1F Claim is secured in part and unsecured in part, the Allowed General Unsecured Claim of CAH 10 Class 1F will be paid the Allowed amount over 36 months without interest as prompt and proper cure in connection with the lease of the Yadkin County facility.  If the CAH 10 Class 1F Claim is Disallowed as a Secured Claim, and is a wholly General Unsecured Claim, then it will be treated as a CAH 10 Class 3B Claim. Notwithstanding the above, if the mechanics lien underlying the CAH 10 Class 1F Claim is determined to be invalid or ineffective, no payment will be made to the holder of the CAH 10 Class 1F Claim.

101

**CAH 10 Class 1D (HHS Overpayment Secured Claim).**

CAH 10 disputes the amount of the CAH 10 Class 1D Claim.  To the extent that the CAH 10 Class 1D Claim is agreed to by CAH 10, that an audit determines the correct amount of the CAH 10 Class 1D Claim, or the CAH 10 Class 1D Claim is otherwise Allowed, Reorganized CAH 10 shall commence payment on the obligations comprising CAH 10 Class 1D, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

**CAH 10 Class 2 (Priority Non-Tax Claims).**

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

**CAH 10 Class 3A (Convenience Claims).**

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 10 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 10 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:   OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

**CAH 10 Class 3B (General Unsecured Claims).**

Each holder of an Allowed General Unsecured Claim in CAH 10 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 10 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 10 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

## CAH 10 Class 3C (HHI General Unsecured Claim).

CAH 10 disputes HHI's Claims. In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 10 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims. Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI. Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors. By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 10 Class 3C, any such proceeds which would otherwise have been distributed to CAH 10 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

## CAH 10 Class 4 (Old Equity Interests).

CAH 10 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 11 Plan*

## CAH 11 Class 1A (Gemino Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 11 shall commence payment on the obligations comprising CAH 11 Class 1A, pursuant to the Plan. The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 11 bankruptcy case and Gemino shall retain its Prepetition liens.

**CAH 11 Class 1B (CFG Community Bank Secured Claim).**

                The CFG Community Bank Loan matured at end of March 2012. On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 11 shall commence monthly payments of principal and interest based on a 20 year amortization following the Effective Date with interest payable at fixed rate of 6.5% with respect to the obligations comprising payment on the obligations comprising CAH 11 Class 1B, pursuant to the Plan. The maturity date of the CFG Community Bank Loan will be extended to the earlier of: (i) 5 years from the Effective Date of the Plan or (ii) the date or replacement of the hospital securing CAH 11 Class 1B's liens.  All covenants of the CFG Community Bank Loan remain unaltered by the CAH 11 bankruptcy case and CFG Community Bank shall retain its Prepetition liens.

**CAH 11 Class 1C (HHI Secured Claim).**

                CAH 11 disputes HHI's Claim.  Pursuant to the CFG Community Bank Subordination Agreement, HHI is to be treated as an unsecured creditor in CAH 11.  To the extent that the CFG Subordination Agreement is determined be ineffective, HHI shall retain its Prepetition lien and shall be paid the value of its Collateral in the amount of $0 or such amount as the Bankruptcy Court determines is the value of HHI's Collateral plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court.  Until the resolution of the HHI Litigation any payment otherwise payable to HHI pursuant to this Plan shall be paid into an escrow account.  In the event HHI's claim becomes an Allowed Claim then any escrowed funds held will be disbursed to HHI in the lesser amount of the escrow balance or HHI's Allowed Secured Claim.  If any escrow funds remain after such payment, then they will be returned to the Debtors.

                In the event that the Court Disallows the Claim of CAH 11 Class 1C, any such proceeds which would otherwise have been distributed to CAH 11 Class 1C will be applied to HMC cash reserves.

                While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

                HHI is entitled to only a single recovery on its Claim(s) if Allowed.  Consequently, if HHI makes an election pursuant to Section 1111(b) of the Bankruptcy Code against this Debtor, HHI shall be deemed to have elected to have a non-recourse obligation against only the assets of this Debtor securing its Claim to be paid in full over the life of this Plan, which is 20 years, without interest, and such election will constitute a waiver and release of its Claims against all other Debtors.  Pursuant to the Gemino Subordination Agreement, in the event of a Section 1111(b) election, payments to HHI will commence in the calendar month following payment of the Gemino Allowed Secured Claim in full.

                To avoid doubt, HHI's Claim is expressly subject to the Debtors and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 11 Class 1D (HHS Overpayment Secured Claim).

CAH 11 disputes the amount of and the basis for the CAH 11 Class 1D Claim. To the extent that the CAH 11 Class 1D Claim is agreed to by CAH 11, that an audit determines the correct amount of the CAH 11 Class 1D Claim, or the CAH 11 Class 1D Claim is otherwise Allowed, Reorganized CAH 10 shall commence payment on the obligations comprising CAH 11 Class 1D, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 11 Class 1E (TELEMEDX Secured Claim).

CAH 11 disputes the basis for the CAH 11 Class 1E Claim. To the extent that it is determined that the CAH 11 Class 1D Claim is an Allowed Secured Claim, CAH 11 Class 1D will be paid in full on the Effective Date. To the extent that the CAH 11 Class 1D Claim is determined to be an Allowed General Unsecured Claim will receive the treatment in CAH 11 Class 3A (Convenience Claims).

### CAH 11 Class 1F (Zimmer US, Inc. Secured Claim).

The CAH 11 Class 1F Claim will be paid in full on or before the Effective Date.

### CAH 11 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 11 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 11 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 11 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

## CAH 11 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 11 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 11 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 11 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

## CAH 11 Class 3C (HHI General Unsecured Claim).

CAH 11 disputes HHI's Claims. In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 11 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims. Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI. Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors. By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 11 Class 3C, any such proceeds which would otherwise have been distributed to CAH 11 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 11 Class 4 (Old Equity Interests).

