## LIQUIDATION ANALYSIS

  In order to make an informed decision on whether to accept or reject the Joint Plan, creditors may wish to compare the return on their claims that will be received under the Joint Plan with the return that would be received in the event these cases were converted to Chapter 7 of the Bankruptcy Code.  Under Chapter 7, a trustee would be appointed and would proceed to liquidate each of the Debtor's assets and distribute the proceeds of the liquidation in accordance with the priorities established in the Bankruptcy Code.  Any creditors holding valid liens on assets of the Debtors would retain those liens to satisfy some or all of their Secured Claims.  Creditors entitled to administrative expense claim treatment or priority treatment would enjoy payment in full of their claims to the extent of available funds after payment of secured Claims and before any funds would be available to general unsecured creditors.  A trustee could abandon certain of the Debtors' assets and allow holders of Allowed Secured Claims to execute upon their respective liens.  Debtors believe that liquidation of their assets would result in a nominal dividend, at best, to unsecured creditors compared to the distributions as proposed in the Plan.

  The following charts present in summary form the Debtors' best estimate of the liquidation value of their assets.  These assets are derived from the Debtors schedules of real and personal property, as amended, on file with the Bankruptcy Court. The Debtors have obtained Bankruptcy Court approval to hire CBIZ to conduct formal appraisals and valuations of the Debtors' real and personal property.  The Debtors have performed a preliminary internal evaluation of their assets for the purposes of preparing this Liquidation Analysis.  The Debtors are continuing to further analyze the value of their assets in liquidation.  The Debtors also anticipate CBIZ will prepare one or more reports and valuations of value in conjunction with their engagement, which will likely further supplement this Liquidation Analysis.  Accordingly, the Debtors reserve the right to amend this Liquidation Analysis.

1

ASSETS (Rounded)

**Name/Case No.**

**HMC/CAH Consolidated, Inc.**
**11-44738-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor[1] | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| None (Note 1) | n/a | n/a | n/a | 0.00 |
| **Personal Property** | | | | |
| Citizen's Bank (Note 2) | 6,778 | Closed | Gemino/HHI | 0.00 |
| US Bank, Payroll Account (Note 2) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| US Bank, Flex Account (Note 2) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| US Bank (Note 2) | 727,674 | 0.00 | Gemino/HHI | 0.00 |
| City Center Square Equities Lease deposit (Note 2) | 10,755 | 0.00 | Landlord offset | 0.00 |
| Principal Equity Properties - Tulsa, OK Lease Security Deposit Paid December, 2010 (Note 2) | 6,000 | 0.00 | Landlord offset | 0.00 |
| Lexington Insurance Company (Chartis) Professional and General Liability Policy (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Zurich American Insurance Auto Coverage (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Liberty Mutual / Wausau Business Insurance Co. | 0.00 | 0.00 | Gemino/HHI | 0.00 |

---

[1] See Note Regarding Secured Claims immediately preceding the Note 1 discussion below.

2

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor[1] | Available to Unsecured Creditors |
|---|---|---|---|---|
| Workers Compensation (Note 3) | | | | |
| Travelers Property Casualty Property Insurance (Note 3) | 113 | 0.00 | Gemino/HHI | 0.00 |
| Federal Insurance - Crime Policy (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Darwin National Insurance Fiduciary Responsibility (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Darwin National Insurance Director and (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Lexington Insurance Company (Chartis) Umbrella (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Lexington Insurance Company (Chartis) Professional and General Liability Kansas hospitals (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Star Net – Aviation (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Ace-Illinois Union Insurance Company (Note 3) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Remaining Value on Various Financed Insurance Policies as of the Petition Date (Note 3) | 785,098 | 0.00 | Gemino/HHI[2] | 0.00 |
| Remaining Value on Various Financed Insurance Policies as of the Petition Date (Note 3) | 26,305 | 0.00 | Gemino/HHI[3] | 0.00 |
| CAH Acquisition Company #1, LLC, 100% Ownership Interest (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company #2, LLC, 100% Ownership Interest (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company #3, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |

---

[2] Covered under the AFCO Commercial Premium Financing Agreement

3

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor[1] | Available to Unsecured Creditors |
|---|---|---|---|---|
| CAH Acquisition Company #4, Inc., 100% Ownership (Note 4) | Unknown | 0.00 | 2011 Lenders | 0.00 |
| CAH Acquisition Company #5, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company 6, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Sun Finance | 0.00 |
| CAH Acquisition Company 7, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company 9, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company 10, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company 11, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company 12, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| CAH Acquisition Company 16, LLC, 100% Ownership (Note 4) | Unknown | 0.00 | Sun Finance | 0.00 |
| HMC Management, LLC, 100% (Note 4) | Unknown | 0.00 | Gemino/HHI | 0.00 |
| Accounts Receivable (Note 5) | 5,420,359 | 0.00 | Gemino/HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Money deposited at time of closing of loan with Bank of Hays (Note 2) | 0.00 | 0.00 | 0.00 | 0.00 |
| 2011 Buick Enclave | 39,601 | 19,801 | Ally Financial | 0.00 |
| 2011 GMC Terrain | 35,000 | 17,500 | Commerce Bank | 0.00 |
| Office Equipment (Note 7) | 233,481 | 23,348 | HHI | 0.00 |