CAH 11 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 12 Plan*

### CAH 12 Class 1A (Gemino Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 12 shall commence payment on the obligations comprising CAH 12 Class 1A, pursuant to the Plan. The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 12 bankruptcy case and Gemino shall retain its Prepetition liens.

### CAH 12 Class 1B (HHS Overpayment Secured Claim).

CAH 12 disputes the amount of the CAH 12 Class 1B Claim. To the extent that the CAH 12 Class 1B Claim is agreed to by CAH 12, that an audit determines the correct amount of the CAH 12 Class 1B Claim, or the CAH 12 Class 1B Claim is otherwise Allowed, Reorganized CAH 12 shall commence payment on the obligations comprising CAH 12 Class 1B, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 12 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 12 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 12 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 12 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim: OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

107

## CAH 12 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 12 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 12 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 12 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

## CAH 12 Class 3C (HHI General Unsecured Claim).

CAH 12 disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 12 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 12 Class 3C, any such proceeds which would otherwise have been distributed to CAH 12 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

### CAH 12 Class 4 (Old Equity Interests).

CAH 12 Class 4 Equity Interests shall remain unaffected by the Plan.

### *CAH 16 Plan*

### CAH 16 Class 1A (Gemino Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 16 shall commence payment on the obligations comprising CAH 16 Class 1A, pursuant to the Plan. The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7%. All covenants of the Gemino Loan remain unaltered by the CAH 16 bankruptcy case and Gemino shall retain its Prepetition liens.

### CAH 16 Class 1B (HHS Overpayment Secured Claim).

CAH 16 disputes the amount of the CAH 16 Class 1B Claim. To the extent that the CAH 16 Class 1B Claim is agreed to by CAH 16, that an audit determines the correct amount of the CAH 16 Class 1B Claim, or the CAH 16 Class 1B Claim is otherwise Allowed, Reorganized CAH 16 shall commence payment on the obligations comprising CAH 16 Class 1B, as those obligations arise under the ERP by recoupment from future Medicare Accounts Receivable in up to sixty equal monthly installments of principal and statutory interest (estimated to be 10 -10.75% fixed).

### CAH 16 Class 1C (Bank of Commerce & Trust Co. Secured Claim).

CAH 16 will surrender the Collateral of the holder of the CAH 16 Class 1C Claim in full satisfaction of the CAH 16 Class 1C Claim.

### CAH 16 Class 1D (Farmers State Secured Claim).

On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 16 shall commence payment of the Allowed Farmers State Secured Claim which shall be paid in 12 equal monthly installments plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court and Farmers State shall retain its Prepetition lien.

### CAH 16 Class 1E (M&T Bank Secured Claim).

The holder of the CAH 16 Class 1E Claim will retain its Prepetition liens and will be paid, by CAH 16, the value of its Collateral in the total amount of $5,000 over a term of 24 months plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court. The balance of the CAH 16 Class 1E Claim is an Allowed Unsecured Claim which shall receive the treatment afforded CAH 16 Class 3B Claims. While the Debtor continues to hold the Collateral and until such time as the Claim has been

satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

### CAH 16 Class 2 (Priority Non-Tax Claims).

Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### CAH 16 Class 3A (Convenience Claims).

Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 16 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 16 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Preferred Stock.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### CAH 16 Class 3B (General Unsecured Claims).

Each holder of an Allowed General Unsecured Claim in CAH 16 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the CAH 16 Creditor Trust on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Preferred Stock.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 16 Class 3B and make an election as a member of this Class.

Tort Claims are included in this Class 3B and will be treated as described in Section VIII.A.8 below.

### CAH 16 Class 3C (HHI General Unsecured Claim).

CAH 16 disputes HHI's Claims.  In the event that HHI consents to its treatment in all of the Debtors' chapter 11 plans in which it has Allowed Claims, HHI can

110

elect to receive, in full satisfaction of its Allowed Unsecured Claim:  OPTION 1 – a distribution on the Effective Date, or as soon thereafter as is reasonably practicable, in the amount of $50,000; or OPTION 2 – 100% of its Allowed CAH 16 Class 3C Claim to be distributed in the form of Class 1 Preferred Stock.

HHI is entitled to only a single satisfaction of its Claims.  Thus, if HHI elects OPTION 1 treatment in any of the Debtors' cases, it will be deemed to have elected such treatment in all of the Debtors' cases, and an aggregate of $650,000 in cash ($50,000 per case) will be paid to HHI.  Similarly, if HHI elects OPTION 2 treatment in all of the Debtors' cases, it will receive Class 1 Preferred Stock representing its total Allowed Unsecured Claim less a credit for any Secured Claims paid by any of the Debtors.  By way of example only, if HHI's claim is Allowed in the amount of $10 million and HHI has collateral in the various Debtors' estates valued at $2.0 million, it will receive $8.0 million in Class 1 Preferred Stock.

In the event that the Court Disallows the Claim of CAH 16 Class 3C, any such proceeds which would otherwise have been distributed to CAH 16 Class 3C will be applied to HMC cash reserves.

To avoid doubt, HHI's Claim is expressly subject to the Debtors' and Reorganized Debtors' claims and causes of action against HHI, including, without limitation, the HHI Litigation.

**CAH 16 Class 4 (Old Equity Interests).**

CAH 16 Class 4 Equity Interests shall remain unaffected by the Plan.

8.    *Tort Claims*

All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.  The Debtors, however, reserve the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction. The Debtors also reserve the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.  To the extent that a Tort Claim is determined and liquidated pursuant to a final, nonappealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in Class 3B for holders of General Unsecured Claims in each of the respective Debtors' cases.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the particular Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the applicable Creditor Trust, use its best efforts to collect its Allowed Claims from the Insurance Carrier.  Any

111

remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim. Any Tort Claim within the deductible amount shall be asserted solely against the applicable Creditor Trust if OPTION 1 treatment is selected by the holder of such Tort Claim or against the Reorganized Debtors if OPTION 2 treatment is selected, but in either event not against any Insurance Carrier.