4

**CAH Acquisition Company #1, LLC**
**11-44739-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| 958 US Highway 64 East, Plymouth, NC (Note 1) | 535,000 | 481,500 | Citizens Bank | 0.00 |
| **Personal Property:** | | | | |
| RBC Bank, 201 E. Water St., Plymouth, NC 27962; Account Deposit 048-040-124-2  (Note 2) | 78,419 | 0.00 | Citizens/HHI | 0.00 |
| Utility Deposits (Note 2) | Unknown | 0.00 | Utility offset | 0.00 |
| Accounts Receivable (Note 5) | 7,752.143 | 1,494,692 | Citizens/HHI | |
| Medicare reimbursement from WPS (Note 8) | 231,743 | 0.00 | Citizens/HHI/ERP[3] | 0.00 |
| Unliquidated litigation claim against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Non-medical Office Equipment (Note 7) | 26,677 | 2,677 | Citizens/HHI | 0.00 |
| Medical Machinery/Fixtures/Equipment/Business Supplies (Note 7) | 633,011 | 63,301 | Citizens/HHI | 0.00 |
| Inventory (Misc. inventory Purchasing / CS - $33,752.52 Pharmacy - $89,575.20 Other Inventory - $79,569.00) (Note 9) | 202,897 | 26,873 | Citizens/HHI | 0.00 |
| Washington County Chamber of Commerce | 2 | 0.00 | n/a | 0.00 |
| Construction in progress (Note 10) | 899,987 | 0.00 | n/a | 0.00 |

---

[3] ERP refers to an "extended repayment plan" with a governmental agency that allows the Debtors to pay overpayment obligations over time.  In a liquidation, the remaining amounts due on the ERP would be recouped from any funds due the Debtors.

5

**CAH Acquisition Company #2, LLC**
**11-44740-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| Existing Hospital Site, 800 Barker Drive, Oswego, KS (Note 1) | 122,000 | 109,800 | HHI | 0.00 |
| Replacement Site: 1026 Commercial Street, Oswego, KS (Note 1) | Included above | | | |
| Chetopa Clinic:: 429 Maple Street, Chetopa, KS (Note 1) | | | | |
| **Personal Property:** | | | | |
| Citizens Bank, N.A. (Note 2) | 4,220 | 534,080 | Gemino/HHI | 0.00 |
| Labette Bank Deposit Account (Account No. 601063) (Note 2) | 6,067 | 0.00 | Gemino/HHI | 0.00 |
| Receivables on Patient Accounts (Note 5) | 1,294,253 | 339,381 | Gemino/HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| 1995 Dodge Ram-Wagon B3500 | 3,200 | 1,600 | n/a | 0.00 |
| 1998 Ford E350 | 4,000 | 2,000 | n/a | 0.00 |
| Non-medical Equipment (Note 7) | 0 | 0.00 | HHI | 0.00 |
| Medical Equipment (Note 7) | 77,034 | 7,703 | HHI | 0.00 |
| Inventory: (Purchasing Inv. $37,430.55 Pharmacy Inv. $50,401.73) (Note 9) | 87,832 | 15,121 | HHI | 0.00 |
| Construction in progress (Note 10) | 2,428,336 | 0.00 | n/a | 0.00 |

6

**CAH Acquisition Company #3, LLC**
**11-44741-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| Hospital Site: 240 W. 18th Street, Horton KS 66439 (Note 1) | 39,141[4] | 35,227 | HHI | 0.00 |
| Replacement Site:  A tract of land in Brown County, Kansas (Note 1) | 65,350 | 58,815 | HHI | 0.00 |
| **Personal Property:** | | | | |
| Union State Bank (Note 2) | 26,347 | 114,256 | Gemino/HHI | 0.00 |
| Horton National Bank (Note 2) | 1901 | 0.00 | Gemino/HHI | 0.00 |
| Patient Accounts Receivable (Note 5) | 2,536,409 | 794,755 | Gemino/HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Medicare Part A anticipated settlement (Note 8) | 72,060 | 0.00 | Gemino/HHI/ ERP | 0.00 |
| 1997 Plymouth Grand Voyager | 1,600 | 800 | n/a | 0.00 |
| Equipment, etc. (Note 7) | 155,017 | 15,502 | HHI | 0.00 |
| Machinery, etc. (Note 7) | 329,436 | 32,944 | HHI | 0.00 |
| Misc. Inventory (Note 9) | 141,508 | 14,151 | HHI | 0.00 |
| Construction in progress (Note 10) | 648,404 | 0.00 | n/a | 0.00 |

---

[4] In the schedules, the Debtors valued the Horton real property in the aggregate at $104,491.00.  The purchase price of the replacement site was $65,350.  For purposes of this Liquidation Analysis, the Debtors have allocated the value between the two parcels by applying the purchase price to the replacement site and the remaining difference of the net book value to the hospital site.

**CAH Acquisition Company #4, LLC**
**11-44742-drd11**

| Assets | | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|---|
| **Real Property:** | | | | | |
| 610 West Truck Bypass, Drumright, (Note 1) | OK | 3,670,675 | 3,303,608 | Midland | 0.00 |
| **Personal Property:** | | | | | |
| Spirit Bank, Tulsa, OK-Deposit (Note 2) | | 27,006 | 0.00 | Midland | 0.00 |
| Spirit Bank, Tulsa, OK-Deposit clinic(Note 2) | | 61 | 0.00 | Midland | 0.00 |
| Spirit Bank, Tulsa, OK-checking (Note 2) | | 3,536 | 0.00 | Midland | 0.00 |
| Spirit Bank – CD – restricted by HUD (Note 2) | | 243,887 | 0.00 | Midland | 0.00 |
| US Bank (Note 2) | | Unknown | 304,993 | Midland | 0.00 |
| Deposit (Note 2) | | 2,500 | 0.00 | Midland | 0.00 |
| Escrow with Midland – Prepaid Insurance (Note 3) | | 152,088 | 0.00 | Midland | 0.00 |
| Accounts Receivable (Note 5) | | 2,563,630 | 609,229 | Midland | 0.00 |
| Lawsuit pending against HHI (Note 6) | | Unknown | 0.00 | n/a | 0.00 |
| 1996 Dodge Club Cab | | 3,000 | 1,500 | n/a | 0.00 |
| Office Equipment (Non-Medical) (Note 7) | | 52,346 | 5,235 | Midland | 0.00 |
| Machinery (Medical Equipment) (Note 7) | | 65,656 | 6,566 | Midland | 0.00 |
| Inventory (Pharmacy - $36,103.32 Purchasing/CS - $142,579.03) (Note 9) | | 178,682 | 10,831 | Midland | 0.00 |