## B.    Means for Implementation and Execution of the Plans

### 1.    *Participating New Equity Owners Will Fund Plans*

On or before the Effective Date, the Participating New Equity Owners will provide the funding necessary for distributions to Allowed Claims pursuant to the Debtors' Plans. In return the Participating New Equity Owners will receive all of the Class 2 Preferred Stock. The Debtors estimate that the Participating New Equity Owners will fund approximately $4 million on the Effective Date. This amount may be substantially reduced if HHI chooses OPTION 2 treatment for preferred equity.

### 2.    *Creditor Trust*

On or before the Effective Date, each Debtor shall execute a Creditor Trust Agreement with respect to each Class 3B OPTION 1 fund, and shall take all other steps necessary to establish the Creditor Trusts. On the Effective Date, the Debtors shall transfer to the respective Creditor Trusts all of their right, title and interest in the Creditor Trust Assets.

### 3.    *Corporate Action*

Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plans, in the time period allocated therefor.

### 4.    *Effectuating Documents and Further Transactions*

Each of the officers of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, including without limitation, the Plan Supplement, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plans.

### 5.    *Closing of the Chapter 11 Cases*

When all Disputed Claims filed against the Debtors have either been expunged or become Allowed Claims and the Plans have been substantially consummated, the Reorganized Debtors or the Creditor Trust may seek authority from the Bankruptcy Court to close any or all the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## C.    Distributions

### 1.    Method of Distribution Under the Plans

One of the key concepts under the Bankruptcy Code is that only claims and equity interests that are "allowed" may receive distributions under a chapter 11 plan.  This term is used throughout the Joint Plan and the descriptions below.  In general, an "allowed" claim or "allowed" equity interest simply means that the debtor agrees, or in the event of a dispute, that the Bankruptcy Court determines, that the claim or interest, and the amount thereof is in fact a valid obligation of the debtor.

Any claim which is not a Disputed Claim and does not thereafter become the subject of a timely objection and for which a proof of claim has been timely filed is an allowed claim.  Any claim that has been listed by any Debtor in such Debtor's schedules of assets and liabilities, as may be amended from time to time, as liquidated in amount and not disputed or contingent is an allowed claim in the amount listed in the schedules unless an objection to such claim has been filed.  If the holder of such claim flies a proof of claim in an amount different than the amount set forth on the Debtor's schedules of assets and liabilities, the whole claim is a disputed claim.  Any claim that has been listed in the Debtor's schedules of assets and liabilities as disputed, contingent or not liquidated and for which a proof of claim has been filed is a disputed claim.  Any claim for which an objection has been timely interposed is a disputed claim.  For an explanation of how disputed claims will be determined, see Section VIII.D of this Disclosure Statement.

An objection to any claim may be interposed by the Debtors, the Reorganized Debtors, or the Creditor Trust (as applicable and as described in more detail below) within 63 days after the Effective Date or such later date as may be fixed by the Bankruptcy Court.  Any claim for which an objection has been interposed will be an Allowed Claim to the extent the objection is determined in favor of the holder of the claim.

### 2.    Timing of Distributions Under the Plan

Pursuant to the Plans, and unless otherwise provided in the Plans, any distributions and deliveries to be made under the Plans to the holders of Allowed Claims shall be made on the Effective Date or as soon thereafter as is reasonably practicable, consistent with the terms of the Plans.

## D.    Procedures for Treating Disputed Claims Under the Joint Plan

### 1.    Disputed Claims

A Disputed Claim is a Claim that has not been allowed or disallowed pursuant to an agreement by the parties or an order of the Bankruptcy Court.  (See discussion at VIII.C.l for a brief description of claims that constitute Disputed Claims).  In addition, all prepetition Tort Claims not previously allowed by the Bankruptcy Court are Disputed Claims.  A claim for which a proof of claim has been filed but that is listed on the Debtors' schedules of assets and liabilities as unliquidated, disputed or contingent, and which has not yet been resolved by the parties or by the Bankruptcy Court, is a Disputed Claim.  If a holder of a Claim has filed a proof of claim that

is inconsistent with the claim as listed on the Debtors' schedules of assets and liabilities, such Claim is a Disputed Claim.  Any Claims listed in the Joint Plan or Disclosure Statement as being disputed are also Disputed Claims.  Any claim for which the Debtors or any party in interest have interposed (or will interpose) a timely objection is a Disputed Claim.

#### (a)    *No Distribution Pending Allowance*

Notwithstanding any other provision of the Joint Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim (other than the transfer of the Creditor Trust Assets to the Creditor Trusts).  Until such time, only with respect to Class 3B Claims of holders who elect OPTION 1 treatment, the Creditor Trusts shall withhold from the property to be distributed to holders of such beneficial interests in the respective Creditor Trusts the portion of such property allocable to such Disputed Claims and shall hold such property in the respective Disputed Claims Reserves in accordance with the Creditor Trust Agreement.  If any such Disputed Claims are disallowed, the Cash held in the Disputed Claims Reserves shall be released as and to the extent the Creditor Trusts determine such property is no longer necessary to fund unresolved Disputed Claims, and such Cash shall be distributed in accordance with Article VI of the Joint Plan.  With respect to all other Disputed Claims, the Debtors or Reorganized Debtors shall withhold distributions and will make the appropriate distributions to holders of Disputed Claims to the extent such Claims are later Allowed as provided for in the Joint Plan.