**CAH Acquisition Company #5, LLC**
**11-44743-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| Replacement Site: A tract of land in Marion County, Kansas (Note 1) | 41,528 | 37,375 | HHI | 0.00 |
| **Personal Property:** | | | | |
| Cash (Note 2) | 0.00 | 0.00 | Gemino/HHI | 0.00 |
| Emprise Bank (Note 2) | 26,305 | 249,131 | Gemino/HHI | 0.00 |
| Emprise Bank (Note 2) | 434 | 0.00 | Gemino/HHI | 0.00 |
| Accounts Receivable (Note 5) | 985,506 | 220,146 | Gemino/HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Anticipated Medicare settlement from WPS (Note 8) | 196,819 | 0.00 | Gemino/HHI/ERP | 0.00 |
| 2009 Interstate Cargo Trailer | 1,750 | 875 | n/a | 0.00 |
| Non-Medical Equipment (Note 7) | 114,076 | 11,408 | HHI | 0.00 |
| Medical Equipment (Note 7) | 429,168 | 42,917 | HHI | 0.00 |
| Inventory (Pharm. $39,852.76, Other Inv. $30,416.00, Purchasing Inv. $48,708.51) (Note 9) | 118,977 | 11,956 | HHI | 0.00 |
| Construction in progress (Note 10) | 659,941 | 0.00 | n/a | 0.00 |

KCP-4232680-6

**CAH Acquisition Company #6, LLC**
**11-44744-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| Hospital Site: 105 Hospital Drive Sweet Springs, MO (Note 1) | 4,992,701 | 4,493,431 | First Liberty | 0.00 |
| **Personal Property:** | | | | |
| Citizens Bank, N.A. operating account    (Note 2) | 359 | 0.00 | First Liberty | 0.00 |
| Spirit Bank, Tulsa, OK-Deposit clinic    (Note 2) | 51,106 | 0.00 | First Liberty | 0.00 |
| Accounts Receivable (Note 5) | 2,297,402 | 630,373 | First Liberty/2011 Lenders/Sun Finance | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| 2008 Wells Utility Trailer | 6,000 | 3,000 | n/a | 0.00 |
| 2000 Chevy G3500 Van | 8,000 | 4,000 | n/a | 0.00 |
| Non-Medical Equipment (Note 7) | 45,504 | 4,550 | First Liberty | 0.00 |
| Medical Equipment (Note 7) | 787,748 | 78,775 | First Liberty | |
| Inventory (Supplies $30,457.50, Dietary $3,457.78, Other Supplies $42,526.63; Pharmacy $52,625.42) (Note 9) | 129,067 | 15,788 | First Liberty | 0.00 |

10

**CAH Acquisition Company #7, LLC**
**11-44745-drd11**

| Assets | | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|---|
| **Real Property:** | | | | | |
| Replacement Site: A tract of in County, Oklahoma (Note 1) | Lincoln | 215,000 | 193,500 | n/a | 0.00 |
| **Personal Property:** | | | | | |
| Petty Cash (Note 2) | | 173 | 0.00 | Gemino/HHI | 0.00 |
| Vision Bank (Note 2) | | 32,564 | 0.00 | Gemino/HHI | 0.00 |
| Vision Bank payroll (Note 2) | | 22,100 | 0.00 | Gemino/HHI | 0.00 |
| BancFirst-Acct. 0331016811 (Note 2) Deposit-clinic | | 1,912 | 0.00 | Gemino/HHI | 0.00 |
| BancFirst-Acct. 0331026755 (Note 2) Deposit-clinic | | 6,755 | 0.00 | Gemino/HHI | 0.00 |
| Accounts Receivable (Note 5) | | 2,437,154 | 606,729 | Gemino/HHI | 0.00 |
| Non-Medical Equipment (Note 7) | | 25,291 | 2,529 | HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | | | 0.00 | n/a | |
| Medical Equipment (Note 7) | | 76,631 | 7,663 | HHI | 0.00 |
| Inventory (Purchasing $104,101.40, Pharmacy - $33,972.79) (Note 9) | | 138,074 | 10,192 | HHI | 0.00 |

11

**CAH Acquisition Company #9, LLC**
**11-44746-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| Replacement Site: A tract of land in Major County, Oklahoma (Note 1) | 105,000 | 94,500 | n/a | 0.00 |
| **Personal Property:** | | | | |
| First National Bank of Seiling, Seiling OK Payroll (Note 2) | 1.00 | 0.00 | Gemino/HHI | 0.00 |
| First National Bank of Seiling, Seiling OK Flex acct (Note 2) | 608 | 0.00 | Gemino/HHI | 0.00 |
| First National Bank of Seiling, Seiling OK Deposit (Note 2) | 147,153 | 59,821 | Gemino/HHI | 0.00 |
| Accounts Receivable (Note 5) | 2,437,475 | 422,877 | Gemino/HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Non-Medical Equipment (Note 7) | 138,870 | 13,887 | HHI | 0.00 |
| Medical Equipment (Note 7) | 8,703 | 870 | HHI | 0.00 |
| Inventory (Purchasing - $36,119.07, Pharmacy - $20,795.30) (Note 9) | 56,914 | 6,239 | HHI | 0.00 |