#### (b)    *Resolution of Disputed Claim*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtors and, following the Effective Date, the Reorganized Debtors or the Creditor Trusts, as applicable,[7] shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims against the Debtors and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than **63** days after the entry of the Confirmation Order, except for those Claims related to Section 9.03 and HHI.  Following the Effective Date, all objections to claims asserted by Debtors with respect to those claims whose holders have elected to receive OPTION 1 treatment shall be deemed made by the Creditor Trust, who thereafter shall have the right to the exclusion of all others to prosecute or settle such objections. With respect to all other objections, following the Effective Date, such exclusive rights to prosecute or settle shall be vested in the Reorganized Debtors.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Creditor Trust, the Debtors, or the Reorganized

---

[7]    For the avoidance of doubt, after the Effective Date, the Reorganized Debtors shall be vested with the Debtors' rights, including those referenced in this Section VIII of the Joint Plan, with respect to: any Claims the holder of which has elected to receive Class 1 Preferred Stock for their Allowed Claim, any Class 3A Convenience Claim of any of the Debtors, any Secured Claim, any Administrative Expense Claim (including Claims under Section 503(b)(9) of the Bankruptcy Code), unclassified priority tax  Claims, priority non-tax Claims, and any Claim of HHI.  Likewise, the Creditor Trusts shall be vested with the Debtors' rights including those referenced in this Section VIII of the Joint Plan, with respect only to those Claims which, if Allowed, would be paid from the Creditor Trusts.

Debtors (as applicable) elect to withdraw any such objection or the Creditor Trust, the Debtors, or the Reorganized Debtors (as applicable) and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim.

**(c)** **_Estimation_**

The Debtors and, following the Effective Date, the Reorganized Debtors or the applicable Creditor Trust, as applicable, may request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Reorganized Debtors, or the Creditor Trust (as applicable) have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (or the Reorganized Debtors or Creditor Trust) may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**(d)** **_Allowance of Disputed Claims_**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtors or the Creditor Trusts, as appropriate, shall, on the Subsequent Distribution Date following the date on which the Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim: (a) if such holder has elected Option 1 treatment (i) Cash in an aggregate amount sufficient to pay to each holder of a Disputed Claim the amount that such holder would have been entitled to receive under the respective Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date reduced by (ii) a Cash amount equal to such Claim's proportionate share of all expenses of the Disputed Claims Reserve, including without limitation, any taxes imposed by any governmental unit with respect to income generated by or attributable to property held in the Disputed Claims Reserve (including any outstanding Tax Advances) and reasonable reserves; or (b) with respect to all other Claims, the distribution such holder would have been entitled to receive under the Plans if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date.

**(e)** **_Release of Funds from Disputed Claims Reserve_**

To the extent a Disputed Claim of a holder which elected Option 1 treatment is disallowed, the Cash and other property that would otherwise be distributed pursuant to Section 8.04 of the Joint Plan will instead be distributed or allocated in accordance with the Creditor Trust Agreement, provided, however, that if the Disputed Claims Reserve owes the Creditor Trust for funds advanced, any beneficial interests in the Creditor Trust otherwise distributable

115

will not be distributed to the holder of the subject Allowed Claim until such time that such holder reimburses the Creditor Trust for the Cash shortfall allocable to such Allowed Claim.

**(f)**      ***Deadline to File Objections to Claims***

The deadline for the Debtors, the Reorganized Debtors, or the Creditor Trusts (as applicable) to object to any and all Claims arising before the Petition Date, except for those Claims related to Section 9.03 and HHI, shall be **63** days from the entry of the Confirmation Order, unless extended by an order of this Court for good cause shown.  If the deadline for the filing of such objections passes without an objection having been filed with respect to a Claim, such Claim shall be deemed to be an Allowed Claim.

**E.      Treatment of Executory Contracts and Unexpired Leases**

*1.      Generally*

Except as otherwise provided in Section 9.03 of the Joint Plan, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between the Debtors and any person shall be deemed rejected by the Debtors on the Effective Date (with such rejection effective as of the Petition Date), except for any executory contract and unexpired lease:

(a)      which has been assumed, assumed and assigned, or rejected, as applicable, pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date; or

(b)      as to which a motion for approval of the assumption, assumption and assignment, or rejection, as applicable, of such contract or lease has been filed and/or served prior to the Confirmation Date; or

(c)      which is being assumed or assumed and assigned as set forth in Schedule 9.01, which shall be filed with the Plan Supplement.  The listing of a document on Schedule 9.01 to the Joint Plan shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability under such contract or lease.

*2.      Payment of Cure Costs*

Cure costs associated with the assumption of the executory contracts and unexpired leases pursuant to Section IX of the Plans are listed with the applicable agreement on Schedule 9.01.  A party to an executory contract or unexpired lease shall be bound by the Cure Amount identified on Schedule 9.01 unless such party files an objection to such Cure Amount by the date established for the filing of objections to the confirmation of the Plans.  The cure payments will be made in equal monthly payments over 36 months beginning on the 28th day after the Effective Date.  The entry of the Confirmation Order shall be a conclusive determination that such cure is proper in amount and prompt pursuant to Section 365(b)(1)(A) and that adequate assurances of future performance have been provided.

116

**3.      Approval of Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases**

The occurrence of the Effective Date shall constitute, as of the Confirmation Date, the approval, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, of the assumption or the assumption and assignment of the executory contracts and unexpired leases listed on Schedule 9.01, and the rejection, as applicable, of the executory contracts and unexpired leases rejected pursuant to Article IX of the Plans.

**4.      Claims for Damages**

Notwithstanding the prior orders establishing the deadlines for filing Claims against the Debtors, Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Joint Plan shall be filed and served on the Debtors, Reorganized Debtors, or the appropriate Creditor Trust (as applicable), pursuant to the procedures specified in the Confirmation Order, no later than **35** days after the entry of the Confirmation Order. Any Claims not filed within such time will be forever barred from assertion against the Debtors, their estates, successors or properties, or against the Creditor Trusts. All Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plans. Objections to any such Claims shall be filed no later than **63** days after such Claim is filed and served, and the Bankruptcy Court shall determine any such objections. If the Bankruptcy Court overrules any timely objection to such Claim; then that Claim, to the extent Allowed, shall be classified as an Allowed General Unsecured Claim and paid in accordance with the provisions of the appropriate Debtor's Plan on the later of (i) the next Subsequent Distribution Date and (ii) ten business days after the Claim has been Allowed by a Final Order; provided that no such payments shall be made prior to the entry of the Confirmation Order.