KCP-4232680-6

**CAH Acquisition Company #10, LLC**
**11-44747-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| None (Note 1) | n/a | n/a | n/a | 0.00 |
| **Personal Property:** | | | | |
| Wells Fargo/Wachovia Payroll (Note 2) | 7,634 | 0.00 | Gemino/HHI | 0.00 |
| Wells Fargo/Wachovia Flex (Note 2) | 1,162 | 0.00 | Gemino/HHI | 0.00 |
| Wells Fargo/Wachovia Deposit (Note 2) | 128,025 | 0.00 | Gemino/HHI | 0.00 |
| Accounts Receivable (Note 5) | 4,853,554 | 522,739 | Gemino/HHI | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| 1986 Ford F 150 | 1,000 | 500 | n/a | 0.00 |
| 2002 Ford Explorer | 5,500 | 2,750 | n/a | 0.00 |
| 2005 Ford Freestar | 5,200 | 2,600 | n/a | 0.00 |
| Non-Medical Equipment (Note 7) | 207,050 | 20,705 | HHI | 0.00 |
| Medical Equipment (Note 7) | 232,617 | 23,262 | HHI | 0.00 |
| Inventory (Purchasing/CS - $35,840.98 Pharmacy - $76,377.18) (Note 9) | 112,218 | 22,913 | HHI | 0.00 |

13

**CAH Acquisition Company #11, LLC**
**11-44748-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| Hospital Site: 326 Asbury Avenue Ripley, TN (Note 1) | 579,849 | 521,864 | CFG | 0.00 |
| **Personal Property:** | | | | |
| Bank of Ripley, Ripley, TN-Payroll (Note 2) | 3,086 | 0.00 | CFG/HHI | 0.00 |
| Bank Tennessee – Deposit (Note 2) | 116,651 | 0.00 | CFG/HHI | 0.00 |
| Lauderdale County Bank – Flex (Note 2) | 1,021 | 0.00 | CFG/HHI | 0.00 |
| Accounts Receivable (Note 5) | 8,568,054 | 1,067,978 | CFG/Gemino/HHI | 0.00 |
| Lawsuit pending against HHI in the Circuit Court of Jackson County, Missouri Case no. 1116-CV17183 (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Insurance proceeds from roof claim | Unknown | 0.00 | n/a | 0.00 |
| 1988 Ford Light Van | 950 | 475 | n/a | 0.00 |
| Non-Medical (Note 7) | 96,957 | 9,696 | CFG/HHI | 0.00 |
| Medical Equipment (Note 7) | 288,708 | 28,871 | CFG/HHI | 0.00 |
| Inventory (Purchasing/CS-$33,429.25, Other Inv.-$7,140.33, Surg. Inv.-$43,583.12 Pharmacy-$86,196.01) (Note 9) | 170,349 | 25,859 | CFG/HHI | 0.00 |

14

**CAH Acquisition Company #12, LLC**
**11-44749-drd11**

| Assets | | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|---|
| **Real Property:** | | | | | |
| Replacement Site: A tract of land in Osage County, Oklahoma (Note 1) | | 48,123 | 43,310 | n/a | 0.00 |
| **Personal Property:** | | | | | |
| Armstrong Bank Post Office Box 70 Account #60340053 (Note 2) | Deposit | 53,900 | 170,590 | Gemino | 0.00 |
| Citizen's Bank, Payroll Account (Note 2) | #31003168 | 0.00 | 0.00 | Gemino | 0.00 |
| Patient Accounts Receivable (Note 5) | | 1,005,514 | 447,786 | Gemino | 0.00 |
| Lawsuit pending against HHI (Note 6) | | Unknown | 0.00 | n/a | 0.00 |
| Non-Medical Equipment (Note 7) | | 115,407 | 11,541 | n/a | 0.00 |
| Medical Equipment (Note 7) | | 493,567 | 49,357 | n/a | 0.00 |
| Inventory (Other Inv.-$9679.06, Surg.-$22,935.36, Lab/Radio-$19,443.53, ER/Nursing-$13,634.43, Pharmacy-$52,343.58) (Note 9) | | 118,036 | 15,703 | n/a | 0.00 |
| AT&T Yellow (Credit Balance: $99.35) | | 99 | 0.00 | Gemino | 0.00 |

KCP-4232680-6

**CAH Acquisition Company #16, LLC**
**11-44750-drd11**

| Assets | Scheduled Value | Liquidation Value | Primary Secured Creditor | Available to Unsecured Creditors |
|---|---|---|---|---|
| **Real Property:** | | | | |
| None (Note 1) | n/a | n/a | n/a | 0.00 |
| **Personal Property:** | | | | |
| First National Bank of Stigler – Deposit  (Note 2) | 103,270 | 0.00 | Gemino | 0.00 |
| First National Bank of Stigler-Clinic-Deposit (Note 2) | 50 | 0.00 | Gemino | 0.00 |
| Accounts Receivable (Note 5) | 4,556,499 | 512,091 | Gemino | 0.00 |
| Lawsuit pending against HHI (Note 6) | Unknown | 0.00 | n/a | 0.00 |
| Non-Medical Equipment (Note 7) | 72,361 | 7,236 | n/a | 0.00 |
| Medical Equipment (Note 7) | 267,227 | 26,723 | n/a | 0.00 |
| Inventory (Supplies-$30,457.50, Dietary-$3,457.78, Supplies-$42,526.63 Drugs-$52,625.42) (Note 9) | 129,067 | 15,788 | n/a | 0.00 |

16

**NOTES TO LIQUIDATION ANALYSIS.**

**NOTE Regarding Secured Claims** – The Debtors have multiple secured creditors that have asserted various liens and security interests in real and personal property of the Debtors. During the course of these bankruptcy proceedings, the Debtors and their primary secured creditors have negotiated the terms of the Cash Collateral Order. Among other provisions, the Debtors acknowledged and stipulated to the validity, priority and amount of many of the primary secured creditors' claims in the Cash Collateral Order. In summary fashion, Debtors set forth below the primary secured creditors, their stipulated claims and collateral.[5] The dollar amounts set forth below may not include additional items such as accrued and unpaid interest, costs, fees, and other specific amounts applicable to a particular secured creditor as more fully set forth in the Cash Collateral Order and will not reflect any reductions in the claims due to payment of adequate protection payments. Please refer to the Cash Collateral Order for specific additional information regarding each Secured Creditor.