**5.      Postpetition Executory Contracts and Unexpired Leases**

All rights in connection with all executory contracts and unexpired leases assumed by the Debtors or entered into after the Petition Date that have not been assigned to a third party shall vest in the Reorganized Debtors, pursuant to section 1141(b) of the Bankruptcy Code.

**F.      Effect of Confirmation**

**1.      No Substantive Consolidation**

Confirmation of these Plans will not effectuate a substantive consolidation of any of the Debtors or Reorganized Debtors.

**2.** ***Vesting of Debtors' Assets and Claims in Reorganized Debtors and Creditor Trust Assets***

**(a)** ***Debtors' Assets***

(A)    As of the Effective Date, all of the Debtors' Assets and Claims and shall vest in the Reorganized Debtors as provided for in the Plans with the exception of the Creditor Trust Assets.

(B)    From and after the Effective Date, the Reorganized Debtors may dispose of the Debtors' Assets and Claims; free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plans.

(C)    As of the Effective Date, all assets of the Reorganized Debtors shall be free and clear of all Claims, Liens, encumbrances, charges and other interests; except as provided in the Plans or the Confirmation Order.

**(b)** ***Creditor Trust Assets***

(A)    As of the Effective Date, the Creditor Trust Assets and shall vest in the Creditor Trusts as provided for in the Creditor Trust Agreement.

(B)    From and after the Effective Date, the Creditor Trusts may dispose of the assets of the Creditor Trusts; free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Joint Plan and the Creditor Trust Agreement.

(C)    As of the Effective Date, all assets of the Creditor Trusts shall be free and clear of all Claims, Liens, encumbrances, charges and other interests; except as provided in the Plans or the Confirmation Order.

**3.** ***Binding Effect***

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plans shall bind any holder of a Claim against or Old Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests including the Old Equity Interest of such holder is impaired under the Plans, whether or not such holder has accepted the Plans and whether or not such holder is entitled to a distribution under the Plans.

**4.** ***Discharge of Claims***

Except as provided in the Plans, the rights afforded in and the payments and distributions to be made under the Plans shall discharge all existing debts and Claims of any kind, nature or description whatsoever against any of the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plans, upon the Effective Date, all existing Claims against the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Old

Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, the Participating New Equity Owners, the Old Equity Interests, and their successors or assignees or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

5.      *Discharge*.

Upon the Effective Date, in consideration of the distributions to be made under the Plans and except as otherwise expressly provided in the Plans, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Old Equity Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Old Equity Interests, rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Old Equity Interest in the Debtors. For the avoidance of doubt, upon the Effective Date, this discharge, waiver, and release will be effective as to any and all provisions contained in any prepetition loan document, contract, or agreement of the Debtors which has been not been expressly assumed pursuant to the Plans.  Similarly, all agreements for calls, puts, issuance of warrants, or sales of securities existing as of the Petition Date are terminated and discharged, except as expressly set forth in the Plans.

6.      *Retention of Net Operating Loss Carryforwards*.

Pursuant to the Joint Plan, the Debtors and Reorganized Debtors retain any and all rights, interests, and benefits in or related to the Debtors' net operating loss carryforwards ("NOLs") under the Tax Code and related Rules and Regulations, including, without limitation, Tax Code Section 382.  The Debtors currently hold approximately $12.4 million in NOLs from previous years' operations.

The Debtors' NOLs are valuable assets of the Debtors' estates because the Tax Code generally permits corporations to carry over their losses and tax credits to offset future income, thereby reducing the tax liability of the Debtors and, following the Effective Date of the Plan, the Reorganized Debtors in future periods.  These NOLs are a valuable asset of the Debtors' estates and their preservation for future use is a high priority for the Debtors.  The Joint Plan has been structured to attempt to ensure the continued availability of the NOLs without limitation to the Reorganized Debtors. Depending upon future operating results of the Reorganized Debtors, the use of NOLs could significantly reduce future U.S. federal income tax liability.  These savings could substantially enhance the Debtors' cash position for the benefit of all parties in interest and contribute to the Debtors' efforts toward a successful reorganization.

The ability of the Reorganized Debtors to use the Debtors' NOLs to reduce future tax liability, however, is subject to certain statutory limitations. Sections 382 and 383 of the Tax Code limit a corporation's use of its NOLs, tax credits and certain other tax attributes to offset future income or tax after the corporation experiences an "ownership change." For purposes of

section 382, an ownership change generally occurs when the percentage of a corporation's equity held by one or more "5% shareholders" (as such term is defined in section 382) increases by more than 50 percentage points over the lowest percentage of stock owned by such shareholder(s) at any time during the relevant testing period (usually three years).

A section 382 ownership change would effectively eliminate the ability of the Debtors to use the Debtors' NOLs, thereby resulting in a significant loss of value. Bearing this in mind, the Debtors have formulated their Plans to ensure, to fullest extent possible, that these valuable assets will not be lost. As a result, the Plans call for Old Equity Interests to ride through the bankruptcy; provided, however, that such Old Equity Interest holders are not entitled to receive any distribution until all Class 1 and Class 2 Preferred Stock has been redeemed in full. Thus, for creditors who elect to receive payment of their claims over time as Class 1 Preferred Stock, holders of Old Equity Interests will be not be paid until such creditors are paid in full.