| | Secured Creditor | Amount | Collateral |
|---|---|---|---|
| 1. | Gemino | $4,696,784.12 | All A/R cash and intangibles of all Debtors except CAH 1, 4 and 6. |
| 2. | First Liberty Bank | $9,639,011.02[6] | CAH 6-certain real property and personal property |
| 3. | CFG | $2,506,603.11[7] | CAH 11-all real property and personal property |
| 4. | Citizens Bank | $1,499,189.31[8] | CAH 1-certain real property and personal property |
| 5. | Midland | $6,629,121.18 | CAH 4-certain real property and personal property |
| 6. | 2011 Lenders | $2,200,000.00 | HMC-certain personal property and HMC's Equity Interests in CAH 4 |

In addition to the Secured Claims summarized above, HHI has asserted various Secured Claims in the approximate amount of $16,043,191.08. The Debtors dispute the HHI Secured Claims (see also Note 6). HHI has asserted liens against real and personal property of the following Debtors: HMC/CAH, CAH 1, CAH 2, CAH 3, CAH 5, CAH 7, CAH 9, CAH 10 and CAH 11. The Debtors believe that the liquidation value of collateral in which HHI actually holds a security interest is less than $1.25 million. HHI's claim, assuming it is allowed, is secured by assets of 8 hospitals. They failed to file real estate mortgages or UCC-1 financing statements against several of their alleged borrowers. At 7 of the 8 hospitals, HHI is subordinate to Gemino. For HHI's security interest to attach to assets, there must be equity beyond the claim of Gemino, jointly and severally and without marshaling, as the doctrine of marshaling was waived in the Subordination Agreement and Cash Collateral Order. Additionally, and as more fully described in Note 8, various debtors are obligated to the Department of Health and Human Services for Medicare over payments and certain states for Medicaid overpayments. These sums are recoverable from the Debtors A/R prior to payment of any of the above secured lenders and must be considered in determining the equity and value of the A/R to the estates in liquidation. At present, the Debtors believe such overpayment may be repaid over time, but upon liquidation HHS would offset and recoup the full amounts of those claims. The HHS claims are summarized in Note 8 below.

---

[5] This Liquidation Analysis is not intended to modify or alter in any way the terms of the Cash Collateral Order. The terms of the Cash Collateral Order control over any summary contained herein.

[6] Includes principal of $9,159,689.29, interest of $14,321.73, and a prepayment fee of $465,000.

[7] Consisting of outstanding principal of $2,502,710 and accrued and unpaid interest of approximately $3,893.11.

[8] Consisting of $1,476,966.07 on Loan #234567017 and $22,223.24 on Loan #234567018.

KCP-4232680-6

The Debtors HMC/CAH and CAH #6 are parties to various loan documents with the following lenders: DFP, LLC, Fidelity Security Life Ins. Co., Larry Arthur, Richard Jones, Rosalia Hall, Sun Finance, Inc.  (collectively, the "2011 Lenders") who loaned approximately $2,200,000 in the aggregate on or about January 24, 2011.  To secure the loans, the 2011 Lenders have a security interest in HMC/CAH's stock in CAH #4 and #6. In addition, the 2011 Lenders have a security interest in the accounts receivable of CAH #6.  Sun Finance, Inc. has prior loans from 2009 and 2010 with HMC/CAH in the amounts indicated in the Liquidation Analysis, which is secured by HMC/CAH's stock in CAH #6 and #16 and by the accounts receivable of CAH #6.[9]

**NOTE 1:  Real Property –** The Debtors collectively own a total of 13 parcels of real property consisting of six (6) hospitals[10], one (1) clinic (the Chetopa Clinic, see Oswego), and six (6) parcels of bare land designated as replacement sites for future new hospitals to replace the existing hospitals in those cities.[11]  Two of the six existing hospitals, I-70 in Sweet Springs, Missouri and Drumright in Drumright, Oklahoma, are newly built facilities.  Of the remaining four hospitals, three were built in the 1940s and 1950s, and one (Lauderdale) was built in the 1980s.  For purposes of this Liquidation Analysis, the Debtors assume that if liquidated, the real property will sell for book value, less an estimated 10% for costs of sale, commissions and closing costs.  As indicated above, certain parcels of the Debtors' real property are subject to liens or asserted secured claims. To the extent any funds are available for unsecured upon the liquidation of the real property, those amounts are set forth herein.  Debtors note that the replacement site real property for HMC #2 (Oswego) does have some preliminary site preparation and foundation work that has been performed.  To the extent this replacement site is liquidated, funds will either need to be expended to remove the improvements to bring it back to bare land or the value is likely to be discounted to take into account such costs.

**NOTE 2:  Bank Accounts, Cash Equivalents and Deposits –** The Debtors maintain numerous bank accounts and deposits.  For a detailed description of the Debtors' cash management practices and procedures, please see that certain Emergency Motion for Expedited Order Authorizing Maintenance of Cash Management System and to Continue Use of Certain Existing Bank Accounts, Deposit Practices and Certain Business Forms filed by the Debtors on the Petition Date.  The Debtors bankruptcy proceedings are also being conducted pursuant to various cash collateral orders and agreements, under which certain of Debtors' secured creditors have been afforded various protections and rights pursuant to the Bankruptcy Code.  As of June 1, 2012, six of the Debtors have positive cash on hand in the aggregate of approximately $1,432,870, as more fully set forth in the charts above.  In addition, the Debtors have deposits and other cash equivalents generally included in what the Debtors have designated under Note 2 of this Liquidation Analysis.  In liquidation, such cash on hand, deposits and other cash equivalents will remain the collateral of the respective secured creditors and/or landlords to be applied towards their claims resulting in none of such funds being available for unsecured creditors.