*7.*        ***Injunction or Stay****.*

**Except as otherwise expressly provided in the Joint Plan or in the Confirmation Order all Persons or entities who have held, hold or may hold Claims against any of the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner an action or other proceeding of any kind on any such Claim against any of the Reorganized Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to such Claim, (c) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor or against the property or interests in property of any Reorganized Debtor with respect to such Claim, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Reorganized Debtor or against the property or interests in the property of any Reorganized Debtor with respect to such Claim, (e) suspension of a software license or suspension of contractual services related to a software license, and (f) pursuing any claim released pursuant to this Article XI of the Joint Plan**.

*8.*        ***Release of Assets****.*

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, their assets, and properties. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XII of the Joint Plan, and the Creditor Trusts shall perform the affairs of the Creditor Trusts as provided in the Joint Plan.

*9.*        ***Term of Injunctions or Stays****.*

Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.    *Rights of Action*.

On the Effective Date, all of Debtors' rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code shall be vested exclusively in the Reorganized Debtors.  To avoid any doubt, all of the Debtors' rights, claims, and causes of action against HHI, including, without limitation, those claims asserted in the HHI Litigation shall be exclusively vested in the Reorganized Debtors.  All claims, including derivative claims, not otherwise released in the Joint Plan, against officers, directors, agents and other representatives shall be vested exclusively in the Reorganized Debtors.

11.    *Exculpation*.

Notwithstanding anything in the Joint Plan to the contrary, as of the Effective Date, none of the Debtors, the Participating New Equity Owners, the Committee, and their respective officers, directors, members, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors and attorneys and representatives (but solely in their capacities as such) shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plans, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plans, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

12.    *Releases*.

Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of:    (i) the present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of, or to, the Debtors who acted in such capacities after the Petition Date; (ii) the Participating New Equity Owners; (iii) and the Committee (A) the Debtors, (B) each holder of a Claim that votes to accept a Debtor's Plan (or is deemed to accept a Debtor's Plan) and (C) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim that does not vote to accept a Debtor's Plan, shall release unconditionally and forever each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors who acted in such capacity after the Commencement Date, the Participating New Equity Owners, the Committee, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives from any and all Claims or causes of action whatsoever in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plans, the consummation thereof, the administration thereof or the property to be distributed thereunder; provided, however, that the

foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or gross negligence of any such person or entity.

### 13.    Special Provisions Regarding HHI Litigation.

The Debtors shall retain all rights, claims and causes of action against HHI, including without limitation, the HHI Litigation, upon entry of the Confirmation Order.  The Debtors have brought affirmative claims for damages in the HHI Litigation in Jackson County, Missouri.  Pursuant to this Joint Plan, the Debtors shall liquidate their claims against HHI in the HHI Litigation.  Amounts, if any, awarded to the Debtors shall reduce the Claims of HHI against the Debtors dollar-for-dollar in each of the respective Debtors' cases.  If HHI shall have elected OPTION 2 treatment under the Debtors' respective Plans, then any reduction shall first be applied to any Class 1 Preferred Stock awarded to HHI under this Joint Plan based upon its Provisionally Allowed Claim, and if the dollar reduction is sufficient to extinguish all of such Class 1 Preferred Stock, then any additionally remaining dollars shall be used to reduce any Provisionally Allowed Secured Claims against the Debtors starting with HHI's Provisionally Allowed Secured Claim against the lowest numbered hospital then proceeding to reduce HHI's Provisionally Allowed Secured Claim against the next lowest numbered hospital until either the damages awarded are exhausted or all of HHI's Claims are extinguished, e.g. first the Provisionally Allowed Secured Claim, if any, against CAH 1 would be reduced, then the Provisionally Allowed Secured Claim, if any, against CAH 2 would be reduced, and so on.  If any sums are awarded to the Debtors in the HHI Litigation in excess of the amounts of HHI's Provisionally Allowed Claims in all of the Debtors' cases, then the Debtors shall be entitled to seek recovery from HHI of such excess amounts in any manner authorized by law.  In addition to the HHI Litigation, the Debtors dispute whether HHI's Claim (a) should be Allowed, (b) the validity, priority and extent of HHI's liens, if any, (c) whether HHI holds a Secured Claim against particular Debtors, (d) the amount of the alleged Claim, (e) whether the components of the Claim are reasonable charges under the applicable agreements between the parties, and (f) various avoidance actions.  The Debtors' objections to the allowance of HHI's Claims and other claims that would otherwise affect the allowance of the Claim in bankruptcy, but excluding the claims for monetary damages included in the HHI Litigation, shall be brought separately before the Bankruptcy Court ("Traditional Bankruptcy Claims").  If, after the resolution of the Traditional Bankruptcy Claims, the Bankruptcy Court determines there is an amount owing by one or more of the various Debtors to HHI, then such Claim shall be provisionally allowed for purposes of determining any allegedly Secured Claims, the amounts to be escrowed pending resolution of the HHI Litigation and any distribution of Class 1 Preferred Stock (the "Provisionally Allowed Claims" or "Provisionally Allowed Secured/Unsecured Claim," as applicable).  Such provisional allowance shall not be a Final Order for purposes of appeal or allowance against the Debtors and their estates until such a time as the HHI Litigation is resolved by a Final Order and the claim reductions contemplated in the Joint Plan shall have been applied.  The Debtors shall present to the Bankruptcy Court a copy of any Final Orders in the HHI Litigation within 35 days of the Final Order becoming final.  The Debtors shall have the full power and authority to compromise and settle any disputes with HHI after the Effective Date without Bankruptcy Court approval or compliance with Bankruptcy Rule 9019.

For the avoidance of doubt, all of HHI's Claims, including any counter-claims or causes of action, that have been or could have been raised in the HHI Litigation are Claims

governed by this Joint Plan.  The state court shall not have jurisdiction or relief from the discharge injunction to hear or consider such Claims, all of which are governed by this Joint Plan.  The sole claims being determined in the HHI Litigation are the Debtors' claims against HHI.  With respect to the Debtors' claims against HHI in the HHI Litigation, the Debtors retain their right to a jury trial which right shall not be deemed to have been waived by any provision of this Joint Plan.