---

[9] This summary of the 2011 Lenders claims is for informational purposes and is not intended to set forth all forms of collateral that may be asserted by the 2011 Lenders.

[10] To summarize, the 6 owned hospitals are: Washington County Community Hospital (Plymouth, NC ), Oswego Medical Center (Oswego, KS), Horton Community Hospital (Horton, KS), Drumright Regional Hospital (Drumright, OK), I-70 Community Hospital (Sweet Springs, MO) and Lauderdale Community Hospital (Ripley, TN).

[11] The six replacement sites are for the following hospitals: Oswego Medical Center, Horton Community Hospital, Hillsboro Community Hospital, Prague Community Hospital, Seiling Community Hospital and Fairfax Community Hospital (Ripley, TN).

KCP-4232680-6

**NOTE 3: Various Insurance Policies** – The Debtors are parties to various insurance policies providing casualty, property, general liability and other professional liability insurance for the Debtors, their assets and their employees and professionals.  As the policy year continues, any prepaid insurance assets are diminished as the Debtors receive the monthly indemnity and other benefits from the insurance policies.  In addition, in the ordinary course of business, the Debtors have entered into various forms of insurance premium financing, both pre-and post-petition, to assist in the acquisition of such policies under which the financing companies receive a security interest in any unearned premiums to insure they suffer no loss in the event of non-payment by the Debtors.  Generally, the financing companies have first priority security interests in the unearned premiums superior in priority to the "Primary Secured Creditor" set forth in this Liquidation Analysis to the extent of such financing company's current outstanding obligations due from the Debtors.  Given the fact that these bankruptcy proceedings were filed on October 10, 2011, substantially all the prepaid insurance premiums have been consumed such that there is no remaining value in these scheduled assets. Accordingly, the Debtors do not believe the insurance assets encompassed with in this Note 3 will generate any assets for unsecured creditors in liquidation.

**NOTE 4: HMC/CAH Consolidated, Inc.'s Interests in the Subsidiary Debtors** – HMC/CAH Consolidated, Inc. owns 100% of each of the subsidiary Debtors whose cases are jointly administered herein.  These assets are subject to the liens of various Secured Creditors as more fully set forth herein. The Debtors do not believe the liquidation of the Debtors in Chapter 7 will result in any meaningful distribution to unsecured creditors.  The Debtors believe that HMC/CAH Consolidated, Inc., as the parent of the 12 subsidiary Debtors, will not realize any dividend upon the liquidation of these companies.  Thus, no funds will be available for unsecured creditors upon liquidation of these assets.  The Debtors have experienced significant net operating losses prepetition.  Currently, the Debtors have aggregate NOLs of approximately $12.4 million.  If the Debtors are liquidated, the value of these NOLs to reduce the Debtors' tax burden on any future taxable income will be lost.

**NOTE 5: Accounts Receivable** – On the Petition Date, the Debtors scheduled gross accounts receivable in the respective amounts indicated in the listing for each Debtor case above.  Pursuant to the various cash collateral orders entered in the cases, the funds were deposited in the Debtors debtor-in-possession bank accounts and have been used to pay administrative expense claims and other ordinary course obligations, all pursuant to court-approved budgets and orders.  As of May 16, 2012, the Debtors have collected most of their prepetition accounts receivable and have estimated the remaining collections.  The percentage of book value represented by actual and estimated remaining collections is set forth in the Accounts Receivable Chart, below.  The percentages set forth below of total collections are consistent with the Debtors' past pre-petition collection experiences.

The prepetition accounts receivable has been replaced with post-petition accounts receivable that the Debtors have generated from operations.  In liquidation, there will be post-petition (and limited pre-petition) accounts receivable outstanding.  The percentages have been applied to the book value of the Debtors' Accounts Receivable as of June 1, 2012 to determine the liquidation values of the Accounts Receivable before consideration of collection costs.  The book value of Accounts Receivable as of 6/1/2012 and the net estimated collection before collections costs are listed in Accounts Receivable Chart, below.  The Debtors estimate that in liquidation, the trustee will incur collection fees and expenses of 30% to actually collect the remaining Accounts Receivable.  The net collections after collection costs are reflected in each chart set forth above under each case listing.

**Accounts Receivable Chart**

| Debtor | Estimated Total Collections-Pre-Petition A/R | % Collected of Gross | Book value of A/R as of 6/12/2012 | Estimated Net Collection before Collection Costs |
|---|---|---|---|---|
| HMC[12] | -- | 0 | -- | |
| CAH#1 | $1,911,875 | 23 | 9,283,798.63 | 2,135,273.68 |
| CAH#2 | $621,701 | 47 | 1,031,553.89 | 484,830.33 |
| CAH#3 | $1,023,088 | 38 | 2,987,799.09 | 1,135,363.65 |
| CAH#4 | $895,431 | 33 | 2,637,353.02 | 870,326.50 |
| CAH#5 | $554,539 | 68 | 462,492.40 | 314,494.83 |
| CAH#6 | $981,289 | 43 | 2,094,261.83 | 900,532.59 |
| CAH#7 | $810,241 | 32 | 2,708,613.08 | 866,756.19 |
| CAH#9 | $784,241 | 33 | 1,830,637.40 | 604,110.34 |
| CAH#10 | $1,289,212 | 28 | 2,667,035.91 | 746,770.05 |
| CAH#11 | $1,650,479 | 18 | 8,476,016.07 | 1,525,682.89 |
| CAH#12 | $701,033 | 59 | 1,084,227.03 | 639,693.95 |
| CAH#16 | $964,196 | 20 | 3,657,794.87 | 731,558.97 |