### 14.    Post-Effective Date Management and Operations of the Reorganized Debtors.

The Joint Plan provides that the management, control and operation of the Reorganized Debtors shall remain the general responsibility of the existing Board of Directors and any changes to the Board of Directors after the Effective Date shall be governed by the existing corporate governance provisions of its organizational documents and by-laws, subject to the rights of holders of Class 1 and Class 2 Preferred Stock in the event of a default.  Schedule 8.3 hereto lists the current members of the Board of Directors.

Furthermore, the officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date. Attached hereto as Schedule 8.4 is listing of the Debtors' current officers, each officer's title, and the yearly salary to be paid to each (subject to cost of living increases of 4% per year after the Effective Date).

In addition, in light of the recent United States Supreme Court decision affirming the Affordable Healthcare Act and recent regulatory changes, the Debtors are exploring opportunities for post-Effective Date monetization of the management rights in the Debtors' hospitals.  To the extent that the Debtors are able to identify and successfully exploit such opportunities, this monetization will aid the Debtors in funding their obligations to their creditors under the Joint Plan.

## G.    Conditions Precedent to Effectiveness of the Plans

### 1.    Conditions Precedent to Effective Date of Plans

The occurrence of the Effective Date of the Plans is subject to satisfaction of the following conditions precedent:

(a)    The Confirmation Order, in form and substance acceptable to the Debtors and the Participating New Equity Owners, shall have been entered and is a Final Order.

(b)    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plans, including without limitation the Creditor Trust Agreement and the documents comprising the Plan Supplement that are necessary for the effectuation of the Plans; shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

(c)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plans are obtained and not revoked.

(d)      Participating New Equity Owners have funded their respective funding commitments.

(e)      The confirmation of each and all of the Debtors' respective Plans.

### 2.      *Waiver of Conditions Precedent*

The conditions precedent in Sections 10.01(b) and/or 10.01(d) of the Joint Plan may be waived, in whole or in part, by the Debtors.  Any such waivers of a condition precedent in Sections 10.01(b) and/or 10.01(d) of the Joint Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

### 3.      *Effect of Failure of Conditions*

In the event that the conditions specified in Section 10.01(b) and/or 10.01(d) have not been satisfied or waived in the manner provided in Section 10.02 on or before 126 days after the Confirmation Date, then upon written notification filed by the Debtors with the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plans shall be made, (c) the Debtors and all holders of Claims and Old  Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, (d) the time within which the Debtors may assume, assume and assign, or reject all prepetition executory contracts and unexpired leases shall be extended for a period of 35 days after the date the Confirmation Order is vacated, and (e) all the Debtors' obligations with respect to the Claims and Old Equity Interests shall remain unchanged and nothing contained in the Joint Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person, in any further proceedings involving the Debtors.

## H.      Miscellaneous Provisions

The Joint Plan contains certain other provisions relating to corporate actions, the officers of the Reorganized Debtors, delivery of distributions, manner of payment, vesting of assets, binding effect of the Plans, term of injunctions or stays, injunction against interference with the Plan, releases, payment of statutory fees, compliance with tax requirements, severability, revocation and amendment of the Plans, governing law, and timing.  For more information regarding this items, see the Joint Plan attached hereto as Exhibit A.

## IX.

## CERTAIN FACTORS TO BE CONSIDERED

## A.      Certain Bankruptcy Considerations

Although the Debtors believe that the Joint Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications of the Joint Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes.  In addition, although the Debtors believe that

124

the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing, especially in light of the conditions precedent to the Effective Date.

The Bankruptcy Court may confirm each of the Plans if at least one impaired Class in each Plan votes to accept such Plan (with such acceptance being determined without including the vote of any "insider" in such class). Thus, for each of the individual Plans to be confirmed, one impaired Class as to each such Plan, among the Voting Classes, must vote to accept the Plan. As to each impaired class that has not accepted the Plan, the Plan may be confirmed if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to these classes. The Debtors believe that the Joint Plan (as to each of them) satisfies these requirements. For more information, see Article X below.

## X.

## CONFIRMATION OF THE CHAPTER 11 PLANS

### A.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a plan of reorganization. The confirmation hearing for the Debtors' Joint Plan is scheduled for [_____], Central Time, on [_____], 2012, before the Honorable Dennis R. Dow, United States Bankruptcy Judge, 400 East 9th Street, Kansas City, Missouri. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned confirmation hearing.

Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the claim or number and type of shares of interests held by the objector. Any such objection must be filed with the Bankruptcy Court and served so that it is received by the following parties no later than [_____] prevailing Central Time on [_____], 2012; (i) Husch Blackwell LLP, Attorneys for Debtors and Debtors in Possession, 4801 Main Street, Suite 1000, Kansas City, Missouri 64112, Attention: Mark Benedict, Esq.; (ii) the Office of the United States Trustee for the Western District of Missouri, 400 E. 9th Street, Room 3440, Kansas City, Missouri 64106, Attention: Jerry L. Phillips, Esq.; and (iii) the Securities and Exchange Commission, the Internal Revenue Service, and other government agencies to the extent required by the Bankruptcy Rules and the Local Bankruptcy Rules for the Western District of Missouri.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