**NOTE 6: Pending Jackson County Lawsuit Against HHI** – On June 30, 2011, HMC and CAH 1, 2, 3, 5, 7, 9, 10 and 11 sued HHI, HPCG and Harbour.  In summary, the party Debtors have asserted that HHI's failure to fund four hospital projects constituted a breach of that certain Master Funding Agreement and that HHI's conduct constituted fraud and both a contractual and tortious breach of implied duty of good faith and fair dealing.  Also, Plaintiffs claim that Harbour's conduct breached his fiduciary duty as an HMC board member.  The Plaintiffs seek compensatory and punitive damages and equitable relief.  On September 29, 2011, the Circuit Court of Jackson County granted the Plaintiffs' Motion for Temporary Restraining Order.  In response to the Plaintiffs' petition, HHI filed counterclaims against the all of the Debtors, including Fairfax and Haskell who are not borrowers or guarantors under the Master Funding Agreement, and I-70, Lauderdale and Drumwright whose assets are not collateral pledged to HHI.  HHI also sought a declaratory judgment that it was entitled to, among other things, foreclose upon the assets of all of the Debtors even those where no collateral was pledged.  The Debtors have asserted that the damages they sustained as a result of HHI's actions are in excess of $18 million.  HHI is a special purpose entity with no other assets other than the loans and liens it asserts in these cases.  For this reason, in liquidation, the Debtors believe no actual affirmative recovery is likely against HHI.  In liquidation, the best possible scenario for the Debtors would be the complete offset of the Debtors' claims against the claims HHI asserts resulting in no recovery for unsecured creditors, but a substantial reduction in the asserted secured claims in the case.  Likewise, the worst case scenario for the Debtors is that their claims fail and HHI has all its asserted claims.  In this situation, the Debtors still believe there is not sufficient value to support the claims asserted by HHI, resulting in a significant deficiency claim for HHI.  Because the Debtors believe that at most any litigation claim will reduce or eliminate HHI's claims against the Debtors, it believes the liquidation value of the claim for creditors will be zero.  This valuation is not an admission that the Debtors have no damages or that their damages are not in

---

[12] The majority of HMC's prepetition accounts receivable represents obligations owed by the respective subsidiary Debtors, which would not be collected in liquidation.

excess of HHI's assorted claims against the Debtors.  Rather, it represents an evaluation of the collectability of such claims above and beyond a reduction or elimination of HHI's asserted claims against the estates.

**NOTE 7: Various Furniture, Fixtures & Equipment, Including Medical Equipment** – The Debtors practice has been to acquire their significant pieces of medical equipment and machinery on long-term operating leases.  With limited exceptions, the leases are true leases, rather than disguised security interests.  This practice serves multiple functions: (1) it allows the Debtors to regularly replace obsolete equipment in an economic fashion to maintain current equipment to provide high-quality healthcare to its patients, (2) newer equipment assists in attracting new physicians and other health care professionals to the Debtors, and (3) the true leases arrangements provide favorable tax advantages and favorable reimbursement advantages in calculating the Debtors' annual cost reports.  The result of the Debtors' lease of significant medical equipment is that much of the actual medical equipment in the hospitals are not assets of the estate because they are leased, not owned.  The majority of equipment owned are small low cost items like hospital beds, microscopes and bedpans.  Accordingly, the Debtors estimate that in liquidation, their owned assets encompassed within this Note 7, on average, will net 10% of book value in liquidation.

**NOTE 8:  Anticipated Medicare/Medicaid Reimbursements** – As of the Petition Date, three of the Debtors (CAH #1, CAH #3 and CAH #5) listed as an asset potential Medicare/Medicaid reimbursements the Debtors believe are due them.  In certain situations, the Debtors have collected a portion of the reimbursements which have been utilized as cash collections pursuant to the terms of the Cash Collateral Order.  The majority of these reimbursements, however, have not been collected as of the date of this Liquidation Analysis.  In liquidation, the Debtors believe these assets will have no value because the respective governmental agencies that owe the reimbursements will exercise their recoupment rights (essentially making them secured creditors) to effectuate a reduction against any future funds due the Debtors' bankruptcy estate by the amount of the reimbursements.  Generally speaking, recoupments are not subject to the Bankruptcy Code's automatic stay such that recoupment can be effectuated without court order or the consent of the trustee.  In addition, as referenced in the note regarding Secured Claims above, various Debtors are obligated to the Department of Health and Human Services for Medicare overpayments and certain states for Medicaid overpayments.  Set forth below is a chart summarizing the scheduled or filed overpayment claims:

| Debtor | Payee/Year | Medicare/Medicaid Overpayment Claims |
|---|---|---|
| CAH 1 | HHS FY 2011 | $234,989.60 |
| | HHS Prior FY ERP | $61,263.00 |
| CAH 2 | HHS FY 2011 | $1,371,126.77 |
| CAH 3 | HHS FY 2011 | 0 |
| | HHS Prior FY ERP | $37.47 |
| CAH 4 | HHS FY 2011 | $324,281.00 |
| CAH 5 | HHS FY 2011 | 0 |
| CAH 6 | HHS FY 2011 | $436,008.38 |
| CAH 7 | HHS FY 2011 | 0 |
| CAH 9 | HHS FY 2011 | $532,810.08 |

| CAH 10 | HHS FY 2011 | 0 |
| | NC DHS | $38,554.00 |
| CAH 11 | HHS FY 2011 | $18,843.87 |
| | | 0 |
| CAH 12 | HHS Prior FY | $1,082,038.00 |
| CAH 16 | HHS Prior FY ERP | $5,875.72 |

**NOTE 9: Inventories** – The Debtors, as critical access hospitals and clinics, have a wide variety of inventory in their various facilities. The general categories of inventory consist of assets normally expected to be utilized in a hospital or clinic, including supplies of or for pharmaceuticals, surgery & ER, general, laboratory and radiology, dietary, facilities management, gift shop, environmental services and linens. The Debtors estimate that in liquidation their inventory would have no realizable value, other than unopened and unused pharmaceuticals, which could be returned to the supplier or transferred to another hospital for value. Accordingly, in analyzing the value of the Debtors' inventory, the Debtors have estimated that pharmaceuticals will net 30% of total book value in liquidation.