# XI.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLANS

### A.    Liquidation Under Chapter 7

If any of the Plans for the Debtors cannot be confirmed under section 1129(a) of the Bankruptcy Code, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, in which event a trustee would be elected or appointed to liquidate any remaining assets of the Debtor or Debtors for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code. If a trustee is appointed and the remaining assets of the Debtors are liquidated under chapter 7 of the Bankruptcy Code, all creditors holding Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims may receive distributions of a lesser value on account of their Allowed Claims and likely would have to wait a longer period of time to receive such distributions than they would under the Plans. A chapter 7 trustee, who would lack the Debtors' knowledge of their affairs, would be required to invest substantial time and resources to investigate the facts underlying the multitude of Claims filed against the Debtors. As indicated in the Liquidation Analysis annexed hereto at Exhibit B, the Debtors' creditors would receive a lesser recovery under Chapter 7 liquidations than under the Plans. For virtually all classes, the Debtors believe that a Chapter 7 liquidation would result in the lowest possible recovery, and for most of the unsecured creditor classes would result in no recovery. In addition, the Bankruptcy Code includes a specific provision relating to the priority of expenses incurred by a "health care business" in the event of a liquidation or similar event which would likely cause the estates to incur additional administrative expenses in the event of such a liquidation (to the extent that it is determined the this provision applies to the Debtors). Specifically, Section 503(b)(8) affords administrative status to the necessary costs of closing a health care business, specifically including the costs of disposing of patient records under Section 351 and transferring patients to another health care business under Section 704.

### B.    Alternative Plan of Liquidation

If the Plans are not confirmed, the Debtors or any other party in interest (if the Debtors' exclusive period in which to file chapter 11 plans has expired) may attempt to formulate alternative chapter 11 plans that might provide for the liquidation or reorganization of the Debtors' assets other than as provided in the Joint Plan. The Debtors have concluded that the Joint Plan as proposed enables creditors to realize the most value under the circumstances. The Debtors believe that any alternative plan that does not preserve the NOL tax attributes would substantially impair the Debtors' going-concern values and hamper any plan calling for payments from future operations. Absent payment from future operations, the Debtors believe any alternative to the Joint Plan would provide for substantially lower recoveries.

### C.    Certain Risk Factors

In the event that the Joint Plan is not confirmed or the Chapter 11 Cases are not converted to cases under chapter 7 of the Bankruptcy Code, the Debtors believe that such action or inaction, as the case may be, will cause the Debtors to incur substantial expenses and

otherwise serve only to prolong unnecessarily the Chapter 11 Cases and negatively affect creditors' recoveries on their Claims.

## XII.

## TAX CONSEQUENCES OF THE JOINT PLAN

The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each holder of a Claim or Equity Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Equity Interest. The Joint Plan has been designed to preserve to the Reorganized Debtors the benefits of the approximately $12.4 million NOL tax attribute by avoiding a change in control of the Debtors under Tax Code Section 382. The long-term payout OPTION 1 treatment of creditors receiving Class 1 or Class 2 Preferred Stock is mechanically a redemption of such equity plus applicable interest. As noted above, each creditor should consult their own tax professional to determine the tax consequences of the Joint Plan with respect to such individual creditor's treatment under the Joint Plan, including whether such payments will be treated as business income or capital gains.

## XIII.

## CONCLUSION

The Debtors believe that confirmation and implementation of the Plans are preferable to any of the alternatives described above because they will provide the greatest recoveries to holders of Claims. Other alternatives would involve significant delay, uncertainty and substantial additional administrative costs. The Debtors urge holders of impaired Claims entitled to vote on the respective Debtors' Plans to accept the Plans and to evidence such acceptance by returning their Ballots so that they will be received no later than **[_:00 p.m., prevailing Central Time, on _____, 2012]**.

**[The remainder of this page left intentionally blank]**

127

Respectfully submitted,

**_HMC/CAH Consolidated, Inc._**

By: /s/           _Dennis Davis_
    Name:      Dennis Davis
    Title:      Chief Legal Officer

**_CAH Acquisition Company #1, LLC_**

By: /s/           _Dennis Davis_
    Name:      Dennis Davis
    Title:      Chief Legal Officer

**_CAH Acquisition Company #2, LLC_**

By: /s/           _Dennis Davis_
    Name:      Dennis Davis
    Title:      Chief Legal Officer

**_CAH Acquisition Company #3, LLC_**

By: /s/           _Dennis Davis_
    Name:      Dennis Davis
    Title:      Chief Legal Officer

**_CAH Acquisition Company #4, LLC_**

By: /s/           _Dennis Davis_
    Name:      Dennis Davis
    Title:      Chief Legal Officer

**CAH Acquisition Company #5, LLC**

By: /s/                    Dennis Davis
    Name:           Dennis Davis
    Title:        Chief Legal Officer

**CAH Acquisition Company #6, LLC**

By: /s/                    Dennis Davis
    Name:           Dennis Davis
    Title:        Chief Legal Officer

**CAH Acquisition Company #7, LLC**

By: /s/                    Dennis Davis
    Name:           Dennis Davis
    Title:        Chief Legal Officer

**CAH Acquisition Company #9, LLC**

By: /s/                    Dennis Davis
    Name:           Dennis Davis
    Title:        Chief Legal Officer

**CAH Acquisition Company #10, LLC**

By: /s/                    Dennis Davis
    Name:           Dennis Davis
    Title:        Chief Legal Officer

**CAH Acquisition Company #11, LLC**

By: /s/                    Dennis Davis
    Name:           Dennis Davis
    Title:        Chief Legal Officer

***CAH Acquisition Company #12, LLC***

By: /s/ _____ *Dennis Davis* _____
    Name:_____ Dennis Davis _____
    Title:_____ Chief Legal Officer _____

***CAH Acquisition Company #16, LLC***

By: /s/ _____ *Dennis Davis* _____
    Name:_____ Dennis Davis _____
    Title:_____ Chief Legal Officer _____

/s/    *Matthew Gartner*
_____

| | |
|---|---|
| Mark T. Benedict | #44621 |
| Marshall C. Turner | #58053 |
| Matthew Gartner | #64320 |

Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
mark.benedict@huschblackwell.com
marshall.turner@huschblackwell.com
matthew.gartner@huschblackwell.com

Attorneys for the Debtors and Debtors-in-
Possession