**NOTE 10: Construction In Process** – As of the Petition Date, four of the Debtors (CAH #1, CAH#2, CAH #3 and CAH #5) listed as an asset construction in process. This category primarily consists of the research, planning and development costs associated with the acquisition of replacement sites to build new hospitals for those particular Debtors. As referenced in Note 1 above, the replacement site real property for HMC #2 (Oswego) has had some preliminary site preparation and foundation work performed. None of the other three replacement sites have been improved. This asset category has no value independent of the underlying real property. Accordingly, the Debtors estimate that the construction in process would have no realizable value in liquidation.

**SUMMARY OF LIQUIDATION ANALYSIS**

A review of the Liquidation Analysis shows that the Debtors have extremely limited unencumbered assets and that the liquidation of the Debtors' assets would generate little or nothing in Chapter 7. From the limited proceeds there would be significant administrative expenses of the Chapter 7 cases, including the Trustee's fees[13] and expenses and the attorney for Trustee fees and expenses. Debtors estimate those fees could total as much as $500,000. In addition, the Debtors estimate there would be unpaid Chapter 11 administrative expense claims of $1,300,000.00[14], as well as, unpaid § 503(b)(9) (20-Day claims) and other priority claims. While these categories of claims are subordinate to the Chapter 7

---

[13] A trustee is generally entitled to a percentage fee on distributions (other than distributions to the debtor) to secured, administrative, priority and unsecured creditors. The fee is calculated on a sliding scale. Trustee's fees are approximately $53,250 on $1,000,000 of distributions plus 3% of distributions in excess of $1,000,000.
[14] For purposes of the Liquidation Analysis and the chart on the following page, Chapter 11 administrative expense claims have been allocated 1/13th to each estate.

administrative expense claims, they would be paid prior to any distributions to general unsecured creditors. Set forth below is a summary by Debtor case of the Chapter 11 administrative expense claims, the 20-Day claims and the other priority claims:[15]

<u>Summary of Chapter 11 Unpaid Claims and Other Priority Claims</u>

| Debtor | Ch. 11 Admin. | 20 Claims | Priority Claims |
|--------|---------------|-----------|-----------------|
| HMC | $100,000 | 0.00 | $52,756 |
| CAH#1 | $100,000 | $7,272 | $523,977 |
| CAH#2 | $100,000 | $28,498 | $107,563 |
| CAH#3 | $100,000 | $42,831 | $247,377 |
| CAH#4 | $100,000 | $26,304 | $156,365 |
| CAH#5 | $100,000 | $17,812 | $87,205 |
| CAH#6 | $100,000 | $31,185 | $80,044 |
| CAH#7 | $100,000 | $27,931 | $124,289 |
| CAH#9 | $100,000 | $9,568 | $78,448 |
| CAH#10 | $100,000 | $40,309 | $169,404 |
| CAH#11 | $100,000 | $17,477 | $534,680 |
| CAH#12 | $100,000 | $15,402 | $113,740 |
| CAH#16 | $100,000 | $13,899 | $131,168 |

There are other categories of potential claims that would also have priority over general unsecured claims. For instance, to the extent there is a failure of adequate protection to any of the Secured Creditors, thereby entitling one or more of them to superpriority administrative expense claims under § 507(b), such claims would also be superior to general unsecured creditors. In addition, the Debtors have assumed various non-residential real property leases pursuant to various orders of the Bankruptcy Court. In subsequent Chapter 7 bankruptcy proceedings, it is highly likely that the trustee would reject these previously assumed leases. Pursuant to § 503(b)(7), the various landlords to these leases would be entitled to administrative expense claims generally equal to two years of lease payments. The Debtors estimate that these § 503(b)(7) claims would be several million dollars in the aggregate. Because the Debtors are in the health care business, the provisions of § 503(b)(8) would also give rise to substantial additional administrative expense claims. In very general terms, § 503(b)(8) provides administrative expense claim treatment for the actual, necessary costs and expenses of closing a health care business incurred by a trustee, or a state or federal agency, including disposing of patient records and transferring patients to another healthcare business. Given that the Debtors operate 12 hospitals and

---

[15] The Debtors are in the process of reviewing all proof of claim filed in the cases. The amounts set forth below are based, in part, on filed proofs of claim, but should not be deemed as an admission by the Debtors that the claims are allowed. Debtors reserve all rights to review and object to any proofs of claim.

associated clinics in five states, this potential expense could be very significant.  The Debtors estimate that § 503(b)(8) administrative expenses would be no less than $100,000 for each facility.

In the event of liquidation, the Debtors also estimate that there would be approximately two weeks of post-petition payable and wages that would go unpaid, but that would be entitled to Chapter 11 administrative expense claim treatment.  Finally, there may be capital gains upon which taxes would have to be paid on sales of the real estate and personal property.  Again, all of these expenses or claims would be paid before any dividend to unsecured creditors.  There are tens of millions of dollars of asserted unsecured proof of claim in these Bankruptcy proceedings.  A distribution to unsecured creditors in liquidation may likely be $0.  Debtors believe their Plan is far superior to liquidation of their assets in the context of Chapter 7.

KCP-4232680-6